# EXHIBIT B

# MASTER LOAN AGREEMENT
## PETTERS LTD., INC.
## CLOSING DOCUMENTS
### October 31, 2001

1.  Loan Agreement

    | | |
    |---|---|
    | Exhibit A: | Forms of Notes |
    | Exhibit B: | Eligible Accounts Requirements |
    | Exhibit C: | Notice of Request for Loan |
    | Exhibit D: | Form of Bill of Sale |

2.  Promissory Note

3.  Corporate Guaranty

4.  Personal Guaranty

5.  Security Agreement

6.  Depository Account Pledge Agreement

7.  Letter of Direction

8.  Assignment Agreement

9.  UCC Financing Statement:

    a.  Minnesota—Blanket Lien

    b.  Minnesota—Petters Company, Inc., as Debtor, Petters Ltd., Inc. as Secured Party, Stafford Towne, Ltd., as Assignee

    c.  California—Partial Release by International Investment Opportunities, LLC

    d.  Minnesota—Partial Release by International Investment Opportunities, LLC

    e.  File against vendor Lectronix

    f.  File against vendor Nationwide International

    g.  File against vendor Universal Assets, LLC

PCI-SW-049-001512

10. Merchandise Purchase Orders

11. Initial Request for Loan

12. Secretary's Certificate—Petters Ltd., Inc.

   a. Resolutions

13. Secretary's Certificate—Petters Company, Inc.

   a. Resolutions

14. Receipt of Petters Ltd., Inc.

15. Wire Transfer Instructions To Vendors' Accounts

16. Opinion of Counsel to Borrower

17. Evidence of Casualty Insurance

TC3: 788527 v02 11/20/2001

PCI-SW-049-001513

**1**

# MASTER LOAN AGREEMENT

THIS MASTER LOAN AGREEMENT (the "Agreement"), dated as of October 31, 2001, is by and between PETTERS LTD., INC., a Minnesota corporation ("Borrower"), the Lenders, as such term is defined in Section 1.1 below, party hereto from time to time, and STAFFORD TOWNE, LTD. (the "Administrative Agent").

## RECITAL

Subject to and upon the terms and conditions set forth herein, the Lenders are willing to make available Loans to the Borrower as provided for herein.

NOW, THEREFORE, IT IS AGREED:

## ARTICLE 1. DEFINITIONS AND ACCOUNTING TERMS

**Section 1.1    Defined Terms.**   In addition to terms defined elsewhere in this Agreement, the following terms shall have the following respective meanings (and such meanings shall be equally applicable to both the singular and plural form of the terms defined, as the context may require):

"Account(s)":  The Borrower's "Accounts" as defined in Article I of the Security Agreement.

"Account Debtor":  Any Person who is or who may become obligated to the Borrower under, with respect to, or on account of an Account, General Intangible or other Collateral.

"Adverse Event":  The occurrence of any event that would have a material adverse effect on the business, operations, property, assets or condition (financial or otherwise) of the Borrower (or such other party to which the term applies in context) or on the ability of the Borrower (or such other party) to perform its obligations under the Loan Documents.

"Agreement":  This Master Loan Agreement, as it may be amended, modified, supplemented, restated or replaced from time to time.

"Borrower":  As defined in the preamble hereto.

"Business Day":  Any day (other than a Saturday, Sunday or legal holiday in the State of Minnesota) on which national banks are permitted to be open in Minneapolis, Minnesota.

"Closing Date":  Any date on which a Loan is made pursuant to Section 2.2.

"Collateral":  Any property in which the Collateral Agent has been granted a Lien pursuant to any Loan Document.

"Collateral Agent":  Stafford Towne, Ltd., or such other entity as may be designated by a majority of the Lenders in writing to be the Lender's agent with respect to the Collateral.

"Corporate Guarantor": Petters Company, Inc., a Minnesota corporation.

"Corporate Guaranty": The Guaranty of even date herewith executed by Petters Company, Inc.

"Default": Any event which, with the giving of notice to the Borrower or lapse of time, or both, would constitute an Event of Default.

"Default Rate": the interest rate payable following any Maturity Date as provided in a Note.

"Depository Accounts": collectively, Account Nos. 2005080 and 25034562 maintained by Borrower at the Depository Bank.

"Depository Bank": Highland Bank, a banking association chartered under the laws of the State of Minnesota.

"Depository Account Pledge Agreement": The Depository Account Pledge Agreement dated as of October 31, 2001 made by the Borrower in favor of the Collateral Agent, for the benefit of the Lender, pursuant to which the Borrower has granted a security interest in the Depository Account, as originally executed and as it may be amended, modified, supplemented, restated or replaced from time to time.

"Eligible Account": An Account owing to the Borrower which meets the following requirements set forth on Exhibit B attached hereto;

"Eligible Inventory": Inventory of the Borrower which (i) the Borrower purchases with the proceeds of a Loan pursuant to purchase orders issued by it to a vendor, which purchase orders are in all respects acceptable to Administrative Agent in its sole and absolute discretion and complete copies of which have been provided to Administrative Agent; and further provided that no such vendor is a Related Party; and (ii) meets the following requirements:

(a)    it is owned by the Borrower and, except as the Administrative Agent may otherwise consent, is not subject to any prior assignment, claim or Lien other than a first priority Lien in favor of the Collateral Agent;

(b)    except as the Administrative Agent may otherwise consent, it is not stored with a bailee, warehouseman or similar party; or, if so stored with the consent of the Administrative Agent, such bailee, warehouseman or similar party has issued and delivered to the Collateral Agent, in form and substance acceptable to the Collateral Agent, warehouse receipts therefor in the name of the Collateral Agent, and any other such documents and agreements as the Administrative Agent may require;

(c)    the Administrative Agent has determined, in its reasonable business judgment, that it is not unacceptable due to age, type, category, quality and/or quantity;

2

(d)    it is not held by the Borrower on "consignment" and is not subject to any other repurchase or return agreement;

(e)    it complies with all standards imposed by any governmental agency having regulatory authority over such goods and/or their use, manufacture or sale;

(f)    it does not, in any way, violate or fail to meet any warranty, representation or covenant contained in the Loan Documents relating directly or indirectly to the Borrower's Inventory; and

(g)    Inventory of the Borrower which is at any time Eligible Inventory but which subsequently fails to meet any of the foregoing requirements shall forthwith cease to be Eligible Inventory. The value of Eligible Inventory shall be the U.S. dollar amount thereof computed at the lower of the cost, determined on a first in first out basis, or market value of such Inventory, as determined by the Administrative Agent after deduction of such reserves and allowances as the Administrative Agent, in its reasonable business judgment, deems proper and necessary.

"Event of Default": Any event described in Section 7.1 which has not been cured to the satisfaction of, or waived by, the Administrative Agent in accordance with Section 8.1.

"GAAP":  Generally accepted accounting principles as in effect from time to time including, without limitation, applicable statements, bulletins and interpretations of the Financial Accounting Standards Board and applicable bulletins, opinions and interpretations issued by the American Institute of Certified Public Accountants or its committees.

"Guarantors":  Thomas J. Petters, an individual resident of the State of Minnesota, and the Corporate Guarantor, and such other parties as may execute and deliver a Guaranty in a form approved by the Administrative Agent, guaranteeing payment, in whole or in part, of Borrower's Obligations to the Lenders.

"Indebtedness":  Without duplication, all obligations, contingent or otherwise, which in accordance with GAAP should be classified upon the obligor's balance sheet as liabilities, but in any event including the following (whether or not they should be classified as liabilities upon such balance sheet):  (a) obligations secured by any mortgage, pledge, security interest, lien, charge or other encumbrance existing on property owned or acquired subject thereto, whether or not the obligation secured thereby shall have been assumed and whether or not the obligation secured is the obligation of the owner or another party; (b) any obligation on account of deposits or advances; (c) any obligation for the deferred purchase price of any property or services, except trade accounts payable; (d) any obligation as lessee under any capitalized lease; (e) all guaranties, endorsements and other contingent obligations in respect to Indebtedness of others; and (f) undertakings or agreements to reimburse or indemnify issuers of letters of credit.  For all purposes of this Agreement, the Indebtedness of any Person shall include the Indebtedness of any partnership or joint venture in which such Person is a general partner or a joint venturer unless such Indebtedness is non-recourse to such Person.

3

"Insolvent" shall mean, with respect to any Person on any date of determination, that on such date,

    (a)    the fair value of such Person's tangible and intangible assets is not in excess of the total amount of such Person's liabilities including, without limitation, contingent obligations; or

    (b)    such Person is not then able to pay its debts as they mature; or

    (c)    such Person does not have capital sufficient to carry on its business.

"Inventory": The Borrower's "Inventory" as defined in Article I of the Security Agreement.

"Investment": The acquisition, purchase, making or holding of any stock or other security, any loan, advance, contribution to capital, extension of credit (except for trade and customer accounts receivable for Inventory sold or services rendered in the ordinary course of business and payable in accordance with customary trade terms), any acquisitions of real or personal property (other than real and personal property acquired in the ordinary course of business) and any purchase or commitment or option to purchase stock or other debt or equity securities of, or any interest in, another Person or any integral part of any business or the assets comprising such business or part thereof.

"Liabilities": At any date of determination, the aggregate amount of liabilities appearing on the Borrower's balance sheet at such date prepared in accordance with GAAP.

"Lender" shall mean any Person designated by the Administrative Agent as a "Lender" hereunder by notice to the Borrower and accepted by the Borrower as a "Lender", such acceptance to be deemed given upon issuance of a Note hereunder to such Person in exchange for a Loan hereunder. The term "Lender" includes all holders of Prior Notes.

"Lien": Any security interest, mortgage, pledge, lien, hypothecation, judgment lien or similar legal process, charge, encumbrance, title retention agreement or analogous instrument or device (including, without limitation, the interest of the lessors under capitalized leases and the interest of a vendor under any conditional sale or other title retention agreement).

"Loan": Any Loan described in Section 2.2.

"Loan Documents": This Agreement, any Note issued and outstanding from time to time, the Security Agreement, the Depository Account Pledge Agreement, the Personal Guaranty, the Corporate Guaranty, and each other instrument, document, guaranty, security agreement, mortgage, or other agreement executed and delivered by the Borrower pursuant to which the Borrower incurs any liability to a Lender with respect to the Obligations, agrees to perform any covenant or agreement with respect to the Obligations or grants any security interest to secure the Obligations.

PCI-SW-049-001518

"Maturity Date": Any date designated in any Note as the final date on which all principal and accrued interest, if any, thereunder is due and payable to the holder thereof.

"Note": (i) Any Promissory Note or Zero Coupon Promissory Note of the Borrower, issued to a Lender substantially in the form attached hereto as Exhibit A-1 or Exhibit A-2, respectively, and accepted by Lender, as such promissory note may be amended, modified or supplemented from time to time, and such term shall include any substitutions for, or renewals of, such promissory note; and (ii) all Prior Notes.

"Obligations": All Loan advances, debts, liabilities, obligations, covenants and duties owing by the Borrower to a Lender of any kind or nature, present or future, which arise under this Agreement or any other Loan Document or by operation of law, whether or not evidenced by any note, guaranty or other instrument, whether or not for the payment of money, whether arising by reason of an extension of credit, opening, guarantying or confirming of a letter of credit, guaranty, indemnification or in any other manner, whether joint, several, or joint and several, direct or indirect (including those acquired by assignment or purchases), absolute or contingent, due or to become due, and however acquired. The term includes, without limitation, all principal, interest, fees, charges, expenses, attorneys' fees, and any other sum chargeable to the Borrower under this Agreement or any other Loan Document.

"Origination Fee": Any origination fee established by agreement between the Borrower and Lender as provided in Section 2.7 in connection with the making of any Loan hereunder.

"Person": Any natural person, corporation, partnership, joint venture, firm, association, trust, unincorporated organization, government or governmental agency or political subdivision, or any other entity, whether acting in an individual, fiduciary or other capacity.

"Personal Guaranty" means the guaranty as of even date herewith executed by Thomas J. Petters, an individual resident of the State of Minnesota.

"Prior Notes": means the following Zero Coupon Promissory Notes of the Borrower issued and outstanding and held by a Lender on the date hereof: (a) dated May 25, 2001, in the original principal amount of $14,880,000.00; (c) dated July 26, 2001, in the original principal amount of $28,000,000.00; (d) dated July 31, 2001, in the original principal amount of $2,240,000.00; (e) dated July 31, 2001, in the original principal amount of $5,600,000.00; (f) dated August 31, 2001, in the original principal amount of $1,122,500.00; and (g) dated August 31, 2001, in the original principal amount of $28,062,500.00.

"Related Party": Any Person: (a) which directly or indirectly, through one or more intermediaries, controls, or is controlled by, or is under common control with, the Borrower or any Guarantor; (b) which beneficially owns or holds 5% or more of the equity interest of the Borrower or any Guarantor; or (c) 5% or more of the equity interest of which is beneficially owned or held by the Borrower. The term "control" means the possession, directly or indirectly, of the power to direct or cause the direction of the management and policies of a Person, whether through the ownership of voting securities or by contract.

5

PCI-SW-049-001519

"Security Agreement": means the Amended and Restated Security Agreement dated as of October 31, 2001, made by the Borrower in favor of Stafford Towne, Ltd.., as Collateral Agent.

"Subsidiary": Any Person of which or in which the Borrower and its other Subsidiaries, if any, own directly or indirectly 50% or more of: (a) the combined voting power of all classes of stock having general voting power under ordinary circumstances to elect a majority of the board of directors of such Person, if it is a corporation, (b) the capital interest or profit interest of such Person, if it is a partnership, joint venture or similar entity, or (c) the beneficial interest of such Person, if it is a trust, association or other unincorporated organization.

"Term": The period of time commencing on the date hereof and ending on the last to occur of (i) October 31, 2002, as such date may be extended by written agreement of the Borrower and the Administrative Agent, or (ii) the date each Note issued hereunder is paid in full pursuant to its terms and all other Obligations of the Borrower to the Lenders hereunder and under the Notes and the other Loan Documents have been paid in full.

**Section 1.3   Accounting Terms and Calculations**. Except as may be expressly provided to the contrary herein, all accounting terms used herein shall be interpreted and all accounting determinations hereunder shall be made in accordance with GAAP consistently applied for the Borrower as used in the preparation of the Borrower's financial statements.

**Section 1.4   Other Definitional Provisions**. The words "hereof," "herein," and "hereunder" and words of similar import when used in this Agreement shall refer to this Agreement as a whole and not to any particular provision of this Agreement. References to Sections, Exhibits, Schedules and like references are to this Agreement unless otherwise expressly provided.

## ARTICLE 2. TERMS OF LENDING

**Section 2.1   No Commitment to Lend.** Notwithstanding any provision of this Agreement to the contrary, the Administrative Agent and the Lenders have not committed and do not commit hereunder to make any Loan, to advance any moneys, to purchase any Note or evidence of indebtedness of Borrower or to otherwise provide any credit to Borrower.

**Section 2.2   Loans**. Subject to the terms and conditions hereof and in reliance upon the warranties of the Borrower herein, any Lender may in its sole and absolute discretion make loans to Borrower from time to time during the Term (each, a "Loan") by purchasing a Note issued by Borrower at a price determined by Borrower and such Lender at the time of sale. All Loans shall be advanced by Lender directly to the Depository Account.

PCI-SW-049-001520

## Section 2.3  Borrowing Procedures.

(a)     The Borrower will make a request for a Loan from the Administrative Agent in such manner as the Administrative Agent may from time to time prescribe. In the absence of further Administrative Agent instruction, any request by the Borrower for a Loan shall be in writing, on the form attached hereto as Exhibit C, or by telephone promptly confirmed in writing, and must be given so as to be received by the Administrative Agent not later than 11:00 a.m., New York time, on the third $(3^{rd})$ Business Day prior to the requested date of funding of the Loan. Each request for a Loan shall specify the Closing Date (which shall be a Business Day) and the amount of such Loan. Each request for a Loan shall be deemed a representation and warranty by the Borrower that all conditions precedent specified in Section 3.2 to such Loan are satisfied on the date of such request and on the Closing Date and (ii) no breach or default under, and no Event of Default defined or described in, this Agreement or any of the Loan Documents will exist.

(b)     Any Lender, in its sole discretion, shall determine if it will make a Loan and the amount of any such Loan pursuant to the terms of this Agreement. The Borrower acknowledges that any Lender may make Loans on the basis of Collateral available hereunder and under the Loan Documents or any other basis deemed appropriate by such Lender from time to time. Any Lender may change from time to time, at its sole discretion and without notice to Borrower, the standards, criteria and formulae used by such Lender in determining the type and amount of any Loan it may make or any Collateral deemed eligible as security for a Loan. In any event, subject to change at a Lender's discretion, the Borrower shall not request Loans on the basis of Collateral other than Eligible Inventory.

(c)     The Administrative Agent may maintain from time to time, at its discretion, liability records as to any and all Loans made or repaid and interest accrued or paid under this Agreement. All entries made on any such record shall be presumed correct until the Borrower establishes the contrary. On demand by Administrative Agent, the Borrower will admit and certify in writing the exact principal balance which Borrower then asserts to be outstanding to Lenders for Loans under this Agreement.

**Section 2.5     Interest on Loans.** Each such Loan shall bear interest at the rate as set forth in the related Note. No provision of this Agreement or any Note shall require the payment of interest in excess of the rate permitted by applicable law.

**Section 2.6     Default Rate.** Any overdue principal of any Note shall bear interest at the Default Rate provided in such Note, which shall accrue from the Maturity Date of such Note to the date payment of such principal has been made or duly provided for.

**Section 2.7     Origination Fee.** If it be a condition of the making of any Loan that the Borrower pay to any Lender an origination fee (the "Origination Fee"), such fee shall be non-refundable and payable in full at the time of the making of the Loan. No termination or reduction of any Loan and no failure of the Borrower to satisfy any conditions set forth herein shall entitle the Borrower to a refund of any portion of the Origination Fee. If there is an

7

Origination Fee owing to a Lender from Borrower in connection with any Loan, at such Lender's discretion, it may wire the purchase price for any Note in an amount net of the Origination Fee owing from Borrower.

Section 2.8   Net Payments. All payments made by the Borrower hereunder and under any Note will be made without setoff, counterclaim or other defense. All such payments will be made free and clear of, and without deduction or withholding for, any present or future taxes, levies, imposts, duties, fees, assessments or other charges of whatever nature now or hereafter imposed by any jurisdiction or by any political subdivision or taxing authority thereof or therein with respect to such payments (but excluding any tax imposed on or measured by the net income of net profits of a Lender pursuant to the laws of the jurisdiction in which it is organized or the jurisdiction in which the principal office or applicable lending office of such Lender is located or any subdivision thereof or therein) and all interest, penalties or similar liabilities with respect to such taxes, levies, imposts, duties, fees, assessments or other charges (all such non-excluded taxes, levies, imposts, duties, fees, assessments or other charges being referred to collectively as "Taxes"). If any Taxes are so levied or imposed, the Borrower agrees to pay the full amount of such Taxes, and such additional amounts as may be necessary so that every payment of all amounts due under this Agreement or under any Note, after withholding or deduction for or on account of any Taxes, will not be less than the amount provided for herein or in such Note.

## ARTICLE 3. CONDITIONS PRECEDENT

Section 3.1   Conditions of Initial Loan, etc. The initial Loan made hereunder shall be subject to the satisfaction of the conditions precedent, in addition to the applicable conditions precedent set forth in Section 3.2 below, that the Administrative Agent shall have received all of the following, in form and substance satisfactory to the Administrative Agent, each duly executed and certified or dated the Closing Date or such other date as is satisfactory to the Administrative Agent:

(a)   The Note appropriately completed and duly executed by the Borrower;

(b)   The other Loan Documents appropriately completed and duly executed by the Borrower and the other parties thereto;

(c)   One or more UCC-1 Financing Statements in a form acceptable to the Administrative Agent appropriately completed in favor of the Collateral Agent, describing the Collateral and intended to perfect the security interest of the Collateral Agent, on behalf of the Lenders, in the Collateral;

(d)   Recent UCC searches from the filing offices in all states required by the Administrative Agent which reflect that no Person other than the Collateral Agent, on behalf of the Lenders, holds a Lien in the Borrower's assets;

(e)   A certificate of the Secretary of the Borrower having attached (a) a copy of the resolution of the Borrower authorizing the execution, delivery and performance of the Loan Documents, certified by the Secretary or an Assistant Secretary of the

PCI-SW-049-001522

Borrower; (ii) an incumbency certificate showing the names and titles, and bearing the signatures of, the officers of the Borrower authorized to execute the Loan Documents ; and (iii) a copy of the Borrower's articles of incorporation and bylaws with all amendments thereto;

(f)     A copy of the articles of incorporation of the Borrower with all amendments thereto, certified by the appropriate governmental official of the jurisdiction of its organization as of a date acceptable to the Administrative Agent;

(g)     Certificates of good standing for the Borrower in the jurisdiction of its organization and such other states as the Borrower is required to qualify to do business, certified by the appropriate governmental officials as of a date acceptable to the Administrative Agent;

(h)     An opinion of counsel to the Borrower, addressed to the Administrative Agent and the Lenders, in form and substance satisfactory to the Administrative Agent;

(i)     Evidence of insurance for all insurance required by the Loan Documents;

(j)     Such other approvals, opinions or documents as the Administrative Agent may reasonably request.

Provided, however, that any Lender may elect to advance the purchase price for the Note to the Depository Account prior to satisfaction of all conditions in this Section 3.1 and the act of doing so shall not be deemed a waiver of any theretofore unsatisfied condition unless Administrative Agent expressly waives such condition in writing.

Section 3.2     **Conditions to Each Loan.** Each Loan shall be subject to Borrower's satisfaction of all the following conditions precedent:

(a)     The Lender making the Loan shall have received a Note, duly executed by Borrower with all information completed accurately describing the Borrower's Obligation thereunder;

(b)     The Borrower's representations and warranties contained in Article 4 shall be true and correct, as though made on the Closing Date;

(c)     Before and after giving effect to such Loan, no Default or Event of Default shall have occurred and be continuing;

(d)     Such Loan shall be for the sole purpose of making payment on an invoice for merchandise being acquired for Borrower's inventory;

(e)     The Administrative Agent shall have received the Borrower's written request for such Loan in the form set forth in Exhibit C prior to the proposed Closing Date. Borrower's written request for such Loan shall include the following information:

(i)     the proposed Closing Date;

PCI-SW-049-001523

(ii)    a complete copy (including all attachments and schedules) of any invoice for purchased merchandise issued to Borrower from the merchandise vendor that will be paid in part with the Loan;

(iii)    if not stated in such invoice, wire transfer instructions for direct payment of the Loan from the Depository Account to the account of such vendor;

(iv)    a complete copy (including all attachments and schedules) of the purchase order duly and validly issued by Borrower to such vendor with respect to the merchandise invoiced;

(v)    evidence in a form satisfactory to Administrative Agent demonstrating that the Loan represents not more than seventy percent (70%) of the Borrower's cost of the merchandise invoiced;

(vi)    a complete copy (including all attachments and schedules) of the purchase order(s) received by Borrower from its customer(s) pursuant to which Borrower is selling all merchandise to be purchased to such vendor;

(vii)    the location(s) of the merchandise to be purchased with the proceeds of the Loan, including street address and county; and

(viii)    a description of the merchandise in such detail as Administrative Agent reasonably requests;

(f)    The amount of such Loan shall not exceed seventy percent (70%) of the Borrower's cost of merchandise to be purchased with such funds;

(g)    The Administrative Agent shall have received evidence in a form satisfactory to Administrative Agent of Borrower's payment of the entire balance of the purchase price of the merchandise to be purchased with the Loan from funds other than a Loan;

(h)    Upon its purchase by the Borrower, the merchandise will be Eligible Inventory;

(i)    Borrower shall have received a purchase order from a customer with respect to all merchandise to be purchased with such Loan in form and substance satisfactory to Administrative Agent in its sole and absolute discretion and demonstrating that amounts owing to Borrower from such customer will be Eligible Accounts;

(j)    Borrower shall have provided evidence satisfactory to Administrative Agent that it has instructed its customer in writing to make all payments on amounts owing from such customer by wire transfer directly to the Depository Account;

(k)    Upon request of Administrative Agent, in the event the Administrative Agent or such Lender permits Borrower to sell any Inventory to customers of the Corporate Guarantor or any other Related Party, pursuant to purchase orders issued to the

10

PCI-SW-049-001524

Corporate Guarantor or such other Related Party, Borrower shall file a UCC Financing Statement against such Corporate Guarantor or Related Party in favor of the Borrower, describing the assignment of such purchase orders to the Borrower and the Collateral Agent;

(l)     Upon request of Administrative Agent, Borrower shall file, in favor of the Borrower or the Collateral Agent, a precautionary UCC Financing Statement against the vendors of Eligible Inventory purchased by it with respect to such Eligible Inventory, provided, however that Borrower's obligation to make such filing is conditioned upon obtaining the consent of such vendors with respect to such filing, which Borrower shall use commercially reasonable efforts to obtain and which Borrower acknowledges will, if commercially reasonable, be obtained with respect to any vendor upon its execution of the Bill of Sale in the form attached hereto as Exhibit D. Such financing statement shall describe the Eligible Inventory purchased and note that the relationship between Borrower or Collateral Agent and vendors of Eligible Inventory is that of Bailee/Bailor or Seller/Buyer;

(m)     If the Lender making the Loan shall so request, the Lender making the Loan shall have received a Certificate of the Borrower in a form acceptable to Lender stating that the Note has been duly issued..

**Section 3.3** **Withdrawal of Funds from Depository Account.** Pursuant to the terms of the Depository Account Pledge Agreement, the Borrower may not withdraw funds from the Depository Account in the absence of prior written consent of the Administrative Agent. Borrower acknowledges and agrees that the Administrative Agent, without seeking the consent of the Borrower, will withdraw funds from the Depository Account under the terms of the Depository Account Pledge Agreement from time to time in order to make payments due and payable on the Notes.

## ARTICLE 4. REPRESENTATIONS AND WARRANTIES

To induce the Lenders to make Loans and purchase the Notes, the Borrower represents and warrants to the Administrative Agent and to each Lender:

**Section 4.1     Organization, Standing, etc.** The Borrower is a corporation duly organized and validly existing and in good standing under the laws of the State of its organization and has all requisite power and authority to carry on its business as now conducted, to enter into the Loan Documents to which it is a party and to perform its obligations under such Loan Documents. The Borrower is duly qualified and in good standing as a foreign corporation in each jurisdiction in which the character of the properties owned, leased or operated by it or the business conducted by it makes such qualification necessary and where the failure to qualify could constitute an Adverse Event.

**Section 4.2     Authorization and Validity.** The execution, delivery and performance by the Borrower of the Loan Documents to which it is a party have been duly authorized by all necessary company action. The Loan Documents to which the Borrower is a party constitute the

PCI-SW-049-001525

legal, valid and binding obligations of the Borrower enforceable against the Borrower in accordance with their respective terms, subject to limitations as to enforceability which might result from bankruptcy, insolvency, moratorium and other similar laws affecting creditors' rights generally and subject to limitations on the availability of equitable remedies.

**Section 4.3    No Conflict, No Default.** The execution, delivery and performance by the Borrower of the Loan Documents to which it is a party will not: (a) violate any provision of any law, statute, rule or regulation or any order, writ, judgment, injunction, decree, determination or award of any court, governmental agency or arbitrator presently in effect having applicability to the Borrower; (b) violate or contravene any provisions of the Borrower's articles of incorporation or bylaws; or (c) result in a breach of or constitute a default under any indenture, loan or credit agreement or any other agreement, lease or instrument to which the Borrower is a party or by which it or any of its properties may be bound or result in the creation of any Lien on any asset of the Borrower except for Liens created by the Loan Documents. The Borrower is not in default under or in violation of any such law, statute, rule or regulation, order, writ, judgment, injunction, decree, determination or award or any such indenture, loan or Loan Agreement or other agreement, lease or instrument in any case in which the consequences of such default or violation constitute an Adverse Event. No Default or Event of Default has occurred and is continuing.

**Section 4.4    Agreements with Affiliates.** The Borrower is not a party to any agreements with Guarantors or any entities controlled by Guarantors that have not been disclosed in writing to Lender prior to the date hereof.

**Section 4.5    Government Consent.** No order, consent, approval, license, authorization or validation of, or filing, recording or registration with, or exemption by, any governmental or public body or authority is required on the part of the Borrower to authorize, or is required in connection with the execution, delivery and performance of, or the legality, validity, binding effect or enforceability of, the Loan Documents to which it is a party.

**Section 4.6    Litigation.** There are no actions, suits or proceedings pending or, to the knowledge of the Borrower, threatened against or affecting the Borrower, or any of its properties, before any court or arbitrator, or any governmental department, board, agency or other instrumentality.

**Section 4.7    Contingent Obligations.** The Borrower does not have any contingent obligations.

**Section 4.8    Compliance.** The Borrower is in compliance with all statutes and governmental rules and regulations applicable to it.

**Section 4.9    Ownership of Property; Leases; Liens.** The Borrower owns no real estate, and has good and marketable title to its personal property. Borrower has provided to Administrative Agent true and accurate copies of any and all written real property or personal property leases to which it is party, and has accurately described in writing to Administrative Agent any and all unwritten real property or personal property leases to which it is subject, including any leases with Related Parties. None of the properties, revenues or assets of the

PCI-SW-049-001526

Borrower is subject to a Lien except for Liens granted to the Collateral Agent as required by the Loan Documents or granted to the Collateral Agent pursuant to that certain Security Agreement, dated as of April 30, 2001 made by the Borrower and assigned to the Collateral Agent by Assignment Agreement dated May 31, 2001.

Section 4.10 **Indebtedness.** The Borrower does not have any Indebtedness except for Indebtedness to Lenders pursuant to Notes.

Section 4.11 **Guaranty or Suretyship.** The Borrower is not a party to any contract of guaranty or suretyship and none of its assets is subject to such a contract.

Section 4.12 **Taxes.** The Borrower has filed all federal, state and local tax returns required to be filed and has paid or made provision for the payment of all taxes due and payable pursuant to such returns and pursuant to any assessments made against it or any of its property and all other taxes, fees and other charges imposed on it or any of its property by any governmental authority. No tax Liens have been filed and no claims are being asserted with respect to any such taxes, fees or charges. The sum of the charges, accruals and reserves on the books of the Borrower in respect of taxes and other governmental charges are adequate to pay and discharge all such taxes.

Section 4.13 **Subsidiaries.** The Borrower does not have any Subsidiaries.

Section 4.14 **Partnerships and Joint Ventures.** The Borrower is not a partner (limited or general) or joint venturer in any partnerships or joint ventures.

Section 4.15 **Use of Proceeds.** The Loan will be used solely to acquire merchandise from vendors approved by the Administrative Agent that are not Related Parties of the Borrower or any Guarantor, which merchandise when purchased shall have been sold by Borrower to customers approved in advance by the Administrative Agent.

Section 4.16 **Property Purchased From Vendors.** All Inventory purchased by Borrower with the proceeds of a Loan shall be purchased from vendors who are not Related Parties and whose interest therein is not subject to any Lien or encumbrance superior to Borrower's interest therein.

Section 4.17 **Insurance.** Schedule 4.16 to this Agreement describes the property and casualty insurance and credit insurance carried by the Borrower on the date hereof.

Section 4.18 **Contracts.** The Borrower is not a party to any contract or agreement, or subject to any charge, corporate restriction, judgment, decree or order, the performance of which could constitute an Adverse Event.

Section 4.19 **Accuracy of Information.** All factual information heretofore or herewith furnished by the Borrower to the Administrative Agent for purposes of or in connection with this Agreement or any transaction contemplated hereby is, and all other such factual information hereafter furnished by the Borrower to the Administrative Agent will be, true and accurate in every material respect on the date as of which such information is dated or certified and no such

PCI-SW-049-001527

information contains any material misstatement of fact or omits to state any fact necessary to make the statements contained therein not misleading.

Section 4.20  <u>Ownership</u>. As of the Closing Date, all outstanding shares of capital stock of the Borrower and of the Corporate Guarantor are owned by Thomas J. Petters. All of the issued and outstanding shares of common stock of the Borrower and of the Corporate Guarantor are duly authorized, validly issued, fully paid and nonassessable.

Section 4.21  <u>Survival of Representations</u>.   All representations and warranties contained in this Article 4 shall survive the delivery of a Note, the making of any Loan evidenced thereby and any investigation at any time made by or on behalf of a Lender shall not diminish the Lenders' rights to rely thereon.

## ARTICLE 5. AFFIRMATIVE COVENANTS

During the Term, unless the Administrative Agent and all Lenders shall otherwise expressly consent in writing, the Borrower will do all of the following:

Section 5.1  <u>Financial Statements and Reports.</u> Furnish to the Administrative Agent:

(a)  As soon as available and in any event within 30 days after the end of each month of each fiscal year, a copy of the unaudited financial statements of the Borrower prepared in conformity with GAAP (except for the omission of footnotes and prior period comparative data required by GAAP and for variations from GAAP which in the aggregate are not material) consisting of a balance sheet as of the close of such month and related statements of operations and retained earnings and cash flow for such month and from the beginning of such fiscal year to the end of such month together with the other monthly reports required by the Administrative Agent.

(b)  By no later than two (2) Business Days after becoming aware of any Default or Event of Default, a notice describing the nature thereof and what action the Borrower proposes to take with respect thereto.

(c)  By no later than two (2) Business Days after becoming aware of the occurrence thereof, notice of the institution of any litigation, arbitration or governmental proceeding against the Borrower or the Guarantors or any of their property which, if determined adversely to the Borrower or the Guarantors would constitute an Adverse Event, or the rendering of a judgment or decision in such litigation or proceeding which constitutes an Adverse Event, and the steps being taken by the defendant with respect thereto.

(d)  As soon as available and in any event within 30 days after the end of each month of each fiscal year, a copy of the account records relating to the Depository Account as regularly furnished by the Depository Bank.

(e)  If any customer of Borrower shall at any time make payments to any account of the Borrower other than the Depository Account or any account of a Related

PCI-SW-049-001528

Party (although such payments are required hereunder to be made to the Depository Account directly), as soon as available and in any event within 30 days after the end of each month of each fiscal year, a copy of the account records relating to such account for as many months as Administrative Agent may request in its sole discretion.

(f) From time to time, such other information regarding the business, operation and financial condition of the Borrower as the Administrative Agent may reasonably request.

**Section 5.2** **Company Existence.** Maintain its corporate existence and good standing under the laws of its jurisdiction of organization and its qualification to transact business in each jurisdiction in which the character of the properties owned, leased or operated by it or the business conducted by it makes such qualification necessary and where the failure to so qualify could constitute an Adverse Event.

**Section 5.3** **Insurance.** Maintain with financially sound and reputable insurance companies such insurance as may be required by any Loan Document or by law and such other insurance in such amounts and against such hazards as is customary in the case of reputable corporations or companies engaged in the same or similar business and similarly situated. At the request of Lender, Borrower shall purchase credit insurance with respect to account debtors for Accounts of the Borrower and assign benefits payable thereunder to Lender in a form acceptable to Lender, provided that Lender shall have agreed to reimburse Borrower for the cost of such insurance.

**Section 5.4** **Payment of Taxes and Claims.** File all tax returns and reports which are required by law to be filed by it and pay before they become delinquent all taxes, assessments and governmental charges and levies imposed upon it or its property and all claims or demands of any kind (including, without limitation, those of suppliers, mechanics, carriers, warehouses, landlords and other like Persons) which, if unpaid, might result in the creation of a Lien upon its property. Borrower shall provide proof of such filings upon the request of Administrative Agent within ten (10) days of receipt of such request.

**Section 5.5** **Inspection.** Permit any Person designated by the Administrative Agent to visit and inspect any of its properties, company books and financial records, or, on behalf of the Borrower with its permission deemed granted by execution hereof, any warehouse or location where Inventory is stored at any time, and to make copies of Borrower's books of accounts and other financial records, and to discuss the affairs, finances and accounts of the Borrower with, and to be advised as to the same by, its officers at such reasonable times and intervals as the Administrative Agent may designate.

**Section 5.6** **Maintenance of Properties.** Provide copies or descriptions of all real property or personal property leases its enters into during the Term within thirty (30) days of commencement of such lease. Borrower shall maintain its properties used or useful in the conduct of its business in good condition, repair and working order, and supplied with all necessary equipment, and make all necessary repairs, renewals, replacements, betterments, and improvements thereto, all as may be necessary so that the business carried on in connection therewith may be properly and advantageously conducted at all times.

PCI-SW-049-001529

Section 5.7  **Books and Records**.  Keep adequate and proper records and books of account in which full and correct entries will be made of its dealings, business and affairs.

Section 5.8  **Bills of Sale**.  If the Administrative Agent shall so request, deliver to the Administrative Agent an executed Bill of Sale from each merchandise vendor with respect to the Inventory purchased by the Borrower in the form set forth in Exhibit D not later than three (3) business days following the making of the Loan financing such purchase.

Section 5.9  **Compliance**.  Comply in all material respects with all laws, rules, regulations, orders, writs, judgments, injunctions, decrees or awards to which it may be subject.

## ARTICLE 6. NEGATIVE COVENANTS

During the Term, unless the Administrative Agent shall otherwise expressly consent in writing, the Borrower will not do any of the following:

Section 6.1  **Merger**.  Merge or consolidate or enter into any analogous reorganization or transaction with any Person.

Section 6.2  **Sale of Assets**.  Sell, transfer, lease, or otherwise convey all or any part of its assets except for sales of Inventory in the ordinary course of business and for the fair market value thereof.

Section 6.3  **Change in Nature of Business**.  Make any material change in the nature of its business as carried on at the date hereof.

Section 6.4  **Subsidiaries, Partnerships and Joint Ventures**.  Either: (a) form or acquire any corporation or company which would thereby become a Subsidiary; or (b) form or enter into any partnership as a limited or general partner or form or enter into any joint venture.

Section 6.5  **Other Agreements**.  Enter into any agreement, bond, note or other instrument with or for the benefit of any Person other than the Administrative Agent or the Lenders which would: (a) prohibit the Borrower from granting, or otherwise limit the ability of the Borrower to grant to the Collateral Agent, or any other Person designated by Administrative Agent, any Lien on any assets or properties of the Borrower; or (b) be violated or breached by the Borrower's performance of its obligations under the Loan Documents.

Section 6.6  **Payment Terms**.  Materially change its selling terms of payment on accounts as in effect on the date of this Agreement.

Section 6.7  **Investments**.  Acquire for value, make, have or hold any Investments, except deposits in the Depository Account or such other Investments authorized by Lender in writing.

Section 6.8  **Indebtedness**.  Incur, create, issue, assume or suffer to exist any Indebtedness except

16

PCI-SW-049-001530

(a)     Indebtedness to a Lender;

(b)     Current liabilities, other than for borrowed money, incurred in the ordinary course of business; and

(c)     Indebtedness consisting of endorsements for collection, deposit or negotiation and warranties of products or services, in each case incurred in the ordinary course of business.

**Section 6.9    Liens**.  Create, incur, assume or suffer to exist any Lien with respect to any property, revenues or assets now owned or hereafter arising or acquired, except:

(a)     Liens granted for the benefit of the Lenders;

(b)     Deposits or pledges to secure payment of workers' compensation, unemployment insurance, old age pensions or other social security obligations, in the ordinary course of business of the Borrower;

(c)     Liens for taxes, fees, assessments and governmental charges not delinquent;

(d)     Liens of carriers, warehousemen, mechanics and materialmen, and other like Liens arising in the ordinary course of business, for sums not due; and

(e)     Deposits to secure the performance of bids, trade contracts, leases, statutory obligations and other obligations of a like nature incurred in the ordinary course of business.

**Section 6.10    Contingent Liabilities**.  Either:  (a) endorse, guarantee, contingently agree to purchase or to provide funds for the payment of, or otherwise become contingently liable upon, any obligation of any other Person, except by the endorsement of negotiable instruments for deposit or collection (or similar transactions) in the ordinary course of business; or (b) agree to maintain the net worth or working capital of, or provide funds to satisfy any other financial test applicable to, any other Person.

**Section 6.11    Unconditional Purchase Obligations**.  Enter into or be a party to any contract for the purchase or lease of materials, supplies or other property or services if such contract requires that payment be made by it regardless of whether or not delivery is ever made of such materials, supplies or other property or services.

**Section 6.12    Purchase Orders and Accounts**.  Cancel or modify, or permit a customer to cancel or modify, any purchase order received by the Borrower from any customer.

17

PCI-SW-049-001531

## ARTICLE 7. <u>EVENTS OF DEFAULT AND REMEDIES</u>

**Section 7.1**    <u>Events of Default</u>.  The occurrence of any one or more of the following events shall constitute an Event of Default upon the expiration of the cure period, if any, described in the relevant event:

(a)    The Borrower shall fail to make when due, whether by acceleration or otherwise, (i) any payment of principal of, or interest on, any Note or (ii) any fee or other amount required to be made to the Lender pursuant to any Loan Document; or

(b)    Any representation or warranty made or deemed to have been made by or on behalf of the Borrower or Guarantors in any of the Loan Documents by or on behalf of the Borrower or Guarantors in any certificate, statement, report or other writing furnished by or on behalf of the Borrower to the Administrative Agent or any Lender pursuant to the Loan Documents shall prove to have been false or misleading in any material respect on the date as of which the facts set forth are stated or certified or deemed to have been stated or certified; or

(c)    The Borrower shall fail to comply with <u>Section 5.1(c)</u>, <u>Section 5.2</u>, <u>Section 5.3</u>, or any Section of <u>Article 6</u> hereof; or

(d)    The Borrower shall fail to comply with any agreement, covenant, condition, provision or term contained in the Loan Documents on its part to be performed (and such failure shall not constitute an Event of Default under any of the other provisions of this <u>Section 7.1</u>) and such failure to comply shall continue for 10 calendar days after notice thereof to the Borrower by the Administrative Agent or any Lender; or

(e)    The Borrower, any Guarantor or any Related Party shall become Insolvent or shall generally not pay its or his debts as they mature or shall apply for, shall consent to, or shall acquiesce in the appointment of a custodian, trustee or receiver of the Borrower, any Guarantor or any Related Party, or for a substantial part of the property of any one of them or, in the absence of such application, consent or acquiescence, a custodian, trustee or receiver shall be appointed for the Borrower, any Guarantor or any Related Party, or for a substantial part of the property of any one of them and shall not be discharged within 30 days; or

(f)    Any bankruptcy, reorganization, debt arrangement or other proceedings under any bankruptcy or insolvency law shall be instituted by or against the Borrower, any Guarantor or any Related Party, and, if so instituted, shall have been consented to or acquiesced in by the Borrower, any Guarantor or Related Party, or shall remain undismissed for 60 days, or an order for relief shall have been entered against the Borrower, any Guarantor or Related Party, or such debtor shall take any corporate action to approve institution of, or shall have acquiesced in, such a proceeding; or

(g)    Any dissolution or liquidation proceeding shall be instituted by or against the Borrower, the Corporate Guarantor, or a Related Party and, if so instituted, shall be consented to or acquiesced in by the Borrower, the Corporate Guarantor, or a Related

18

Party shall remain for 60 days undismissed, or the Borrower, the Corporate Guarantor, or Related Party shall take any corporate action to approve institution of, or acquiescence in, such a proceeding; or

(h)     A judgment or judgments for the payment of money in excess of the sum of $5,000.00 in the aggregate shall be rendered against the Borrower or any Guarantor and the Borrower or any Guarantor shall not discharge the same or provide for its discharge in accordance with its terms, or procure a stay of execution thereof, prior to any execution on such judgments by such judgment creditor, within 30 days from the date of entry thereof, and within said period of 30 days, or such longer period during which execution of such judgment shall be stayed, appeal therefrom and cause the execution thereof to be stayed during such appeal; or

(i)     The maturity of any Indebtedness of the Borrower or any Guarantor (other than Indebtedness under this Agreement or the other Loan Documents) shall be accelerated, or the Borrower or any Guarantor fail to pay any such Indebtedness when due and any applicable grace period shall have expired or, in the case of such Indebtedness payable on demand, when demanded, or any event shall occur or condition shall exist and shall continue for more than the period of grace, if any, applicable thereto and shall have the effect of causing, or permitting (any required notice having been given and grace period having expired) the holder of any such Indebtedness or any trustee or other Person acting on behalf of such holder to cause such Indebtedness to become due prior to its stated maturity or to realize upon any collateral given as security therefor; or

(j)     Thomas J. Petters shall cease to own all of the issued and outstanding capital stock on a fully-diluted basis of the Borrower or the Corporate Guarantor; or

(k)     Thomas J. Petters shall die or become physically disabled; or

(l)     If the validity or enforceability of any of the Loan Documents shall be challenged by the Borrower or any other party thereto, or shall fail to remain in full force and effect; or

(m)     The Administrative Agent shall have determined in good faith the Lenders' interest in any material Collateral has been materially adversely affected or impaired, or the value thereof to the Lenders has been diminished to a material extent, and the condition giving rise to such determination does not constitute an Event of Default under any of the other subsections of this Section 7.1.

**Section 7.2     Remedies**. If: (a) any Event of Default described in Sections 7.1(e), (f) or (g) shall occur, the outstanding unpaid principal balance of the Note, the accrued interest thereon and all other Obligations under the Loan Documents shall automatically become immediately due and payable; or (b) any other Event of Default shall occur and be continuing, then the Administrative Agent may take any or all of the following actions: (i) declare that the outstanding unpaid principal balance of any or all Notes, the accrued and unpaid interest thereon and all other Obligations under the Loan Documents to be forthwith due and payable, whereupon the Notes, all accrued and unpaid interest thereon and all such Obligations shall immediately

PCI-SW-049-001533

become due and payable, in each case without demand or notice of any kind, all of which are hereby expressly waived, anything in this Agreement or in any Note to the contrary notwithstanding; (ii) exercise all rights and remedies under any other instrument, document or agreement between the Borrower and Administrative Agent or any Lender; and (iii) enforce all rights and remedies under any applicable law.

Section 7.3    Offset.  In addition to the remedies set forth in Section 7.2, upon the occurrence of any Event of Default or at any time thereafter while such Event of Default continues, the Administrative Agent, any Lender or any other holder of any Note may offset any and all balances, credits, deposits (general or special, time or demand, provisional or final), accounts or monies of the Borrower then or thereafter with such Lender or such other holder, or any obligations of such Lender or such other holder of such Note, against the Indebtedness then owed by the Borrower to such Lender.  The Borrower hereby grants to the Lenders and each other Note holder a security interest in all such balances, credits, deposits, accounts or monies.

## ARTICLE 8. ADMINISTRATIVE AGENT

Section 8.1    Appointment.    The Lenders hereby designate and appoint Stafford Towne, Ltd. as Administrative Agent (for purposes of this Article 8, the term "Administrative Agent" also shall include Stafford Towne, Ltd., in its capacity as Collateral Agent pursuant to the Security Agreement and the Depository Account Pledge Agreement) to act as specified herein and in the other Loan Documents. Each Lender hereby irrevocably authorizes, and each holder of any Note by the acceptance of such Note shall be deemed irrevocably to authorize, the Administrative Agent to take such action on its behalf under the provisions of this Agreement, the other Loan Documents and any other instruments and agreements referred to herein or therein and to exercise such powers and to perform such duties hereunder and thereunder as are specifically delegated to or required of the Administrative Agent by the terms hereof and thereof and such other powers as are reasonably incidental thereto. The Administrative Agent may perform any of its duties hereunder by or through its officers, directors, agents, employees or affiliates.

Section 8.2    Nature of Duties.  The Administrative Agent shall not have any duties or responsibilities except those expressly set forth in this Agreement and in the other Loan Documents.   Neither the Administrative Agent nor any of its officers, directors, agents, employees or affiliates shall be liable for any action taken or omitted by any of them hereunder or under any other Loan Document or in connection herewith or therewith, unless caused by its or their gross negligence or willful misconduct (as determined by a court of competent jurisdiction in a final and non-appealable decision). The duties of the Administrative Agent shall be mechanical and administrative in nature; the Administrative Agent shall not have by reason of this Agreement or any other Loan Document a fiduciary relationship in respect of any Lender or the holder of any Note; and nothing in this Agreement or in any other Loan Document, expressed or implied, is intended to or shall be so construed as to impose upon the Administrative Agent any obligations in respect of this Agreement or any other Loan Document except as expressly set forth herein or therein.

20

PCI-SW-049-001534

**Section 8.3** **Lack of Reliance on the Agent.** Independently and without reliance upon the Administrative Agent, each Lender and the holder of each Note, to the extent it deems appropriate, has made and shall continue to make (i) its own independent investigation of the financial condition and affairs of the Borrower in connection with the making and the continuance of the Loans and the taking or not taking of any action in connection herewith and (ii) its own appraisal of the creditworthiness of the Borrower and, except as expressly provided in this Agreement, the Administrative Agent shall not have any duty or responsibility, either initially or on a continuing basis, to provide any Lender or the holder of any Note with any credit or other information with respect thereto, whether coming into its possession before the making of the Loans or at any time or times thereafter. The Administrative Agent shall not be responsible to any Lender or the holder of any Note for any recitals, statements, information, representations or warranties herein or in any document, certificate or other writing delivered in connection herewith or for the execution, effectiveness, genuineness, validity, enforceability, perfection, collectibility, priority or sufficiency of this Agreement or any other Loan Document or the financial condition of the Borrower or be required to make any inquiry concerning either the performance or observance of any of the terms, provisions or conditions of this Agreement or any other Loan Document, or the financial condition of the Borrower or the existence or possible existence of any Default or Event of Default.

**Section 8.4** **Certain Rights of the Agent.** If the Administrative Agent requests instructions from the Lenders with respect to any act or action (including failure to act) in connection with this Agreement or any other Loan Document, such Agent shall be entitled to refrain from such act or taking such action unless and until such Agent shall have received instructions from the Lenders; and such Agent shall not incur liability to any Lender by reason of so refraining. Without limiting the foregoing, neither any Lender nor the holder of any Note shall have any right of action whatsoever against the Administrative Agent as a result of such Agent acting or refraining from acting hereunder or under any other Loan Document in accordance with the instructions of the Lenders.

**Section 8.5** **Reliance.** The Administrative Agent shall be entitled to rely, and shall be fully protected in relying, upon any note, writing, resolution, notice, statement, certificate, telex, teletype or telecopier message, cablegram, radiogram, order or other document or telephone message signed, sent or made by any Person that such Agent believed to be the proper Person, and, with respect to all legal matters pertaining to this Agreement and any other Loan Document and its duties hereunder and thereunder, upon advice of counsel selected by such Agent.

**Section 8.6** **Indemnification.** To the extent the Administrative Agent (or any affiliate thereof) is not reimbursed and indemnified by the Borrower, the Lenders will reimburse and indemnify such Agent (and any affiliate thereof) in proportion to their respective percentage of principal amount of Notes held by them for and against any and all liabilities, obligations, losses, damages, penalties, claims, actions, judgments, costs, expenses or disbursements of whatsoever kind or nature which may be imposed on, asserted against or incurred by such Agent (or any affiliate thereof) in performing its duties hereunder or under any other Loan Document or in any way relating to or arising out of this Agreement or any other Loan Document; *provided* that no Lender shall be liable for any portion of such liabilities, obligations, losses, damages, penalties, claims, actions, judgments, suits, costs, expenses or disbursements resulting from such Agent's

21

PCI-SW-049-001535

(or such affiliate's) gross negligence or willful misconduct (as determined by a court of competent jurisdiction in a final and non-appealable decision).

Section 8.7 **Holders.** The Administrative Agent may deem and treat the payee of any Note as the owner thereof for all purposes hereof unless and until a written notice of the assignment, transfer or endorsement thereof, as the case may be, shall have been filed with the Administrative Agent. Any request, authority or consent of any Person who, at the time of making such request or giving such authority or consent, is the holder of any Note shall be conclusive and binding on any subsequent holder, transferee, assignee or endorser, as the case may be, of such Note or of any Note or Notes issued in exchange therefor.

Section 8.8 **Resignation by the Agent.**

(a) The Administrative Agent may resign from the performance of all its functions and duties hereunder and/or under the other Loan Documents at any time by giving 15 Business Days' prior written notice to the Lenders. Such resignation shall take effect upon the appointment of a successor Administrative Agent pursuant to clauses (b) and (c) below or as otherwise provided below.

(b) Upon any such notice of resignation by the Administrative Agent, the Lenders shall appoint a successor Administrative Agent hereunder or thereunder who shall be a commercial bank or trust company reasonably acceptable to the Borrower, which acceptance shall not be unreasonably withheld or delayed (provided that the Borrower's approval shall not be required if a Default or an Event of Default then exists).

# ARTICLE 9. MISCELLANEOUS

Section 9.1 **Waiver and Amendment.** No failure on the part of the Administrative Agent, any Lender or the holder of any Note to exercise and no delay in exercising any power or right hereunder or under any other Loan Document shall operate as a waiver thereof; nor shall any single or partial exercise of any power or right preclude any other or further exercise thereof or the exercise of any other power or right. The remedies herein and in any other instrument, document or agreement delivered or to be delivered to the Administrative Agent, the Collateral Agent or any Lender hereunder or in connection herewith are cumulative and not exclusive of any remedies provided by law. No notice to or demand on the Borrower not required hereunder or under any Note or any other Loan Document shall in any event entitle the Borrower to any other or further notice or demand in similar or other circumstances or constitute a waiver of the right of the Administrative Agent, the Collateral Agent, any Lender or the holder of any Note to any other or further action in any circumstances without notice or demand. No amendment, modification or waiver of any provision of this Agreement or any Note or consent to any departure by the Borrower therefrom shall be effective unless the same shall be in writing and signed by the Administrative Agent, on behalf of all Lenders, and then such amendment, modification, waiver or consent shall be effective only in the specific instances and for the specific purpose for which given.

22

PCI-SW-049-001536

Section 9.2   **Expenses and Indemnities**.

(a)   **Loan Documents**.  The Borrower agrees to pay and reimburse the Administrative Agent upon demand for all expenses paid or incurred by the Administrative Agent (including fees and expenses of legal counsel, who may be employees of the Administrative Agent or an affiliate) in connection with the collection and enforcement of the Loan Documents.  The Borrower agrees to pay, and save the Administrative Agent and all Lenders harmless from all liability for, any stamp or other taxes which may be payable with respect to the execution or delivery of the Loan Documents.  The Borrower agrees to indemnify and hold the Administrative Agent and all Lenders harmless from any loss or expense which may arise or be created by the acceptance of telephonic or other instructions for making Loan or disbursing the proceeds thereof.

(b)   **General Indemnity**.  In addition to the payment of expenses pursuant to Section 8.2(a), whether or not the transactions contemplated hereby shall be consummated, the Borrower hereby indemnifies, and agrees to pay and hold the Administrative Agent, the Lenders, their affiliates and any holder of any Note, and their respective officers, directors, employees, agents, successors and assigns (collectively called the "Indemnitees") harmless from and against, any and all other liabilities, obligations, losses, damages, penalties, actions, judgments, suits, claims, costs, expenses and disbursements of any kind or nature whatsoever (including, without limitation, the reasonable fees and disbursements of counsel for any of such Indemnitees in connection with any investigative, administrative or judicial proceeding commenced or threatened, whether or not any of such Indemnitees shall be designated a party thereto), that may be imposed on, incurred by, or asserted against the Indemnitees (or any of them), in any manner relating to or arising out of the Loan Documents, the statements contained in any letters delivered by the Administrative Agent or any Lender, or the use or intended use of the proceeds of any of the Loan (the "Indemnified Liabilities"); provided, however, that the Borrower shall have no obligation to an Indemnitee hereunder with respect to Indemnified Liabilities arising from the gross negligence or willful misconduct of an Indemnitee.  To the extent that the undertaking to indemnify, pay and hold harmless set forth in the preceding sentence may be unenforceable because it is violative of any law or public policy, the Borrower shall contribute the maximum portion that it is permitted to pay and satisfy under applicable law, to the payment and satisfaction of all Indemnified Liabilities incurred by the Indemnitees or any of them.

(c)   **Survival**.  The obligations of the Borrower under this Section 8.2 shall survive any termination of this Agreement.

Section 9.3   **Notices**.  Except when telephonic notice is expressly authorized by this Agreement, any notice or other communication to any party in connection with this Agreement shall be in writing and shall be sent by manual delivery, telegram, telex, facsimile transmission, overnight courier or United States mail (postage prepaid) addressed to such party at the address specified on the signature page hereof, or at such other address as such party shall have specified to the other party hereto in writing.  All periods of notice shall be measured from the date of delivery thereof if manually delivered, from the date of sending thereof if sent by telegram, telex

PCI-SW-049-001537

or facsimile transmission, from the first Business Day after the date of sending if sent by overnight courier, or from four days after the date of mailing if mailed; provided, however, that any notice to the Administrative Agent under Article 3 hereof shall be deemed to have been given only when received by the Administrative Agent. The Borrower hereby authorizes the Administrative Agent and any Lender to rely upon the telephone or written instructions of any person identifying himself or herself as an authorized officer of the Borrower and upon any signature which the Administrative Agent or such Lender believes to be genuine, and the Borrower shall be bound thereby in the same manner as if the Borrower were authorized or such signature were genuine.

**Section 9.4    Successors.**  This Agreement shall be binding upon the Borrower, the Administrative Agent, the Lenders, the Collateral Agent and their respective successors and assigns, and shall inure to the benefit of the Borrower, the Administrative Agent, the Lenders, the Collateral · Agent and the successors and permitted assigns of the Borrower, the Administrative Agent and the Lenders. The Borrower shall not assign its rights or duties hereunder without the consent of the Administrative Agent, on behalf of the Lenders. With the prior written consent of the Borrower (other than with respect to any of the transactions described in the proviso clause hereto (an "Exempt Transfer")), which consent shall not be unreasonably withheld or delayed by the Borrower, the Administrative Agent or any Lender may assign its rights and obligations under this Agreement and the Loan Documents to any Person; provided, however, that no Borrower consent shall be required with respect to any assignment made: (a) during any period when an Event of Default has occurred and is continuing; (b) to another subsidiary or affiliate of the Administrative Agent or any Lender; (c) in connection with the sale of all or substantially all of the Administrative Agent's or any Lender's assets; or (d) in response to any regulatory action affecting the Administrative Agent or any Lender.

**Section 9.5    Participations.**  Any Lender may sell participation interests in any or all of the Loan and in all or any portion of the Note to any Person.

**Section 9.6    Severability.**  Any provision of this Agreement which is prohibited or unenforceable in any jurisdiction shall, as to such jurisdiction, be ineffective to the extent of such prohibition or unenforceability without invalidating the remaining provisions hereof or affecting the validity or enforceability of such provision in any other jurisdiction.

**Section 9.7    Captions.**  The captions or headings herein and any table of contents hereto are for convenience only and in no way define, limit or describe the scope or intent of any provision of this Agreement.

**Section 9.8    Entire Agreement.**  This Agreement, the Notes and the other Loan Documents embody the entire agreement and understanding between the Borrower, the Administrative Agent and the Lenders with respect to the subject matter hereof and thereof. This Agreement supersedes all prior agreements and understandings relating to the subject matter hereof.

PCI-SW-049-001538

Section 9.9  Counterparts.  This Agreement may be executed in any number of counterparts, all of which taken together shall constitute one and the same instrument, and either of the parties hereto may execute this Agreement by signing any such counterpart.

Section 9.10  Governing Law.  THE VALIDITY, CONSTRUCTION AND ENFORCEABILITY OF THIS AGREEMENT, THE NOTES AND THE OTHER LOAN DOCUMENTS TO WHICH THE BORROWER IS A PARTY SHALL BE GOVERNED BY THE INTERNAL LAWS OF THE STATE OF MINNESOTA, WITHOUT GIVING EFFECT TO CONFLICT OF LAWS PRINCIPLES THEREOF.

Section 9.11  Consent to Jurisdiction.  AT THE OPTION OF THE ADMINISTRATIVE AGENT, THIS AGREEMENT, THE NOTES AND THE OTHER LOAN DOCUMENTS TO WHICH THE BORROWER IS A PARTY MAY BE ENFORCED IN ANY FEDERAL COURT OR MINNESOTA STATE COURT SITTING IN MINNEAPOLIS OR ST. PAUL, MINNESOTA; AND THE BORROWER CONSENTS TO THE JURISDICTION AND VENUE OF ANY SUCH COURT AND WAIVES ANY ARGUMENT THAT VENUE IN SUCH FORUMS IS NOT CONVENIENT. IN THE EVENT THE BORROWER COMMENCES ANY ACTION IN ANOTHER JURISDICTION OR VENUE UNDER ANY TORT OR CONTRACT THEORY ARISING DIRECTLY OR INDIRECTLY FROM THE RELATIONSHIP CREATED BY THIS AGREEMENT, THE ADMINISTRATIVE AGENT AND THE LENDERS AT THEIR OPTION SHALL BE ENTITLED TO HAVE THE CASE TRANSFERRED TO ONE OF THE JURISDICTIONS AND VENUES ABOVE-DESCRIBED, OR IF SUCH TRANSFER CANNOT BE ACCOMPLISHED UNDER APPLICABLE LAW, TO HAVE SUCH CASE DISMISSED WITHOUT PREJUDICE.

Section 9.12  Waiver of Jury Trial.  THE BORROWER, THE ADMINISTRATIVE AGENT AND THE LENDERS WAIVE ANY RIGHT TO A TRIAL BY JURY IN ANY ACTION OR PROCEEDING TO ENFORCE OR DEFEND ANY RIGHTS (a) UNDER THIS AGREEMENT OR UNDER ANY AMENDMENT, INSTRUMENT, DOCUMENT OR AGREEMENT DELIVERED OR WHICH MAY IN THE FUTURE BE DELIVERED IN CONNECTION HEREWITH, OR (b) ARISING FROM ANY LENDING RELATIONSHIP EXISTING IN CONNECTION WITH THIS AGREEMENT, AND AGREE THAT ANY SUCH ACTION OR PROCEEDING SHALL BE TRIED BEFORE A COURT AND NOT BEFORE A JURY.

[REMAINDER OF PAGE INTENTIONALLY LEFT BLANK]

PCI-SW-049-001539

IN WITNESS WHEREOF, the parties hereto have caused this Agreement to be executed as of the date first above.

"Borrower":

**PETTERS LTD., INC., a Minnesota corporation**

By _____

Its _____

Attention: Deanna Munson
Telephone: (952) 934-9918
Telecopier: (952) 975-2295

[Signature page to Master Loan Agreement, dated as of October 31, 2001, among Petters Ltd., Inc., as Borrower, Stafford Towne, Ltd., as Administrative Agent, and the Lenders party thereto from time to time]

26

PCI-SW-049-001540

## Exhibit A-1

### FORM OF PROMISSORY NOTE

$_____                                    Minneapolis, Minnesota
                                                           [Date]

      FOR VALUE RECEIVED, PETTERS LTD., INC., a Minnesota corporation (the "Borrower"), hereby promises to pay to _____, or assigns (the "Lender"), to the account set forth below, the principal sum of _____ AND 00/100 DOLLARS on the Maturity Date (as defined below).

      The Borrower promises also to pay on the Maturity Date interest on the unpaid principal amount hereof in like money at said office from the date funds are advanced hereunder until paid at the rate of _____ percent (_____%) per month.

      The "Maturity Date" is defined as the first to occur of (1) _____, 200__, or (2) the date that payments received by the Borrower on those certain Accounts arising from the sale of any Inventory purchased by Borrower in part with the proceeds of this Loan equal or exceed, when combined with all other payments on such Accounts, the unpaid principal and accrued interest on this Note.

      This Note is one of the Notes referred to in that certain Master Loan Agreement dated as of October 31, 2001 (herein called the "Agreement") among the Borrower, the Lenders party thereto from time to time, and Stafford Towne, Ltd., as Administrative Agent, to which Agreement and all agreements supplemental thereto reference is hereby made for a statement of the respective rights, limitations of rights, duties and immunities thereunder of the Borrower and the Holder and of the terms upon which this Note is delivered. Capitalized terms not otherwise defined herein shall have the meaning ascribed to them in the Agreement. This Note is secured by and the Holder hereof is entitled to the benefits provided under the Loan Documents (as defined in the Agreement). This Note is entitled to the benefits of the Corporate Guaranty and the Personal Guaranty (each as defined in the Agreement). This Note is subject to prepayment prior to the Maturity Date, in whole or in part, at any time, without premium or penalty.

      In the case of a default in payment of principal upon acceleration, upon redemption or repayment or at the Maturity Date, and in such case the overdue principal of this Note shall bear interest at a rate of _____ percent (_____%) per calendar day accruing from the Maturity Date to the date payment of such principal has been made or duly provided for, provided that if payment is not made within thirty (30) calendar days following the Maturity Date then the overdue principal of this Note shall thereafter bear interest at a rate of _____ percent (_____%) per calendar day to the date payment of such principal has been made or duly provided for. Interest on any overdue principal shall be payable upon demand. Any such interest on any overdue principal that is not so paid on demand shall bear interest at the same rate as the interest on the overdue principal (to the extent that the payment of such interest shall be legally enforceable), which shall accrue from the date of such demand for

PCI-SW-049-001541

payment to the date payment of such interest has been made or duly provided for, and such interest shall also be payable upon demand. In the event that the Maturity Date is not a Business Day, the principal otherwise payable on such Maturity Date will be paid on the next succeeding Business Day with the same force and effect as if made on such Maturity Date.

If an Event of Default shall occur and be continuing, the principal of and accrued interest on this Note may become or be declared to be due and payable in the manner and with the effect provided in the Agreement.

The Borrower hereby waives presentment, demand, protest or notice of any kind in connection with this Note.

No reference herein to the Agreement and no provision of this Note or of the Agreement shall alter or impair the obligation of the Borrower, which is absolute and unconditional, to pay the principal of (and premium, if any) and interest on this Note at the times, place and rate, and in the coin or currency, herein prescribed.

The transfer of this Note is registrable in the security register maintained by the Borrower, upon surrender of this Note for registration of transfer at the office or agency of the Borrower in any place where the principal of (and premium, if any) and interest on this Note are payable, duly endorsed by, or accompanied by a written instrument of transfer in form satisfactory to the Borrower duly executed by, the Holder or such Holder's attorney duly authorized in writing, and thereupon one or more new Notes of this series, of like tenor and of authorized denominations and for the same aggregate principal amount, will be issued to the designated transferee or transferees.

Prior to due presentment of this Note for registration of transfer, the Borrower and any agent of the Borrower may treat the Person in whose name this Note is registered in the security register as the owner hereof for all purposes, whether or not this Note be overdue, and neither the Borrower nor any such agent shall be affected by notice to the contrary.

This Note shall be governed by and construed in accordance with the laws of the State of Minnesota. The venue, jurisdiction and jury trial waiver provisions set forth in the Agreement are applicable to the Note as if fully set forth herein.

Payment of the principal of and interest, if any, on this Note will be made in such coin or currency of the United States of America as at the time of payment is legal tender for payment of public and private debts. Payment of the principal of and interest, if any, on this Note due on the Maturity Date will be made in immediately available funds on the Maturity Date (whether or not this Note has been presented), with such funds transferred by wire to the following account:

_____
_____
_____
_____
_____

or such other account or place as the Administrative Agent shall direct the Borrower in writing.

PCI-SW-049-001542

IN WITNESS WHEREOF, the Borrower has caused this instrument to be duly executed.

**PETTERS LTD., INC.,**
**a Minnesota corporation**

By _____
Thomas J. Petters, President

[Signature Page to Promissory Note]

A-3

PCI-SW-049-001543

# FORM OF ZERO COUPON PROMISSORY NOTE

Principal Amount
    Due at Maturity: $_____

Original Issue Date: _____
    Minneapolis, Minnesota

      FOR VALUE RECEIVED, PETTERS LTD., INC., a Minnesota corporation (the "Borrower"), hereby promises to pay to _____, or assigns (the "Lender"), to the account set forth below, the principal sum of _____ AND 00/100 DOLLARS on the Maturity Date (as defined below).

      The Maturity Date is _____, 200__.

      The principal of this Note shall not bear interest except in the case of a default in payment of principal upon acceleration, upon redemption or repayment or at the Maturity Date, and in such case the overdue principal of this Note shall bear interest at a rate of _____ percent (_____%) per calendar day accruing from the Maturity Date to the date payment of such principal has been made or duly provided for, provided that if payment is not made within thirty (30) calendar days following the Maturity Date then the overdue principal of this Note shall thereafter bear interest at a rate of _____ percent (_____%) per calendar day to the date payment of such principal has been made or duly provided for. Interest on any overdue principal shall be payable upon demand. Any such interest on any overdue principal that is not so paid on demand shall bear interest at the same rate as the interest on the overdue principal (to the extent that the payment of such interest shall be legally enforceable), which shall accrue from the date of such demand for payment to the date payment of such interest has been made or duly provided for, and such interest shall also be payable upon demand. In the event that the Maturity Date is not a Business Day, the principal otherwise payable on such Maturity Date will be paid on the next succeeding Business Day with the same force and effect as if made on such Maturity Date.

      This Note is one of the Notes referred to in that certain Master Loan Agreement dated as of October 31, 2001 (herein called the "Agreement") among the Borrower, the Lenders party thereto from time to time, and Stafford Towne, Ltd., as Administrative Agent, to which Agreement and all agreements supplemental thereto reference is hereby made for a statement of the respective rights, limitations of rights, duties and immunities thereunder of the Borrower and the Holder and of the terms upon which this Note is delivered. Capitalized terms not otherwise defined herein shall have the meaning ascribed to them in the Agreement. This Note is secured by and the Holder hereof is entitled to the benefits provided under the Loan Documents (as defined in the Agreement). This Note is entitled to the benefits of the Corporate Guaranty and the Personal Guaranty (each as defined in the Agreement).

      The principal amount of this Note due at Maturity may be prepaid in full at any time, without premium or penalty.

PCI-SW-049-001544

If an Event of Default with respect to this Note shall occur and be continuing, the Principal Amount Due at Maturity (as set forth above) may be declared due and payable in the manner and with the effect provided in the Agreement. Upon payment (i) of the amount of principal so declared due and payable and (ii) of interest on any overdue principal and overdue interest (in each case to the extent that the payment of such interest shall be legally enforceable), all of the Borrower's obligations in respect of the payment of the principal of and interest, if any, on this Note shall terminate.

No reference herein to the Agreement and no provision of this Note or of the Agreement shall alter or impair the obligation of the Borrower, which is absolute and unconditional, to pay the principal of (and premium, if any) and interest on this Note at the times, place and rate, and in the coin or currency, herein prescribed.

The transfer of this Note is registrable in the security register maintained by the Borrower, upon surrender of this Note for registration of transfer at the office or agency of the Borrower in any place where the principal of (and premium, if any) and interest on this Note are payable, duly endorsed by, or accompanied by a written instrument of transfer in form satisfactory to the Borrower duly executed by, the Holder or such Holder's attorney duly authorized in writing, and thereupon one or more new Notes of this series, of like tenor and of authorized denominations and for the same aggregate principal amount, will be issued to the designated transferee or transferees.

Prior to due presentment of this Note for registration of transfer, the Borrower and any agent of the Borrower may treat the Person in whose name this Note is registered in the security register as the owner hereof for all purposes, whether or not this Note be overdue, and neither the Borrower nor any such agent shall be affected by notice to the contrary.

This Note shall be governed by and construed in accordance with the laws of the State of Minnesota. The venue, jurisdiction and jury trial waiver provisions set forth in the Agreement are applicable to the Note as if fully set forth herein.

Payment of the principal of and interest, if any, on this Note will be made in such coin or currency of the United States of America as at the time of payment is legal tender for payment of public and private debts. Payment of the principal of and interest, if any, on this Note due on the Maturity Date will be made in immediately available funds on the Maturity Date (whether or not this Note has been presented), with such funds transferred by wire to the following account:

_____
_____
_____
_____
_____

or such other account or place as the Administrative Agent shall direct the Borrower in writing.

PCI-SW-049-001545

IN WITNESS WHEREOF, the Borrower has caused this instrument to be duly executed.

PETTERS LTD., INC.,
a Minnesota corporation

By _____
Thomas J. Petters, President

**[Signature Page to Zero Coupon Promissory Note]**

PCI-SW-049-001546

## Exhibit B

## Requirements for Eligible Accounts

An Eligible Account is an Account owing to the Borrower which meets the following requirements:

(a)    it is genuine and in all respects what it purports to be;

(b)    it arises from the sale of goods by the Borrower and (A) such goods comply with such Account Debtor's specifications (if any) and have been shipped to, or delivered to and accepted by, such Account Debtor, (B) the Borrower has possession of, or has delivered to the Administrative Agent, at its request, shipping and delivery receipts evidencing such shipment, delivery and acceptance, and (C) such goods have not been returned to the Borrower;

(c)    it is evidenced by an invoice rendered to the Account Debtor with respect thereto which (i) is dated not earlier than the date of shipment or performance, (ii) has payment terms reasonably acceptable to the Administrative Agent, and (iii) requires Account Debtor to make payment by wire transfer only directly to the Depository Account;

(d)    (i) it must not be unpaid on the date that is the earlier of 80 days after the date of the invoice evidencing such Account or 20 days after the original due date stated in such invoice; or (ii) it must not be an Account owed by any Account Debtor which has not paid 10% or more of its Accounts within the time period specified in subsection (i) above;

(e)    it is not subject to any assignment, claim or Lien other than a first priority Lien in favor of the Collateral Agent, for the benefit of the Lenders;

(f)    the Administrative Agent has approved the Account Debtor in advance;

(g)    Administrative Agent has received written notice of the terms of such Account from Debtor not less than three (3) Business day's prior to the date of Debtor's acceptance of Account Debtor's purchase order giving rise to such Account and does not object to the transaction by written notice to Debtor within two (2) Business Days of receipt of such notice;

(h)    it is a valid, legally enforceable and unconditional obligation of the Account Debtor with respect thereto and is not subject to setoff, counterclaim, credit or allowance (except any credit or allowance which has been deducted in computing the net amount of the applicable invoice as shown in the original schedule furnished to the Administrative Agent identifying or including such Account) or adjustment by the Account Debtor with respect thereto, or to any claim by such Account Debtor denying liability thereunder in whole or in part, and such Account Debtor has not refused to accept any of the goods or services which are the subject of such Account or offered or attempted to return any of such goods;

(i)    there are no proceedings or actions which are then threatened or pending against the Account Debtor with respect thereto or to which such Account Debtor is a party which might

B-1

PCI-SW-049-001547

result in any material adverse change in such Account Debtor's financial condition or in its ability to pay any Account in full when due;

(j)     it does not arise out of a contract or order which, by its terms, forbids, restricts or makes void or unenforceable the assignment by the Borrower to the Collateral Agent of such Account;

(k)     it does not arise from a "sale on approval," "sale or return" or "consignment," nor is it subject to any other repurchase or return agreement;

(l)     it is not an Account with respect to which possession and/or control of the goods sold giving rise thereto is held, maintained or retained by the Borrower, any Subsidiary or any Related Party (or by any Administrative Agent or custodian of the Borrower, any Subsidiary or Related Party) for the account of or subject to further and/or future direction from the Account Debtor with respect thereto;

(m)     it does not, in any way, violate or fail to meet any warranty, representation or covenant contained in the Loan Documents relating directly or indirectly to the Borrower's Accounts;

(n)     it arises in the ordinary course of the Borrower's business;

(o)     if the Administrative Agent, in its reasonable business judgment, has established a credit limit for the Account Debtor with respect thereto, the aggregate dollar amount of Accounts due from such Account Debtor, including such Account, does not exceed such credit limit; provided that the parties acknowledge that no such limit has been established that limits the Initial Accounts;

(p)     if it is evidenced by chattel paper or instruments, (i) the Administrative Agent shall have specifically agreed to include such Account as an Eligible Account, (ii) only payments then due and payable under such chattel paper or instrument shall be included as an Eligible Account and (iii) the originals of such chattel paper or instruments have been assigned and delivered to the Administrative Agent in a manner satisfactory to the Administrative Agent .

An Account which is at any time an Eligible Account but which subsequently fails to meet any of the foregoing requirements shall forthwith cease to be an Eligible Account. Further, with respect to any Account, if the Administrative Agent at any time or times hereafter determines, in its reasonable business judgment, that the prospect of payment or performance by the Account Debtor with respect thereto is or will be impaired for any reason whatsoever, notwithstanding anything to the contrary contained above, such Account shall forthwith cease to be an Eligible Account. The amount of Eligible Accounts shall be the net United States dollar amount (as determined by the Administrative Agent after deduction of such reserves and allowances as the Administrative Agent, in its reasonable business judgment, deems proper and necessary).

PCI-SW-049-001548

**Exhibit C**

**Form of Request for Loan**

Stafford Towne, Ltd.
7280 W. Palmetto Park Road
Boca Raton, Florida 33433

Attention: Mr. Greg Bell

      The undersigned is the Borrower under that certain Master Loan Agreement, dated October 31, 2001 (as the same may be amended, modified or supplemented from time to time, herein called the "Agreement;" capitalized terms not otherwise defined herein being used as therein defined) among Petters Ltd., Inc. (the "Borrower"), the Lenders party thereto from time to time, and Stafford Towne, Ltd., as Administrative Agent (the "Administrative Agent").

The Borrower hereby reaffirms all representations and warranties in the Agreement and certifies as follows:

(1)    That such representations and warranties shall be true and correct, as though made on the Closing Date both before and after giving effect to such Loan;

(2)    That no Default or Event of Default has occurred and is continuing; that the Loan shall be for the sole purpose of making payment on an invoice for merchandise being acquired for Borrower's inventory;

(3)    The proposed Closing Date of the Loan is _____;

(4)    Attached as Exhibit 1 is a complete copy (including all attachments and schedules) of the purchase order duly and validly issued by Borrower to each merchandise vendor that will be paid in part with the proceeds of the Loan;

(5)    Attached as Exhibit 2 is a complete copy (including all attachments and schedules) of the invoice for purchased merchandise issued to Borrower from each merchandise vendor that will be paid in part with the proceeds of the Loan;

(6)    The Borrower reaffirms that the merchandise vendor is not a Related Party of the Borrower or any Guarantor;

(7)    Set forth below are wire transfer instructions for direct payment of the Loan to the account of each merchandise vendor that will be paid in part with the proceeds of the Loan:

          _____

          _____

          _____

PCI-SW-049-001549

_____

(8)   The location(s) of the merchandise to be purchased with the Loan, including street address and county are:

_____
_____
_____

(9)   The Borrower acknowledges that the amount of such Loan shall not exceed seventy percent (70%) of the Borrower's cost of merchandise to be purchased with such funds;

(10)   Attached as Exhibit 4 is a complete copy (including all attachments and schedules) of the purchase order(s) received by Borrower from its customer(s) pursuant to which Borrower is selling all merchandise to be purchased to such vendor; and

(11)   Upon its purchase by the Borrower, the merchandise will be Eligible Inventory.


PETTERS LTD., INC.


By    _____
Title: _____

C-2