# UNITED STATES BANKRUPTCY COURT
## DISTRICT OF MINNESOTA

In re:

**Jointly Administered under
Case No. 08-45257**

Petters Company, Inc., et al.,
                  Debtors.

Court File No. 08-45257

(includes:
Petters Group Worldwide, LLC;
PC Funding, LLC;
Thousand Lakes, LLC;
SPF Funding, LLC;
PL Ltd., Inc.;
Edge One LLC;
MGC Finance, Inc.;
PAC Funding, LLC;
Palm Beach Finance Holdings, Inc.)

Court Files Nos.:
08-45258 (GFK)
08-45326 (GFK)
08-45327 (GFK)
08-45328 (GFK)
08-45329 (GFK)
08-45330 (GFK)
08-45331 (GFK)
08-45371 (GFK)
08-45392 (GFK)

Chapter 11 Cases
Judge Gregory F. Kishel

---

Douglas A. Kelley, in his capacity as the
court-appointed Chapter 11 Trustee of
Debtors Petters Company, Inc. and
PL Ltd., Inc.,
                  Plaintiff,

vs.

ADV. NO. 10-04396

Westford Special Situations Master Fund, L.P.;
et al.,
                  Defendants.

**<u>Jury Trial Demanded</u>**

---

## NOTICE OF DEFENDANTS' MOTION TO DISMISS

---

TO:    The parties in interest as specified in Local Rule 9013-3.

       1.    Defendants Westford Special Situations Master Fund, L.P.; Westford Global Asset Management Ltd.; Westford Special Situations Fund Ltd.; Westford Special Situations Fund, L.P.; Westford Asset Management, LLC; Epsilon Global Master Fund, L.P.; Epsilon

Global Active Value Fund Ltd.; Epsilon Global Active Value Fund I-B Ltd.; Epsilon Global Active Value Fund, L.P.; Epsilon Global Master Fund II, L.P. a/k/a Epsilon Global Master Fund II, L.P., Sub 1; Epsilon Global Active Value Fund II-B Ltd.; Epsilon Global Active Value Fund II, L.P.; Epsilon Global Active Value Fund II-B, L.P.; Epsilon Global Asset Management Ltd.; Epsilon Investment Management, LLC; Epsilon Global Active Value Fund III Ltd.; Stafford Towne Ltd.; and Steve Goran Stevanovich (collectively, the "Epsilon/Westford Defendants"), move the Court for the relief requested below (the "Motion") and give notice of hearing.

2. The Court will hold a preliminary hearing on this motion at **1:30 p.m. on April 5, 2011**, in Courtroom No. 2A, at the United States Courthouse, at 316 North Robert Street, St. Paul, Minnesota.

3. This Court has jurisdiction over this Motion pursuant to 28 U.S.C. §§ 157 and 1334, Federal Rule of Bankruptcy Procedure 5005 and Local Rule 1070-1. This proceeding is a core proceeding. The petition commencing this Chapter 11 case was filed on October 11, 2008 (the "Petition Date"). The case is now pending in this Court.

4. This motion arises under 11 U.S.C. §§ 506(d), 542, 548(a)(1)(A), 548(a)(1)(B), Minn. Stat. §§ 513.44(a)(2)(i), 513.44(a)(2)(ii), and 513.45(a), and is filed pursuant to Federal Rules of Bankruptcy Procedure 7008, 7009, and 7012(b).

5. The Epsilon/Westford Defendants explicitly reserve their rights to a trial by jury and to seek transfer of this case to the district court, consistent with this Court's January 21, 2011 case management order.

## BACKGROUND

1. On October 3, 2008, Petters Company, Inc. ("PCI") and PL Ltd., Inc. (the "Borrower") were placed into a receivership as part of civil litigation commenced by the United

States. On the Petition Date, the receiver, Douglas A. Kelley, filed petitions on behalf of PCI and the Borrower for relief under Chapter 11 of the Bankruptcy Code.

2.      On February 26, 2009, Douglas A. Kelley was appointed Chapter 11 Trustee in this case.

3.      On October 8, 2010, the Trustee filed this adversary proceeding, along with over 200 other adversary proceedings, "to recover preferences, fraudulent conveyances, damages, and disgorgement, prevent unjust enrichment and to impose a constructive trust in connection with transfers of property by PCI to defendants – through the artifice of PL Ltd." (Complaint ¶ 37.)

## **RELIEF REQUESTED**

1.      The Epsilon/Westford Defendants request an order of the Court dismissing the Trustee's Complaint in its entirety with prejudice.

2.      The Complaint fails to state a claim for which relief can be granted under Federal Rule of Civil Procedure 12(b)(6).

3.      The Complaint is not pled with the particularity required by *Ashcroft v. Iqbal*, 129 S. Ct. 1937, 1949 (2009), *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007) or Federal Rule of Civil Procedure 9(b).

4.      The Trustee failed to join the Borrower, which is a necessary party as the initial transferee of the transfers at issue in the Complaint.

WHEREFORE, the Epsilon/Westford Defendants respectfully request the Court (a) dismiss the Trustee's Complaint with prejudice as requested herein, and (b) grant such other and further relief as the Court may deem proper.

Date:  February 18, 2011

/e/  Robert T. Kugler
Robert T. Kugler (# 0194116)
Bryant D. Tchida (# 0314298)
Peter J. Schwingler (# 0388909)
robert.kugler@leonard.com
bryant.tchida@leonard.com
peter.schwingler@leonard.com
LEONARD, STREET AND DEINARD
  Professional Association
150 South Fifth Street, Suite 2300
Minneapolis, MN  55402
Telephone: (612) 335-1500
Facsimile:  (612) 335-1657

Daniel E. Reidy
Theodore T. Chung
Tara A. Fumerton
dereidy@jonesday.com
ttchung@jonesday.com
tfumerton@jonesday.com
JONES DAY
77 West Wacker
Chicago, IL  60601
Telephone:  (312) 782-3939
Facsimile:  (312) 782-8585

Tobias S. Keller
David C. Kiernan
tkeller@jonesday.com
dkiernan@jonesday.com
JONES DAY
555 California Street, 26th Floor
San Francisco, CA  94101
Telephone:  (415) 626-3939
Facsimile:  (415) 875-5700

**Attorneys For the Epsilon/Westford
Defendants**

# UNITED STATES BANKRUPTCY COURT
## DISTRICT OF MINNESOTA

In re:

**Jointly Administered under
Case No. 08-45257**

Petters Company, Inc., et al.,
                    Debtors.

Court File No. 08-45257

(includes:
Petters Group Worldwide, LLC;
PC Funding, LLC;
Thousand Lakes, LLC;
SPF Funding, LLC;
PL Ltd., Inc.;
Edge One LLC;
MGC Finance, Inc.;
PAC Funding, LLC;
Palm Beach Finance Holdings, Inc.)

Court Files Nos.:
08-45258 (GFK)
08-45326 (GFK)
08-45327 (GFK)
08-45328 (GFK)
08-45329 (GFK)
08-45330 (GFK)
08-45331 (GFK)
08-45371 (GFK)
08-45392 (GFK)

Chapter 11 Cases
Judge Gregory F. Kishel

---

Douglas A. Kelley, in his capacity as the
court-appointed Chapter 11 Trustee of
Debtors Petters Company, Inc. and
PL Ltd., Inc.,
                    Plaintiff,

vs.

ADV. NO. 10-04396

Westford Special Situations Master Fund, L.P.;
et al.,
                    Defendants.

**Jury Trial Demanded**

---

## MEMORANDUM IN SUPPORT OF DEFENDANTS' MOTION TO DISMISS

---

# TABLE OF CONTENTS

**Page**

PRELIMINARY STATEMENT ................................................................ 1

BACKGROUND .................................................................................. 4

    I.     THE EPSILON/WESTFORD DEFENDANTS ................................. 4

    II.    PETTERS' FRAUD ON THE EPSILON/WESTFORD DEFENDANTS ........... 5

    III.   THE PETTERS COLLAPSE AND THE TRUSTEE'S COMPLAINT ............... 7

ARGUMENT ...................................................................................... 10

    I.     THE COMPLAINT MUST BE DISMISSED BECAUSE IT FAILS TO STATE A CLAIM FOR WHICH RELIEF CAN BE GRANTED ...................... 10

        A.    The Trustee's Actual and Constructive Fraudulent Transfer Claims (Counts II-VII) Should Be Dismissed Because the Repayment of an Antecedent Debt Is Not an Avoidable Fraudulent Transfer ............... 11

        B.    The Trustee's Constructive Fraudulent Transfer Claims (Counts III, V-VII) Should Also Be Dismissed Because the Epsilon/Westford Defendants Provided "Reasonably Equivalent Value" for the Transfers ........................................................................ 15

            1.    The Direct Lenders Provided Reasonably Equivalent Value in Exchange for Repayment of the Loans ................................... 16

            2.    The Illegal Nature of the Petters Fraud Does Not Change the Fact That the Direct Lenders Provided Reasonably Equivalent Value for Both Principal and Interest Payments ....... 18

        C.    The Trustee's Turnover and Accounting Claim (Count I) Should Be Dismissed Because the Transfers Are Not "Property of the Estate" ...................................................................................... 22

        D.    The Trustee's Claim for Lien Avoidance (Count VIII) Must Be Dismissed Because it Fails to State a Claim for Which Relief Can Be Granted ............................................................................... 24

        E.    The Trustee's Claim for Unjust Enrichment (Count IX) Must Be Dismissed Because it Fails to State a Claim for Which Relief Can Be Granted ............................................................................... 25

        F.    Counts IV Through VII and IX Are Time-Barred ................................. 29

            1.    The Complaint Is Untimely Under the Minnesota Statute of Limitations ........................................................................ 29

            2.    Even If the Trustee Timely Filed His Claims Under Section 546(a), the Statute of Limitations Can Only Reach Back From the Date of "Commencement" Under State Law ............... 30

            3.    The Trustee's Claims Cannot, and Should Not, Be Tolled .......... 31

II. THE COMPLAINT MUST BE DISMISSED BECAUSE IT IS NOT PLED WITH THE PARTICULARITY REQUIRED BY *TWOMBLY*, *IQBAL* OR RULE 9(b)......................................................................... 32

    A. The Complaint Does Not Properly Distinguish Between PCI and the Borrower ............................................................................. 33

    B. The Trustee Does Not Properly Distinguish His Allegations Among the Epsilon/Westford Defendants or the Transfers at Issue ........ 35

    C. The Trustee's Complaint Improperly Pleads Allegations "on Information and Belief" .......................................................... 37

III. THE TRUSTEE FAILED TO JOIN THE BORROWER, WHICH IS A NECESSARY PARTY, AS THE INITIAL TRANSFEREE OF THE TRANSFERS AT ISSUE IN THE COMPLAINT ............................................. 38

CONCLUSION ........................................................................................... 41

# TABLE OF AUTHORITIES

**Page**

CASES

*Acequia, Inc. v. Clinton (In re Acequia, Inc.),*
34 F.3d 800 (9th Cir. 1994) ...............................................................30

*Ambrose Branch Coal Co. v. Tankersley,*
106 B.R. 462 (W.D. Va. 1989) ...........................................................29

*Anderson v. Unisys Corp.,*
47 F.3d 302 (8th Cir. 1995) ................................................................29

*Apace Commc'ns, Ltd. v. Burke,*
522 F. Supp. 2d 512 (W.D.N.Y. 2007) ...............................................36

*Appletree Square I, Ltd. P'ship v. W.R. Grace & Co.,*
29 F.3d 1283 (8th Cir. 1994) ..............................................................29

*Arena Dev't Group, LLC v. Naegele Commc'ns, Inc.,*
No. 06-2806, 2007 WL 2506431 (D. Minn. Aug. 30, 2007)...............28

*Ashcroft v. Iqbal,*
129 S. Ct. 1937 (2009).................................................................. passim

*B.E.L.T., Inc. v. Wachovia,*
403 F.3d 474 (7th Cir. 2005) ..............................................................14

*Bagley v. Iowa Beef Processors, Inc. (In re IBP Conf. Bus. Documents Litig.),*
755 F.2d 1300 (8th Cir. 1985) ............................................................17

*Bailey v. Bayer CropScience L.P.,*
563 F.3d 302 (8th Cir. 2009) ..............................................................38

*Bateman Eichler, Hill Richards, Inc. v. Berner,*
472 U.S. 299 (1985)............................................................................27

*Bell Atlantic Corp. v. Twombly,*
550 U.S. 544 (2007)....................................................................... passim

*Boston Trading Group, Inc. v. Burnazos,*
835 F.2d 1504 (1st Cir. 1987)..............................................................13

*Brandt v. Hicks, Muse & Co., Inc. (In re Healthco Intern., Inc.),*
195 B.R. 971 (Bankr. D. Mass. 1996) .................................................40

*Brown v. Pyatt (In re Pyatt)*,
486 F.3d 423 (8th Cir. 2007) ...................................................................22

*Butler v. Loomer (In re Loomer)*,
222 B.R. 618 (Bankr. D. Neb. 1998) ......................................................16

*Cullen Ctr. Bank & Trust v. Hensley (In re Criswell)*,
102 F.3d 1411 (5th Cir. 1997) ...........................................................11, 12

*Custom Design Studio v. Chloe, Inc.*,
584 N.W.2d 430 (Minn. App. 1998).......................................................26

*Daly v. Deptula (In re Carrozzella & Richardson)*,
286 B.R. 480 (D. Conn. 2002) ....................................................18, 19, 21

*Donell v. Kowell*,
533 F.3d 762 (9th Cir. 2008) .............................................................19, 20

*Dowden v. First Sec. Bank (In re Mid-South Auto Brokers)*,
290 B.R. 658 (Bankr. E.D. Ark. 2003) ...................................................16

*Drobnak v. Andersen Corp.*,
561 F.3d 778 (8th Cir. 2009) .............................................................28, 32

*FDIC v. Be-Mac Transp. Co. (In re Be-Mac Transp. Co.)*,
183 B.R. 563 (E.D. Mo. 1995)................................................................24

*FDIC v. Hirsch (In re Colonial Realty Co.)*,
980 F.2d 125 (2d Cir. 1992)....................................................................23

*Feldman v. Chase Home Fin. (In re Image Masters Inc.)*,
421 B.R. 164 (Bankr. E.D. Pa. 2009) .....................................................37

*First Nat'l Bank v. Ramier*,
311 N.W.2d 502 (Minn. 1981)................................................................25

*Flanagan v. MJCC Realty Ltd. P'ship (In re Flanagan)*,
415 B.R. 29 (D. Conn. 2009) ..................................................................27

*Grassmueck v. Am. Shorthorn Ass'n*,
402 F.3d 833 (8th Cir. 2005) ..................................................................27

*Greenwald v. Latham & Watkins (In re Trans-End Tech., Inc.)*,
230 B.R. 101 (Bankr. N.D. Ohio 1998)..............................................39, 40

*Greenwood v. Dittmer*,
776 F.2d 785 (8th Cir. 1985) ..................................................................37

*Hamann v. Park Nicollet Clinic,*
792 N.W. 2d 468 (Minn. Ct. App. 2010) ..............................................................26

*Harmon v. U.S. Through Farmers Home Admin.,*
101 F.3d 574 (8th Cir. 1996) ..............................................................................24

*Hartford Acc. & Indem. Co. v. Doe Run Res. Corp.,*
663 F. Supp. 2d 771 (E.D. Mo. 2009)..................................................................24

*Hedback v. Tenney (In re Security Asset Capital Corp.),*
396 B.R. 35 (D. Minn. 2008) ..............................................................................13

*IBT Inter., Inc. v. Northern (In re Int'l Admin. Servs., Inc.),*
408 F.3d 689 (11th Cir. 2005) ............................................................................40

*In re Lofton,*
246 B.R. 604 (Bankr. E.D. Ark. 2000) ................................................................23

*In re Saunders,*
101 B.R. 303 (Bankr. N.D. Fla. 1989) ...........................................................23, 24

*In re Thielking,*
163 B.R. 543 (Bankr. S.D. Iowa 1994)................................................................23

*Jacobson v. First State Bank of Benson (In re Jacobson),*
48 B.R. 497 (Bankr. D. Minn. 1985) ...................................................................17

*Jones Truck Lines, Inc. v. Full Serv. Leasing Corp.,*
83 F.3d 253 (8th Cir. 1996) ................................................................................12

*Kaler v. Able Debt Settlement (In re Kendall),*
440 B.R. 526 (B.A.P. 8th Cir. 2010)...............................................18, 19, 21, 22

*Klingman v. Levinson,*
158 B.R. 109 (N.D. Ill. 1993) .............................................................................23

*Kranz v. Koenig,*
240 F.R.D. 453 (Bankr. D. Minn. 2007)..........................................................32, 38

*Leonard v. Mylex Corp (In re Northgate Computer Systems, Inc.),*
240 B.R. 328 (Bankr. D. Minn. 1999) .................................................................15

*Liquidating Tr. of the Amcast Unsecured Creditor Liquidating Trust v. Baker
(In re Amcast Indus. Corp.),*
365 B.R. 91 (Bankr. S.D. Ohio 2007)..................................................................23

*Lustig v. Weisz and Assocs., Inc. (In re Unified Commercial Capital, Inc.),*
260 B.R. 343 (Bankr. W.D.N.Y. 2001) ...........................................................12, 21

*Missouri ex rel. Missouri Highway & Transp. Comm'n v. Cuffley*,
    112 F.3d 1332 (8th Cir. 1997) .................................................................24

*Moon v. Anderson (In re Hixon)*,
    387 F.3d 695 (8th Cir. 2004) ...............................................................15

*Moua v. Jani-King of Minnesota, Inc.*,
    613 F. Supp. 2d 1103 (D. Minn. 2009)..................................................35

*MW AG, Inc. v. N.H. Ins. Co.*,
    107 F.3d 644 (8th Cir. 1997) ...............................................................29

*Nebraska State Bank v. Jones*,
    846 F.2d 477(8th Cir. 1988) .................................................................30

*Nicklaus v. Peoples Bank & Trust Co.*,
    369 F.2d 683 (8th Cir. 1966) ...............................................................13

*Nordberg v. Sanchez (In re Chase & Sanborn Corp.)*,
    813 F.2d 1177 (11th Cir. 1987) ......................................................11, 12

*Official Comm. of Unsecured Creditors v. JP Morgan Chase Bank, N.A.
    (In re M.F. Fabrikant & Sons)*,
    294 B.R. 721 (Bankr. S.D.N.Y. 2008)...................................................36

*Omega S.A. v. Costco Wholesale Corp.*,
    541 F.3d 982 (9th Cir. 2008) .................................................................6

*Parnes v. Gateway 2000, Inc.*,
    122 F.3d 539 (8th Cir. 1997) ...............................................................38

*Pummill v. Greensfelder, Hemker & Gale (In re Richards and Conover Steel Co.)*,
    267 B.R. 602 (B.A.P. 8th Cir. 2001).....................................................16

*Raleigh v. Mid American Nat'l Bank and Trust Company (In re Stoecker)*,
    131 B.R. 979 (Bankr. N.D. Ill. 1991) ...................................................11

*Savage & Assoc., P.C. v. BLR Servs. SAS (In re Teligent, Inc.)*,
    307 B.R. 744 (Bankr. S.D.N.Y. 2004)...................................................23

*Schaaf v. Residential Funding Corp.*,
    517 F.3d 544 (8th Cir. 2007) ..........................................................25, 26

*Scholes v. Lehmann*,
    56 F.3d 750 (7th Cir. 1995) ......................................................19, 20, 21

*Schroeder v. Rouse (In re Redding)*,
    247 B.R. 474 (B.A.P. 8th Cir. 2000).....................................................22

*Sender v. Buchanan (In re Hedged-Investments Assoc., Inc.)*,
    84 F.3d 1286 (10th Cir. 1996) ...............................................................19

*ServiceMaster of St. Cloud v. GAB Bus. Servs., Inc.*,
    544 N.W.2d 302 (Minn. 1996)...............................................................25

*Sharp Int'l Corp. v. State St. Bank and Trust Co. (In re Sharp Int'l)*,
    403 F.3d 43 (2d. Cir. 2005)...................................................................14

*Shields v. Crel, Inc. (In re Dartco, Inc.)*,
    203 B.R. 285 (Bankr. D. Minn. 1996) ...................................................23

*Shields v. Goldetsky (In re Butler)*,
    552 N.W.2d 226 (Minn. 1996)...............................................................26

*Southtown Plumbing, Inc. v. Har-Ned Lumber Co.*,
    493 N.W.2d 137 (Minn. Ct. App. 1992) ................................................28

*Stalnaker v. Gratton (In re Rosen Auto Leasing, Inc.)*,
    346 B.R. 798 (B.A.P. 8th Cir. 2006)................................................16, 18

*State v. AAMCO Automatic Transmissions, Inc.*,
    199 N.W.2d 444 (Minn. 1972)...........................................................27, 28

*Stein v. O'Brien*,
    565 N.W.2d 472 (Minn. Ct. App. 1997) ................................................25

*Sullivan v. Schultz (In re Schultz)*,
    368 B.R. 832 (Bankr. D. Minn. 2007) ...................................................16

*Transmatic, Inc. v. Gulton Industries, Inc.*,
    180 F.3d 1343 (Fed. Cir. 1999).............................................................18

*United States v. Henderson*,
    No. Civ. 03-5060, 2004 WL 540278 (D. Minn. Mar. 16, 2004) .............32

*Velez Constr. Inc. v. Consol. Edison Co (In re Andrew Velez Constr., Inc.)*,
    373 B.R. 262 (Bankr. S.D.N.Y. 2007) ..................................................23

*Walker v. Armco Steel Corp.*,
    446 U.S. 740 (1980)..........................................................................29, 31

*Weinman v. Simons (In re Slack-Horner Foundries Co.)*,
    971 F.2d 577 (10th Cir. 1992) ....................................................39, 40, 41

*Woods & Erickson, LLP v. Leonard (In re AVI, Inc.)*,
    389 B.R. 721 (B.A.P. 9th Cir. 2008).....................................................40

**STATUTES**

11 U.S.C. § 101 ......................................................................................................................17

11 U.S.C. § 108 ...........................................................................................................29, 30, 31

11 U.S.C. § 506 ......................................................................................................................9, 24

11 U.S.C. § 541 ...........................................................................................................22, 23, 24

11 U.S.C. § 542 .......................................................................................................9, 22, 24

11 U.S.C. § 544 ........................................................................................................... passim

11 U.S.C. § 546 ...........................................................................................................29, 30, 31

11 U.S.C. § 547 ...........................................................................................................11, 15

11 U.S.C. § 548 ........................................................................................................... passim

11 U.S.C. § 550 ........................................................................................................... passim

Minn. Stat. § 513.41 ..............................................................................................................17

Minn. Stat. § 513.44 ........................................................................................................... passim

Minn. Stat. § 513.45 .......................................................................................................9, 34, 35

Minn. Stat. § 541.05 ...........................................................................................................30, 31

**OTHER AUTHORITIES**

Federal Rule of Bankruptcy Procedure 7009 ...............................................................................1, 32

Federal Rule of Bankruptcy Procedure 7012 ...............................................................................1, 10

Federal Rule of Civil Procedure 9 ........................................................................................... passim

Federal Rule of Civil Procedure 12 ...............................................................................................10

Federal Rule of Civil Procedure 19 ...............................................................................................38

Minnesota Rule of Civil Procedure 3.01 ........................................................................................29

Defendants Westford Special Situations Master Fund, L.P.; Westford Global Asset Management Ltd.; Westford Special Situations Fund Ltd.; Westford Special Situations Fund, L.P.; Westford Asset Management, LLC; Epsilon Global Master Fund, L.P.; Epsilon Global Active Value Fund Ltd.; Epsilon Global Active Value Fund I-B Ltd.; Epsilon Global Active Value Fund, L.P.; Epsilon Global Master Fund II, L.P. a/k/a Epsilon Global Master Fund II, L.P., Sub 1; Epsilon Global Active Value Fund II-B Ltd.; Epsilon Global Active Value Fund II, L.P.; Epsilon Global Active Value Fund II-B, L.P.; Epsilon Global Asset Management Ltd.; Epsilon Investment Management, LLC; Epsilon Global Active Value Fund III Ltd.; Stafford Towne Ltd.; and Steve Goran Stevanovich (collectively, the "Epsilon/Westford Defendants") respectfully submit this memorandum in support of their motion, pursuant to Rules 7008, 7009 and 7012(b) of the Federal Rules of Bankruptcy Procedure, to dismiss with prejudice the claims asserted in the Complaint dated October 8, 2010 (the "Complaint") filed by Douglas A. Kelley as trustee (the "Trustee") for Petters Company, Inc. ("PCI") and PL Ltd., Inc. (the "Borrower").[1]

## PRELIMINARY STATEMENT

In essence, the Trustee asks this Court to force a group of lenders, the Epsilon/Westford Defendants, to give principal and interest received as repayment of debt to the Trustee so that he can in turn give it to creditors that both benefitted from Petters' fraud and did business with Petters until the fraud became public. As demonstrated below, the claims in the Trustee's suit are misconceived and must fail as a matter of law.

The Epsilon/Westford Defendants consist of twelve funds and related entities. The funds' ultimate investors are a diverse group of individuals and entities, including various public

---

[1] The Epsilon/Westford Defendants explicitly reserve their rights to a trial by jury and to seek transfer of this case to the district court, consistent with this Court's January 21, 2011 case management order.

and private employee retirement plans.  Between 2001 and November 2006, six of the Epsilon/Westford Defendants (the "Direct Lenders") made short-term, asset-based loans to the Borrower at prevailing market interest rates.  The purpose of the loans was to finance the purchase of electronic goods.  Each of these loans was strictly conventional; there was nothing special or extraordinary about these loans that made any of them "too good to be true."  (*Cf.*, Complaint ¶ 118(c).)  Each loan was evidenced by a promissory note that required the Borrower to pay back principal plus interest at prevailing rates for this type of financing by a specific maturity date.  The last loan issued in November 2006, and the last loan repayment was made in March 2007, nearly two years before Petters' bankruptcy.

Very few of the current investors in the Epsilon/Westford Defendants were investors at the time that the loans were made or repaid.  Yet the Trustee seeks to take their money and give it to "creditors" that directly benefited from Petters' fraud and did business with Petters-related entities until the bankruptcy.  Some of these "creditors" were former investors of the Epsilon/Westford Defendants at times when loans were made to or repaid by the Borrower.  After they received the proceeds of the loans described above, they withdrew their investments and reinvested through other firms, most notably the Lancelot-related entities, that continued to do business with Petters entities right up until the fraud was discovered.  If the Trustee ultimately prevails in this adversary proceeding, the effect will be to take money from public and private retirement fund beneficiaries and other investors who received no benefit from lending to Petters and hand it over to former investors that already received millions of dollars of principal and interest from loans—a result that, as demonstrated below, would be as contrary to law as it would be facially anomalous and inequitable.

It was not until the bankruptcy, nearly two years after the last note was repaid, that the public—including the Epsilon/Westford Defendants—learned that the Borrower had lied about the actual purpose of the loans. Among other things, the Borrower had used the short-term borrowings, not to finance purchases of electronics, but instead to support the needs of companies that Petters was either acquiring or operating, like Polaroid, Fingerhut, and Sun Country Airlines, in an effort to "turn around" these companies. In order to keep his borrowings in place while he attempted his turnarounds, Petters used some of the borrowings to repay outstanding short-term loans from other lenders.

Contrary to the allegations of the Complaint, the Epsilon/Westford Defendants did not know that the Borrower lied about the actual purpose of the loans. Indeed, the Trustee acknowledges that the fraud was so effectively concealed that it was not discovered until December 2008. (Complaint ¶¶ 88, 37-38.) Petters was able to dupe even one of the nation's largest accounting firms, which the Epsilon/Westford Defendants had retained to perform diligence on PCI and the Borrower prior to making any loans. Just like the multitude of individuals and entities that dealt with Petters and his companies over many years, this firm uncovered no impropriety.

The Trustee now seeks to recover all of the Borrower's loan repayments as fraudulent transfers under Minnesota and federal law, even though the Borrower actually repaid the loans in accordance with legitimate contracts negotiated at arms-length. In so doing, the Trustee glosses over what is legally significant. The transactions at issue were garden-variety loans with pre-established terms, including interest (as opposed to "investments" with inherently uncertain returns). The Trustee attaches far too much significance to what is irrelevant here; namely, the fact that the Borrower, as it turns out, lied about the actual purpose of the loans. Just as an

innocent bank would not have to return repayments of a home construction loan if the borrower had used the proceeds to finance a business (or even a blatantly fraudulent enterprise), so too should the lenders here not be required to return repayments simply because the Borrower applied the proceeds to ends entirely unintended by and unknown to the lenders.

There can be no dispute that the challenged "transfers" were, in fact, repayments of antecedent debts. The Borrower was contractually bound to repay each and every loan. Repayments of antecedent debt are not subject to avoidance under sections 544 or 548 of the Bankruptcy Code. But even if they were, the repayment of principal plus interest (*i.e.*, the cost of borrowing) is an exchange of reasonably equivalent value—it extinguishes the contractual commitment. Counts II-VII, therefore, should be dismissed with prejudice.

The Trustee's remaining claims fare no better. The turnover and accounting claim (Count I) is deficient because the alleged transfers are not "property of the estate." The lien avoidance claim (Count VIII) fails because the Trustee does not allege that the Epsilon/Westford Defendants assert a lien against the property of the debtors. Finally, the unjust enrichment claim (Count IX) fails because it arises out of a contractual commitment. Moreover, any such claim is barred by the equitable doctrine of *in pari delicto*.

For these and other reasons discussed below, the Complaint should be dismissed with prejudice.

## BACKGROUND

## I. THE EPSILON/WESTFORD DEFENDANTS.

The Epsilon/Westford Defendants consist of twelve funds and related entities. The funds' ultimate investors are a diverse group of individuals and entities, including various public and private employee retirement plans. Only the Direct Lenders actually made loans to, and received loan repayments from, the Borrower. Nevertheless, the Trustee lumps all of the

Epsilon/Westford Defendants together, vaguely alleging that the defendants received transfers

from the Borrower or PCI "as initial transferees…or immediate or mediate transferees."

(Complaint ¶¶ 49-56.)

## II.    PETTERS' FRAUD ON THE EPSILON/WESTFORD DEFENDANTS.

Prior to his arrest, the media routinely portrayed Tom Petters as a man willing to take on

and turn around troubled businesses.  One local radio station even dubbed Petters "the Mr. Fixit

of business" for his ostensibly successful efforts at turning around companies in financial distress

such as Fingerhut, Polaroid and Sun Country Airlines.  *See* Martin Moylan, *Tom Petters – the*

*Mr. Fixit of Business,* MINNESOTA PUBLIC RADIO (Oct. 9, 2007), http://minnesota.publicradio.org

/display/web/2007/10/02/tom_petters/ (last visited on Feb. 18, 2011).  Hidden from the public,

however, was the fact that Petters was engaged in massive fraud to support those turnaround

efforts.  As described in the December 15, 2010 Interim Report prepared by

PricewaterhouseCoopers LLP ("PwC"), which the Trustee retained to assist in his role as the

court-appointed Receiver of the Petters entities, Petters funneled fraudulently raised funds

(including the loan proceeds at issue here) to his other businesses to cover operating expenses

and otherwise support those ventures.  (*See* PwC Interim Report, 18-19, 51, 99-105, Dec. 15,

2010, ECF No. 808; PwC Interim Report Exhibit 13, Dec. 16, 2010, ECF No. 809.)  Petters also

used some of the funds to repay outstanding short-term loans from other lenders.  (*Id.*)

According to the Complaint, one aspect of Petters' scheme allegedly consisted of

soliciting entities to provide purchase order financing for PCI's acquisition and resale of

electronic consumer goods.  (Complaint ¶ 64.)  In furtherance of this fraud, Petters provided

potential lenders with fabricated equipment purchase orders reflecting PCI's orders of electronic

goods from suppliers, as well as fake purchase orders from "big box" retailers (*e.g.*, Costco,

Sam's Club, and B.J.'s Wholesale Club) reflecting the retailers' orders of the same goods.[2]  (*Id.* ¶ 72.)  Petters knowingly and intentionally concealed this fraud from prospective lenders, including the Direct Lenders.  (*Id.* ¶ 85.)

The six Direct Lenders provided purchase order financing by making loans to the Borrower, a special purpose entity ("SPE") that, as required by the Epsilon/Westford Defendants, had been specifically established to purchase inventory assets for resale and that, as is customary in the industry, was used to isolate and separate the Direct Lenders' transactions with the SPE from the unrelated business activities of other Petters entities.  (*Id.* ¶ 71.) Additionally, each loan was evidenced by a promissory note issued by the Borrower, which was secured by a separate security agreement creating an interest in all of the Borrower's assets.  (*Id.* ¶¶ 66-68.)  According to the Complaint, the Epsilon/Westford Defendants (rather than the Direct Lenders) began issuing loans to the Borrower on or about April 30, 2001, and continued through November 2, 2006.  (*Id.* ¶ 112.)  In sum, the Complaint alleges that the Epsilon/Westford Defendants issued at least 344 separate notes in which the aggregate amount of principal loaned to and repaid by the Borrower was approximately $2,471,280,000, and the aggregate amount of interest earned by the Epsilon/Westford Defendants was approximately $323,343,275.  (*Id.* ¶¶ 114-115.)

The Complaint alleges, however, that the Borrower was not using the funds loaned by the Epsilon/Westford Defendants to purchase electronic consumer goods for resale.  (*Id.* ¶ 76.)

---

[2] This type of consumer electronics resale business was hardly unusual and, by its nature, did not present any "red flags."  Costco, in particular, has long pursued what is often referred to as "gray-market" purchasing—a strategy of acquiring goods through independent intermediaries rather than directly from the manufacturer or its authorized distributors.  *See, e.g.*, *Omega S.A. v. Costco Wholesale Corp.*, 541 F.3d 982, 984 n.1 (9th Cir. 2008) (describing Costco's practice of obtaining watches bearing the Omega copyrighted design from the gray market), *aff'd* 131 S.Ct. 565 (2010).

Instead, according to the Complaint, the Borrower transferred the loaned amounts to two Petters-related entities—Nationwide International Resources, Inc. ("Nationwide") or Enchanted Family Buying Company ("Enchanted")—to act as intermediary "suppliers" of the merchandise purportedly being purchased for resale and to further conceal the fraud. (*Id.* ¶¶ 78-79.) After extracting commissions for their respective roles in the alleged fraud, Nationwide and/or Enchanted would transfer the funds to PCI, which would later transfer funds back to the Borrower for repayment of the loans to the Direct Lenders. (*Id.* ¶ 82.) Frequently, Petters transferred funds from the loans received from SPEs like the Borrower to sustain turnaround efforts of other Petters businesses. (*See* the PwC Report and Exhibits at 18-19, 51, 99-105, Ex. 13.) Indeed, it appears from the PwC Report and accompanying exhibits that Petters used these short-term loans from the Direct Lenders and other lenders to finance, at least in part, his other businesses. (*Id.*) Petters continuously replaced the short-term loans with larger loans to cover both interest on debt and the negative cash flow that Petters' other businesses incurred. (*Id.*)

## III.     THE PETTERS COLLAPSE AND THE TRUSTEE'S COMPLAINT.

Eventually, Petters could no longer continue to obtain loans to cover his other debts, his various business ventures failed, and the fraud scheme was finally discovered.[3] On October 3, 2008, PCI, the Borrower, and other Petters entities were placed into receivership as part of civil litigation commenced by the United States. (Complaint ¶ 37.) Later that month, the Receiver, Douglas A. Kelley, filed petitions on behalf of PCI and the Borrower for relief under Chapter 11

---

[3] The fact that Petters' companies included operating businesses that Petters sought to turnaround made the survival of his various businesses at least plausible. With the success of one or more of those operating businesses, it is possible that a sale or restructuring would have provided sufficient proceeds to pay off Petters' fraudulently-obtained loans. For example, had Polaroid been turned around and sold, the resulting proceeds could have been used to provide PCI and the Borrower with the resources to pay their creditors. This distinguishes Petters' fraud from a true Ponzi scheme, for which failure is indeed an inevitability.

of the Bankruptcy Code, and on February 26, 2009, he was appointed Chapter 11 Trustee in those actions. (*Id.* ¶¶ 40, 43.) Petters' other businesses also found shelter through bankruptcy petitions. The Trustee filed this adversary proceeding on October 8, 2010, along with over 200 other adversary proceedings. The Trustee did not, however, serve the summons and Complaint on the Epsilon/Westford Defendants until dates on and after October 15, 2010.

The Complaint seeks "to recover preferences, fraudulent conveyances, damages, and disgorgement, prevent unjust enrichment and to impose a constructive trust in connection with transfers of property by PCI to defendants—through the artifice of PL Ltd." (*Id.* ¶ 48.) The Complaint identifies the transfers at issue (the "Transfers") as the "more than $3,203,439,988.09" that "defendants were paid" by the Borrower. (*Id.* ¶ 119.) Confusingly, however, the Complaint supports this statement by referring to transfers listed in Exhibit J, which purports to list transfers *to the Borrower*, and Exhibit K, which purports to list transfers *from the Borrower to* PCI. (*Id.*) No specific transfers to the Epsilon/Westford Defendants are identified at all.

The Complaint seeks recovery from "defendants" collectively. It does not identify which defendants are alleged to have received which amounts or which defendants are initial, immediate or mediate transferees. Rather, it simply asserts that each defendant or group of defendants "are initial transferees of the fraudulent, or other avoidable transfers alleged in this Complaint, or a person or entity for whose benefit such transfers were made, or immediate or mediate transferees of any initial transferee of such transfers." (*Id.* ¶¶ 49-56.) The Complaint also does not identify whether PCI or the Borrower is the transferor for purposes of its allegations and, instead, collectively refers to PCI and the Borrower as the "Debtors." (*Id.* ¶ 4.) The Complaint makes conclusory allegations that transfers to the Epsilon/Westford Defendants

were made "with actual intent to hinder, delay, or defraud a creditor" without identifying facts to support that allegation or the identity of a single creditor.  (*See, e.g., id.* ¶ 130.)  It further states that defendants did not take the transfers  "in good faith and without knowledge of the voidability" of the transfers.  (*See, e.g. id.* ¶ 132.)  The Complaint also asserts that "Debtors received less than a reasonably equivalent value in exchange for" the transfers.  (*See, e.g., id.* ¶ 136.)

In total, the Complaint asserts nine causes of action against all of the Epsilon/Westford Defendants.

- Count I asserts a claim for turnover and accounting pursuant to 11 U.S.C. § 542. (Complaint ¶¶ 125-28.)

- Count II asserts a claim for actual fraudulent transfers under section 548(a)(1)(A) of the Bankruptcy Code.  (*Id.* ¶¶ 129-33.)

- Count III asserts a claim for constructive fraudulent transfers under section 548(a)(1)(B) of the Bankruptcy Code.  (*Id.* ¶¶ 134-139.)

- Count IV asserts a claim for actual fraudulent transfers under Minnesota's Uniform Fraudulent Transfer Act.  (*Id.* ¶¶ 140-45.)

- Counts V – VII assert claims for constructive fraudulent transfers under Minnesota's Uniform Fraudulent Transfer Act, sections 513.44(a)(2)(i) and (ii) and 513.45(a).  (*Id.* ¶¶ 146-63.)

- Count VIII alleges that the Trustee is entitled to a judgment pursuant to section 506(d) of the Bankruptcy Code declaring that any lien asserted by defendants is invalid and void.  (*Id.* ¶¶ 164-66.)

- Count IX asserts a claim for unjust enrichment/equitable disgorgement and alleges that defendants have no "rightful or legitimate claim to any monies received from PCI through [the Borrower]."  (*Id.* ¶¶ 167-73.)

For the reasons that follow, each count fails as a matter of law and should be dismissed with prejudice.

# ARGUMENT

Applying the pleading requirements enunciated in *Twombly* and *Iqbal*, the Complaint must be dismissed for failure to state a claim for which relief can be granted. Additionally, the Complaint must be dismissed because it is not pled in a manner consistent with the requirements of Rule 9(b).

## I. THE COMPLAINT MUST BE DISMISSED BECAUSE IT FAILS TO STATE A CLAIM FOR WHICH RELIEF CAN BE GRANTED.

Rule 12(b)(6) of the Federal Rules of Civil Procedure is made applicable to bankruptcy proceedings by Rule 7012 of the Federal Rules of Bankruptcy Procedure (the "Bankruptcy Rules"). "To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face." *Ashcroft v. Iqbal*, 129 S. Ct. 1937, 1949 (2009) (quoting *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). This standard is comprised of two working principles. "First, the tenet that a court must accept as true all of the allegations contained in a complaint is inapplicable to legal conclusions. Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Iqbal*, 129 S. Ct. at 1949. In other words, a court is "not bound to accept as true a legal conclusion couched as a factual allegation." *Twombly*, 550 U.S. at 555. "Second, only a complaint that states a plausible claim for relief survives a motion to dismiss." *Iqbal*, 129 S. Ct. at 1950. This is "a context-specific task," but "where the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct" the complaint must be dismissed. *Id.*

Each of the Trustee's claims for relief must be dismissed for failure to state a claim.

**A.** **The Trustee's Actual and Constructive Fraudulent Transfer Claims (Counts II-VII) Should Be Dismissed Because the Repayment of an Antecedent Debt Is Not an Avoidable Fraudulent Transfer.**

A fundamental flaw underlying each of the Trustee's fraudulent transfer claims is his failure to properly characterize the nature of the transfers at issue. Basic principles of bankruptcy law provide that repayment of an antecedent debt is not a fraudulent transfer. Rather, if made within the period prescribed by Congress, this type of repayment is a preferential transfer. And where such preferential transfers are made more than ninety days prior to the filing of the Petition, Congress has determined that they cannot be avoided as a matter of law. 11 U.S.C. § 547.

Fraudulent transfers and preferential transfers are accorded different treatment in this regard because the respective policies underlying them differ markedly. Fraudulent transfer law aims to avoid transfers where "the debtor seeks through deceitful means to secure a personal advantage out of what in law should belong to creditors and not to the debtor." *Cullen Ctr. Bank & Trust v. Hensley (In re Criswell)*, 102 F.3d 1411, 1414 (5th Cir. 1997) (quoting Lawrence P. King, ed., 4 *Collier on Bankruptcy*, ¶ 547.01, at 547-12 (15th ed. 1996)). For example, where a debtor knowingly transfers assets to a third party with the intention to conceal those assets from the debtor's creditors, such a transfer may be avoided as fraudulent. Such rules seek to prevent the diminution of the debtor's assets to the detriment of all creditors. *Nordberg v. Sanchez (In re Chase & Sanborn Corp.)*, 813 F.2d 1177, 1181 (11th Cir. 1987); *see also Raleigh v. Mid American Nat'l Bank and Trust Co. (In re Stoecker)*, 131 B.R. 979, 984 (Bankr. N.D. Ill. 1991) ("[A] debtor should not be allowed to engage in pre-petition property transfers motivated by fraud to deprive creditors of property from which creditors' claims can be satisfied.") (citing H. Rep. No. 595, 95th Cong., 1st Sess. 375 (1977); S. Rep. No. 989, 95th Cong., 2d Sess. 89-90

(1978), U.S. Code Cong. & Admin. News 1978, p. 5787; H. Rep. No. 595, 95th Cong., 1st Sess. 177-178 (1977)).

By contrast, the avoidance of preferential transfers seeks to promote greater equality of distribution among legitimate creditors. *See Jones Truck Lines, Inc. v. Full Serv. Leasing Corp.*, 83 F.3d 253, 257 (8th Cir. 1996) (noting that the law allowing preferential transfers was intended to advance "the prime bankruptcy policy of equality of distribution among creditors") (quoting H.R. No. 595, 1978 U.S.C.C.A.N. at 6138); *In re Criswell*, 102 F.3d at 1414 ("A preference is an infraction of the rule of equal distribution among all creditors[.]") (quoting Lawrence P. King, ed., 4 *Collier on Bankruptcy*, ¶ 547.01, at 547-12 (15th ed. 1996)).

Unlike a fraudulent transfer, a preferential transfer is a legitimate transaction. However, if conducted too close in time to the bankruptcy filing, such transfers may be avoided to prevent the debtor from favoring certain creditors over others. *In re Chase & Sanborn*, 813 F.2d at 1181; *In re Stoecker*, 131 B.R. at 984 (citing H.Rep. No. 595, 95th Cong., 1st Sess. 375 (1977); S.Rep. No. 989, 95th Cong., 2d Sess. 89-90 (1978), U.S.Code Cong. & Admin.News 1978, p. 5787; H.Rep. No. 595, 95th Cong., 1st Sess. 177-178 (1977)).

Finally, equality of distribution is not the underlying policy goal of fraudulent transfer law:

> [S]ince only trustees, as representatives of the estate, can avoid transfers under Section 548(a), one of the results of any recovery by the trustee, who distributes the recovery to all creditors, is equality of distribution. However, that does not make equality of distribution one of the underlying policies of Section 548(a) and it *does not justify the use of that statute for the sole purpose of redistributing losses*.

*Lustig v. Weisz & Assoc., Inc. (In re United Commercial Capital, Inc.)*, 260 B.R. 343, 352 n.10 (Bankr. W.D.N.Y. 2001) (emphasis added). A trustee therefore should not be permitted to avoid

a transfer under the guise of a fraudulent transfer in order to avoid a preferential transfer to a legitimate creditor that is otherwise permissible under the law.

Numerous federal appellate courts—including the Eighth Circuit—have cautioned against confusing a preferential transfer with a fraudulent transfer, and have firmly stressed the distinction between the two. In *Nicklaus v. Peoples Bank & Trust Co.*, 369 F.2d 683 (8th Cir. 1966), a trustee sought to avoid transfers by the debtor for an antecedent debt more than four months prior to the filing of the bankruptcy petition, arguing that such transfers constituted fraudulent transfers because they were made with funds secured by fraud. Both the trial court and the Eighth Circuit disagreed and explained that "a mere preference of one creditor over another should not be confused with a fraudulent conveyance." *Id.* at 684. Applying this principle, and finding that the repayment of the antecedent debt was, in fact, a preferential transfer rather than a fraudulent transfer, the Eighth Circuit upheld the trial court's dismissal of the complaint with prejudice. *Id.*[4]

Other circuit courts have also recognized this critical distinction. For example, in *Boston Trading Group, Inc. v. Burnazos*, 835 F.2d 1504 (1st Cir. 1987), the First Circuit held that "fraudulent conveyance law does *not* seek to void transfers . . . known as [] 'preference[s]'" because such preferential transfers "satisf[y] a debt owed to a person who is, at least, a legitimate creditor." *Id.* at 1508. Rather, "the basic object of fraudulent conveyance law is to see that the debtor uses his limited assets to satisfy *some* of his creditors; it normally does not try to choose among them." *Id.* at 1509 (emphasis in original). On that basis, the *Boston Trading* court held that repayment of a debt to a non-insider was not a fraudulent transfer, noting that it had "found

---

[4] *See also Hedback v. Tenney (In re Security Asset Capital Corp.)*, 396 B.R. 35, 43 (D. Minn. 2008) (holding that payments at issue "were either appropriate payments for services rendered or they were fraudulent transfers. Characterizing the payments as preferential transfers assumes that they were received for legitimate, though antecedent, debts.").

no modern case (nor any reference to any modern case, treatise or article to any case in the past 400 years) that has found a fraudulent conveyance in such circumstances." *Id.* at 1510-11.

Similarly, in *Sharp Int'l Corp. v. State Street Bank & Trust Co. (In re Sharp Int'l)*, 403 F.3d 43 (2d Cir. 2005), the Second Circuit held that payment of an antecedent debt was a preferential transfer rather than a fraudulent transfer. There, following an internal investigation of the debtor, the bank demanded that Sharp repay its borrowings. Sharp did so by fraudulently borrowing funds from other lenders. In rejecting the trustee's fraudulent transfer claims, the court found that Sharp's repayment constituted an allowable preferential transfer among Sharp's creditors: "A conveyance which satisfies an antecedent debt made while the debtor is insolvent is neither fraudulent nor otherwise improper, even if its effect is to prefer one creditor over the other." *Id.* at 54.

Likewise, in *B.E.L.T., Inc. v. Wachovia*, 403 F.3d 474 (7th Cir. 2005), the Seventh Circuit rejected an attempt to claw back as a fraudulent transfer certain debt payments to a lender where the funds were supplied by other lenders under fraudulent pretenses: "The best description of what happened here is a preference among creditors. [Defendant] retired the First Union debt while leaving other creditors in the lurch." *Id.* at 477. As a result, the court rejected the fraudulent transfer claim: "Repayment of an antecedent loan comes within the 'reasonably equivalent value' rule—which is just another way of saying that preferential transfers differ from fraudulent conveyances." *Id.* at 478. And because the debtor in *B.E.L.T.* was not in bankruptcy, the preferential transfers could not be avoided. *Id.*

Applying this rule to the present case, the allegations in the Complaint demonstrate that the payments made by the Borrower to the Direct Lenders were in repayment of antecedent debts. (*See supra* Background Sections I and II; *see also* Complaint ¶ 82 (transfers were "*for*

*repayment of Principal and earnings*") (emphasis added); (*Id.* ¶ 113) ("defendants received

distributions *representing a return of the principal*") (emphasis added)). As such, these

repayments may have constituted preferential transfers, but were not fraudulent transfers. The

fact that the Borrower paid its debts to the Direct Lenders rather than other creditors—essentially

"preferring" the Direct Lenders over those other creditors—is of no moment under the law.

Because the Transfers were years before the Petition date, they cannot be recovered under

section 547 of the Bankruptcy Code. Accordingly, the Trustee's counts based on fraudulent

transfer must be dismissed for failing to state a claim.

> **B.      The Trustee's Constructive Fraudulent Transfer Claims (Counts III, V-VII) Should Also Be Dismissed Because the Epsilon/Westford Defendants Provided "Reasonably Equivalent Value" for the Transfers.**

Even if this Court applies sections 548 and 544, the Trustee's claims still fail. A transfer

may only be avoided as constructively fraudulent under section 548(a)(1)(B) of the Bankruptcy

Code if the debtor "received less than a reasonably equivalent value in exchange for such

transfer or obligation." *Moon v. Anderson (In re Hixon)*, 387 F.3d 695 (8th Cir. 2004) (citing

statute). Likewise, under the Minnesota Uniform Fraudulent Transfer Act ("MUFTA"), which is

the governing law for the section 544 claims, a constructively fraudulent transfer only arises

where a party fails to receive "reasonably equivalent value in exchange for the transfer or

obligation[.]" *Leonard v. Mylex Corp (In re Northgate Computer Sys., Inc.)*, 240 B.R. 328, 367

(Bankr. D. Minn. 1999) (citing statute).

Here, the Trustee cannot maintain a cause of action against the Epsilon/Westford

Defendants for constructive fraudulent transfers because the Borrower received reasonably

equivalent value in exchange for the Borrower's repayment of principal and payment of interest

for the loans in question.

### 1. The Direct Lenders Provided Reasonably Equivalent Value in Exchange for Repayment of the Loans.

The Borrower's repayment of the loan principal and interest to the Direct Lenders constitutes reasonably equivalent value under both section 548(a) of the Bankruptcy Code and Minnesota Statute 513.44(a)(2) because the Borrower's repayment of the loan reduced its indebtedness to the Direct Lenders in a proportionate fashion. The Bankruptcy Code expressly defines "value" to include "satisfaction or securing of a present or antecedent debt of a debtor[.]" 11 U.S.C. § 548(d).

Numerous courts in the Eighth Circuit have applied this rule and held that repayment of loan principal constitutes "reasonably equivalent value" under Bankruptcy Code section 548. *See, e.g., Stalnaker v. Gratton (In re Rosen Auto Leasing, Inc.)*, 346 B.R. 798, 805 (B.A.P. 8th Cir. 2006) (finding that repayment of an unsecured obligation pursuant to Corporate Note for satisfaction of the Corporate Note constituted reasonably equivalent value because "[the debtor] relieved itself of an outstanding debt equal to the face amount of the Check."); *Dowden v. First Sec. Bank (In re Mid-South Auto Brokers)*, 290 B.R. 658, 664 (Bankr. E.D. Ark. 2003) (holding that debtor received "reasonably equivalent value" for payments on an antecedent loan because repayment of the loans "satisfied" the debtor's obligation to the transferee); *Butler v. Loomer (In re Loomer)*, 222 B.R. 618, 623 (Bankr. D. Neb. 1998) (finding that a debtor received reasonably equivalent value in exchange for loan payments because "the loan balance decreased and his equity in his retirement plan increased by the amount of the repayments."); *see also Pummill v. Greensfelder, Hemker & Gale (In re Richards & Conover Steel Co.)*, 267 B.R. 602, 613 (B.A.P. 8th Cir. 2001) (stating that equivalent value may be the satisfaction of an antecedent debt of the debtor); *Sullivan v. Schultz (In re Schultz)*, 368 B.R. 832, 837 (Bankr. D. Minn. 2007) ("While payment of antecedent debts would have constituted an exchange of reasonably equivalent value,

the course of action actually taken by transferring the inherited funds into a special needs trust also constituted an exchange of reasonably equivalent value.").

It is beyond dispute that the Borrower's repayment to the Direct Lenders of the principal for each of its loans constituted repayment of an antecedent debt. Both the Bankruptcy Code and MUFTA define "debt" as "liability on a claim," while a "claim" is defined broadly as "a right to payment, whether or not the right is reduced to judgment, liquidated, unliquidated, fixed, contingent, matured, unmatured, disputed, undisputed, legal, equitable, secured, or unsecured." Minn. Stat. §§ 513.41(5) & (3); 11 U.S.C. § 101(12) & (5)(A). Here, the Complaint alleges that the Direct Lenders repeatedly loaned funds to the debtor that were repaid at the time that each loan matured. (Complaint ¶ 82.) Therefore, the Direct Lenders had a "right to payment," the Borrower's repayment of each loan discharged an antecedent debt, and these transfers may not be avoided.

The Direct Lenders' contractual right to interest paid on their loans over the five-year period (*see, e.g.*, Complaint ¶ 118(c)) similarly constitutes reasonably equivalent value.[5] The Eighth Circuit has acknowledged the unremarkable proposition that contractual interest constitutes payment for valuable consideration because it represents the "time value of money," and compensates the lender for allowing the debtor to possess the funds. *Bagley v. Iowa Beef*

---

[5] The Trustee does not distinguish between principal and interest in identifying the transfers allegedly received by the Epsilon/Westford Defendants. While he asserts that the interest rates paid by the Borrower were too high, he must show not that the Borrower failed to receive "equivalent" value but, rather, that the Borrower failed to recover "reasonably" equivalent value. While the Complaint is deficient in its failure to make its allegations with the necessary degree of specificity, surely the fact that the Borrower may have paid 12% interest where the prime rate was 9% (*see* Complaint, ¶118(c)) is not sufficient to plausibly establish that the transfer from the Borrower–even with the allegedly "high" rate of interest–did not constitute a transfer of "reasonably equivalent" value within the meaning of the statute. *See, e.g., Jacobson v. First State Bank of Benson (In re Jacobson)*, 48 B.R. 497, 499 (Bankr. D. Minn. 1985) (70% of the value of the transfer on foreclosure was "reasonably equivalent" value).

*Processors, Inc. (In re IBP Conf. Bus. Documents Litig.)*, 755 F.2d 1300, 1320 (8th Cir. 1985) ("Interest is compensation for the deprivation of the use of money."); *see also Transmatic, Inc. v. Gulton Indus., Inc.*, 180 F.3d 1343, 1347 (Fed. Cir. 1999) ("[P]rejudgment interest, like all monetary interest, is simply compensation for the use or forbearance of money owed.").

Here, the Borrower's payment on each of the loans made by the Direct Lenders was given in exchange for value. Once each payment was received, the Borrower satisfied its contractual obligation to the Direct Lenders to pay principal and interest. Put simply, the Borrower's payment extinguished an antecedent debt—a circumstance that constitutes "reasonably equivalent value" under Bankruptcy Code section 548 and controlling case law. *In re Rosen Auto Leasing*, 346 B.R. at 800-01. Because contractual interest is a necessary component of a loan, the rule in *Rosen Auto Leasing* applies with equal force to payment of interest or principal. Therefore, the Trustee should not be allowed to claw back these interest payments as fraudulent transfers.

      **2.**      **The Illegal Nature of the Petters Fraud Does Not Change the Fact That the Direct Lenders Provided Reasonably Equivalent Value for Both Principal and Interest Payments.**

The fact that Petters was engaged in fraud or other illegal activities does not alter the fact that the Direct Lenders provided reasonably equivalent value in exchange for payment of principal and interest. As the Eighth Circuit Bankruptcy Appellate Panel recently explained:

> The mere fact that a contract is void, unenforceable, or illegal does not require a finding that there was no reasonably equivalent value given for purposes of § 548(a)(1)(B). As one Court has said, "there is nothing in the plain language of [§548] . . . suggesting an illegality exception to the 'reasonably equivalent value' requirement."

*Kaler v. Able Debt Settlement (In re Kendall)*, 440 B.R. 526, 532 (B.A.P. 8th Cir. 2010) (quoting *Daly v. Deptula (In re Carrozzella & Richardson)*, 286 B.R. 480, 491 (D. Conn. 2002)). To the

contrary, "whether value was given under section 548 should focus on the value of the goods and services provided rather than on the impact that the goods and services had on the bankrupt enterprise." *Id.* at n.9 (quoting *Merrill v. Allen (In re Universal Clearing House Co.)*, 60 B.R. 985, 1000 (D. Utah 1986)); *Jacoway v. Anderson (In re Ozark Rest. Equip. Co., Inc.)*, 850 F.2d 342, 345 (8th Cir. 1988) (determining reasonably equivalent value based on whether the debtor received a "fair exchange" for the goods transferred).

In *Kendall*, the court considered whether payments to a debt settlement company could be avoided as fraudulent transfers because they were made pursuant to an allegedly illegal contract. The *Kendall* court decided that it was unnecessary to decide this issue because the Bankruptcy Code contains no "illegality exception" to the "reasonably equivalent value" requirement. Even if the contract had been illegal, the court held, the trustee was still required to show that the debtors received less than reasonably equivalent value from the program. *In re Kendall*, 440 B.R. at 532. A similar result was reached in *Carrozzella*, where the district court held that "regardless of the Debtor's business, legitimate or otherwise, so long as the Debtor received 'reasonably equivalent value' in exchange for its transfer of property, there has been no diminution in the Debtor's estate and the remaining creditors have not been damaged by the transfer." *In re Carrozzella & Richardson*, 286 B.R. at 491.

The Trustee likely will cite various federal cases supporting his argument that payment of principal or interest by a Ponzi scheme operator may never constitute "reasonably equivalent value." *See, e.g., Donell v. Kowell*, 533 F.3d 762, 771 (9th Cir. 2008); *Sender v. Buchanan (In re Hedged-Investments Assoc., Inc.)*, 84 F.3d 1286, 1289-90 (10th Cir. 1996); *Scholes v. Lehmann*, 56 F.3d 750, 757 (7th Cir. 1995). These cases do not support the Trustee's position for several reasons.

First, the vast majority of these cases involve not lenders that charged interest on loans but equity investors that made "false profits" on investments. For example, in *Donell,* a Ponzi scheme operator offered investors a 20 percent return on their investments every 90 days, purportedly using invested funds as working capital provided to Malaysian latex glove manufacturers. In fact, the operator used investor funds to make payments to earlier investors, pay for personal expenses and invest in risky start-up businesses. *Id.* at 767-68. The defendant had invested in the scheme and received profit payments substantially in excess of his original investment. *Id.* at 780. When the scheme collapsed, the receiver sued the defendant for the return of investment profits paid under the scheme. The Ninth Circuit held that the profit transfers could be recovered because payments of *investment profits* in a Ponzi scheme do not constitute "reasonably equivalent value." *Id.* "If investors receive more than they invested, '[p]ayments in excess of amounts invested are considered fictitious profits because they do not represent a return on legitimate investment activity.'" *Id.* at 772 (citation omitted).

Similarly, in *Scholes*, 56 F.3d at 757, an investment manager attracted investments by claiming that he could generate profits of 10 to 20 percent per month through commodities trading. Although some commodities were traded, most of investment funds raised were used to pay earlier investors the promised return on their investments. The defendants were among the few investors to receive both the return of their investments and profits on their investments. *Id.* at 753. The Seventh Circuit allowed the receiver to recover the profits paid to at least one of these defendants, explaining that the payment of such profit on a fraudulent investment was not provided for reasonably equivalent value:

> [Defendant] is entitled to his profit only if the payment of that profit to him, which reduced the net assets of the estate now administered by the receiver, was offset by an equivalent benefit to the estate. . . . It was not. A profit is not offset by anything; it is the

> residuum of income that remains when costs are netted against revenues. The paying out of profits to Phillips not offset by further investments by him conferred no benefit on the corporations but merely depleted their resources faster.

*Id.* at 758. In other words, because the debtor in *Scholes* had no contractual obligation to pay these investment profits to the defendant, payment of the profits did not alleviate the estate of any debt it owed to these transferees. Thus, there was no reasonably equivalent value exchanged.

These equity investment cases stand in stark contrast to those involving the satisfaction of antecedent debts with contractual interest, such as the instant case. As explained above, the repayment of an antecedent debt, including contractual interest, is "value" as defined in section 548 and MUFTA. Accordingly, the antecedent debt cases are readily distinguishable from those upon which the Trustee is likely to rely.

Second, other federal courts—including the *Carrozzella* decision cited favorably by the Eighth Circuit Bankruptcy Appellate Panel in *Kendall*—have rejected the Trustee's argument regarding the avoidability of contractual interest payments even in the context of a Ponzi scheme, finding that such payments constitute reasonably equivalent value under the plain language of the Bankruptcy Code. *See, e.g., In re Carrozzella & Richardson*, 286 B.R. at 492 ("[W]e agree with the Bankruptcy Court that the Trustee failed to establish that the Debtor did not receive reasonably equivalent value upon his payment of reasonable, contractual interest to the six Defendants. The fact that the Debtor was involved in a Ponzi scheme does not change our conclusion in this regard."); *In re Unified Commercial Capital*, 260 B.R. at 351 ("I simply do not agree that it is against sound public policy to allow an innocent investor victim to enforce a contract with an entity engaged in a 'Ponzi' scheme to pay a reasonable rate of interest for the use (loan) of funds.").

Consistent with *Kendall*, the above-referenced cases focus on whether reasonably equivalent value was given in exchange for the debtor's transfers, regardless of whether the debtor was engaged in a fraudulent business practice. In this regard, there can be little doubt that the Direct Lenders provided reasonably equivalent value in exchange for the Borrower's repayment of principal and payment of interest.

### C. The Trustee's Turnover and Accounting Claim (Count I) Should Be Dismissed Because the Transfers Are Not "Property of the Estate."

Section 542(a) only permits the Trustee to seek turnover of "property" in the possession of another "that the trustee may use, sell, or lease under section 363 of [the Bankruptcy Code]." The Eighth Circuit has expressly held that "property" under section 542 of the Bankruptcy Code refers to "property of the estate" as defined by section 541. *See Brown v. Pyatt (In re Pyatt),* 486 F.3d 423, 427 (8th Cir. 2007). Section 541 defines "property of the estate" as "all legal or equitable interests of the debtor in property as of the commencement of the case" as well as "[a]ny interest in property *that the trustee recovers* under section 329(b), 363(n), 543, 550, 553, or 723 of this title." 11 U.S.C. § 541(a)(1), (3) (emphasis added). The Complaint does not allege that the Trustee presently possesses *any* interest in the Epsilon/Westford Defendants' funds, or that he has received a judgment entitling him to recover those funds. Therefore, the funds at issue are not the "property of the estate" within the meaning of section 541, and they are not subject to the Trustee's turnover claim.

Various courts in the Eighth Circuit have applied this principle in the context of fraudulent transfer actions and held that "property of the estate" does not include property merely *alleged* to have been fraudulently transferred by the debtor—unless and until there is a judicial determination entitling the trustee to recover it. *See, e.g.*, *Schroeder v. Rouse (In re Redding)*, 247 B.R. 474, 477 (B.A.P. 8th Cir. 2000) (finding that if a transfer of property was a fraudulent

transfer, it may be avoidable by the trustee and recoverable under sections 548 and 550 of the Bankruptcy Code, but that it would only be property of the estate once the trustee recovered the property); *In re Lofton*, 246 B.R. 604, 605 (Bankr. E.D. Ark. 2000) ("Nor does the fact that the transfers may be *recoverable* by the trustee make the funds transferred property of the estate."); *In re Thielking*, 163 B.R. 543, 545 (Bankr. S.D. Iowa 1994); *Shields v. Crel, Inc. (In re Dartco, Inc.)*, 203 B.R. 285, 296 n.20 (Bankr. D. Minn. 1996).

Similarly, numerous other federal courts outside the Eighth Circuit have held that alleged fraudulently transferred property is not "property of the estate" unless and until there has been a judicial determination that the property was fraudulently transferred and the property has been recovered by the estate.[6] For example, in *In re Saunders*, 101 B.R. 303, 305 (Bankr. N.D. Fla. 1989), the court explained:

> If property that has been fraudulently transferred is included in the § 541(a)(1) definition of property of the estate, then § 541(a)(3) is rendered meaningless with respect to property recovered pursuant to fraudulent transfer actions. We think that the inclusion of property recovered by the trustee pursuant to his avoidance powers in a separate definitional subparagraph clearly reflects the

---

[6] *See, e.g., FDIC v. Hirsch (In re Colonial Realty Co.)*, 980 F.2d 125, 131 (2d Cir. 1992) (citing *Saunders*, *infra*, with approval and finding that property transferred prior to the petition date is not property of the estate); *Klingman v. Levinson*, 158 B.R. 109, 113 (N.D. Ill. 1993) (holding that fraudulently transferred property is not property of the estate until there has been a judicial determination that the property was fraudulently transferred and the property has been recovered by the estate); *Velez Constr. Inc. v. Consol. Edison Co. (In re Andrew Velez Constr., Inc.)*, 373 B.R. 262, 273 (Bankr. S.D.N.Y. 2007) (dismissing a debtor's turnover of fraudulently transferred property claim because fraudulently transferred property is not subject to turnover until it has been recovered by the estate); *Liquidating Tr. of the Amcast Unsecured Creditor Liquidating Trust v. Baker (In re Amcast Indus. Corp.)*, 365 B.R. 91, 122 (Bankr. S.D. Ohio 2007) (dismissing a trustee's claim for turnover of property alleged to have been fraudulently transferred, and holding that a party cannot allege turnover in the alternative to fraudulent transfer for the same property); *Savage & Assoc., P.C. v. BLR Servs. SAS (In re Teligent, Inc.)*, 307 B.R. 744, 751 (Bankr. S.D.N.Y. 2004) (dismissing the trustee's turnover claim because fraudulently transferred property does not become property of the estate until after it has been recovered).

congressional intent that such property is not to be considered property of the estate until it is recovered.

*Id.* at 305.

Here, the Trustee has alleged merely that the estate is entitled to avoid the transfers at issue. Nowhere does the Trustee allege that there has been a judicial determination permitting him to recover the funds. Therefore, the alleged transfers are not "property of the estate" under section 541, or subject to the turnover provisions of section 542(a), and consequently the Trustee's cause of action for turnover must be dismissed.

**D.** **The Trustee's Claim for Lien Avoidance (Count VIII) Must Be Dismissed Because it Fails to State a Claim for Which Relief Can Be Granted.**

Section 506 of the Bankruptcy Code allows the Trustee to void any lien securing a claim against the debtor that is not an allowed secured claim, subject to certain exceptions. 11 U.S.C. § 506(d); *Harmon v. U.S. Through Farmers Home Admin.*, 101 F.3d 574, 580 (8th Cir. 1996) (citing statute); *FDIC v. Be-Mac Transp. Co. (In re Be-Mac Transport Co.)*, 183 B.R. 563, 564 (E.D. Mo. 1995) (citing statute). Yet, the Trustee does not allege that the Epsilon/Westford Defendants have asserted a lien or even filed a claim against a debtor. Rather, the Trustee simply asserts, apparently as a precautionary measure, "[t]o the extent that a lien secures a claim against a debtor that is not an allowed secured claim, such lien is void in accordance with 11 U.S.C. § 506(d)." (Complaint ¶ 165.) A lien has not yet been asserted, however, and, as such, the Trustee's hypothetical allegations cannot stand because there is no case or controversy ripe for the Court to decide. *Missouri ex rel. Missouri Highway and Transp. Com'n v. Cuffley*, 112 F.3d 1332, 1337 (8th Cir. 1997) ("Because the critical facts involved in this dispute are hypothetical and speculative, we conclude that the dispute is not ripe for review."); *Hartford Acc. & Indem. Co. v. Doe Run Res. Corp.*, 663 F. Supp. 2d 771, 774 (E.D. Mo. 2009) (quoting *Neb. Pub. Power Dist. v. MidAmerican Energy Co.*, 234 F.3d 1032, 1038 (8th Cir. 2000)) (the

ripeness test "requires examination of the definiteness or certainty of a claim, to 'safeguard[ ] against judicial review of hypothetical or speculative disagreements.'").

### E. The Trustee's Claim for Unjust Enrichment (Count IX) Must Be Dismissed Because it Fails to State a Claim for Which Relief Can Be Granted.

The Trustee's claim for unjust enrichment (Count IX) must be dismissed for three independent reasons: (1) unjust enrichment does not occur when (as is the case here) a defendant receives payments to satisfy a contractual obligation and there are no other allegations of wrongdoing; (2) the doctrine of *in pari delicto* bars the Trustee's claim; and (3) the Trustee has an adequate remedy at law.

First, "[t]o establish an unjust enrichment claim, the claimant must show that the defendant has knowingly received or obtained something of value for which the defendant 'in equity and good conscience' should pay." *ServiceMaster of St. Cloud v. GAB Bus. Servs., Inc.,* 544 N.W.2d 302, 306 (Minn. 1996) (quoting *Klass v. Twin City Fed. Sav. and Loan Ass'n*, 291 Minn. 68, 71, 190 N.W.2d 493, 494-95 (1971)). "Unjust enrichment claims do not lie simply because one party benefits from the efforts or obligations of others, but instead it must be shown that a party was unjustly enriched in the sense that the term 'unjustly' could mean illegally or unlawfully." *First Nat'l Bank v. Ramier*, 311 N.W.2d 502, 504 (Minn. 1981). Minnesota courts have held that unjust enrichment does not occur when (as is the case here), "a defendant is enriched by what he is entitled to under a contract or otherwise." *Schaaf v. Residential Funding Corp.*, 517 F.3d 544, 554 (8th Cir. 2007) (affirming dismissal of unjust enrichment claim where defendant had a contractual basis to receive funds); *Stein v. O'Brien*, 565 N.W.2d 472, 474-75 (Minn. Ct. App. 1997) (holding that an unjust enrichment claim must fail because there was a valid contract that governed the parties' partnership rights and obligations).

Indeed, Minnesota courts have held that a plaintiff may assert an unjust enrichment claim only if there has been wrongful conduct on the part of the defendant. *See Shields v. Goldetsky (In re Butler)*, 552 N.W.2d 226, 235 (Minn. 1996) (holding that a vendee may undertake a claim of unjust enrichment stemming from cancellation of a contract for deed only where the vendor has engaged in wrongful conduct); *Hamann v. Park Nicollet Clinic*, 792 N.W.2d 468, 473 (Minn. Ct. App. 2010) (affirming the district court's dismissal of unjust enrichment claim because the plaintiff failed to allege that the defendant acted with an illegal or fraudulent motive); *Custom Design Studio v. Chloe, Inc.*, 584 N.W.2d 430, 434 (Minn. App. 1998) (reversing the trial court's judgment for unjust enrichment and holding that, because the record contained no evidence of "any fraudulent or illegal acts" by the defendant, the plaintiff could not sustain an action for unjust enrichment). Moreover, the wrongful conduct alleged must be conduct approximating or equivalent to illegal behavior. *Schaaf*, 517 F.3d at 554.

Here, the Direct Lenders received funds from the Borrower pursuant to the Borrower's contractual obligations under the promissory notes. (*See, e.g.*, Complaint ¶ 66.) There is no allegation that the amount that the Direct Lenders received from the Borrower exceeded the amounts due on those notes. Finally, there are no factual allegations that any of the Epsilon/Westford Defendants engaged in wrongful or illegal activity of any sort with respect to the promissory notes or otherwise. In fact, the Trustee's unjust enrichment claim is completely devoid of any factual allegations that, if accepted as true, could plausibly state a claim for relief. *Iqbal*, 129 S. Ct. at 1949; *Schaff*, 517 F.3d at 554. Accordingly, his unjust enrichment claim must be dismissed.

Second, even if the Trustee had stated a valid claim for unjust enrichment (which he has not), that claim is barred on the face of the pleadings by the doctrine of *in pari delicto*. This

doctrine holds that anyone who engages in a fraudulent scheme forfeits all right to protection, either at law or in equity. *State v. AAMCO Automatic Transmissions, Inc.*, 199 N.W.2d 444, 448 (Minn. 1972). It represents a "judicial reluctance to intervene in disputes between parties who are both wrongdoers in equal fault." *Id.* The doctrine applies where the plaintiff bears at least substantially equal responsibility for the violations he seeks to redress. *Bateman Eichler, Hill Richards, Inc. v. Berner*, 472 U.S. 299, 307 (1985). Where the plaintiff bears responsibility for the violations, the *in pari delicto* doctrine dictates that "a court should leave the parties where it finds them and should not lend its aid to undo the illegal or fraudulent transaction that the parties expressly entered into." *Flanagan v. MJCC Realty Ltd. P'ship (In re Flanagan)*, 415 B.R. 29, 45 (D. Conn. 2009).

Here, the Trustee brings the claim of unjust enrichment as a successor to the debtor's interest, and as such he stands in the shoes of the debtor. Thus, for purposes of analyzing the applicability of an *in pari delicto* defense, the court must look to the actions of the debtor. *See e.g., Grassmueck v. Am. Shorthorn Ass'n*, 402 F.3d 833, 841-42 (8th Cir. 2005) (holding that *in pari delicto* barred an action by a bankruptcy trustee's claim against defendants who facilitated the debtor's fraudulent investments when the debtor know the investments were fraudulent). As alleged on the face of the Complaint, the Borrower (or PCI if that is the proper debtor) clearly bears more than substantially equal responsibility for the allegedly fraudulent transfers at issue— indeed, it is *solely* responsible for the allegedly fraudulent transfers. It is PCI and the Borrower, and not any of the Epsilon/Westford Defendants, that are alleged to have engaged in illegal conduct. (*See* Complaint ¶¶ 59-65 (describing the unlawful conduct by the Borrower and its associates).) When the Borrower and PCI engaged in illegal conduct, they forfeited their rights to legal or equitable protection such as is provided by the remedy of disgorgement for unjust

enrichment.  *See AAMCO*, 199 N.W.2d  at 448.  Likewise, the Trustee, standing in the

Borrower's stead, cannot assert a claim for unjust enrichment in these circumstances, and Count

IX therefore must be dismissed.

Third, the Trustee cannot assert a claim for unjust enrichment because he has alleged an

adequate remedy at law.  "It is well settled in Minnesota that one may not seek a remedy in

equity when there is an adequate remedy at law…or where statutory standards for recovery are

set by the legislature."  *Southtown Plumbing, Inc. v. Har-Ned Lumber Co.*, 493 N.W.2d 137, 140

(Minn. Ct. App. 1992).  The Trustee pleads that the Bankruptcy Code and MUFTA provide him

with an adequate remedy at law and contain statutory standards for recovery of alleged

fraudulent transfers of the type alleged here.  The fact that the Trustee's Bankruptcy Code and

MUFTA claims must also be dismissed because they fail to meet those statutory standards for

recovery is irrelevant.  *See Drobnak v. Andersen Corp.*, 561 F.3d 778, 787 (8th Cir. 2009)

(holding that unjust enrichment claim was properly dismissed where plaintiffs would have had

an adequate legal remedy if they had adhered to statutory notice and Rule 9(b) requirements);

*Arena Dev. Group, LLC v. Naegele Commc'ns, Inc.*, No. 06-2806, 2007 WL 2506431, at *11 (D.

Minn. Aug. 30, 2007) (dismissing plaintiffs' claim of unjust enrichment in action where

plaintiffs were seeking damages for the same conduct through fraudulent transfer claims under

MUFTA and rejecting plaintiffs' argument that if their MUFTA fraudulent transfer claims fail

they will not have an adequate remedy at law).  Accordingly, the Trustee's claim of unjust

enrichment must be dismissed.

### F. Counts IV Through VII and IX Are Time-Barred.

#### 1. The Complaint Is Untimely Under the Minnesota Statute of Limitations.

Counts IV through VII and IX, which are based on Minnesota law, must be dismissed as untimely. A claim is "commenced" under Minnesota law when a summons is served upon the defendant, not when the complaint is filed. Minn. R. Civ. P. § 3.01(a). Here, some of the Epsilon/Westford Defendants were not served until October 27, 2010 or later, more than two years after the date on which the bankruptcy petition was filed. The state-law claims for fraudulent transfer and unjust enrichment are therefore barred by the two-year statutes of limitations set forth in 11 U.S.C. §§ 108(a) and 546(a).

In cases involving state-law causes of action, "[f]ederal courts follow state substantive law to determine when an action is commenced for statute of limitations purposes." *MW AG, Inc. v. N.H. Ins. Co.*, 107 F.3d 644, 646 (8th Cir. 1997). This rule derives from the *Erie* doctrine, which requires federal courts sitting in diversity to apply state substantive law. *See Walker v. Armco Steel Corp.*, 446 U.S. 740, 752-53 (1980) (holding that *Erie R. Co. v. Tompkins*, 304 U.S. 64 (1938) compels federal courts to apply state tolling rules to state-law claims). The *Erie* doctrine applies with equal force in cases where the federal court's jurisdiction is not based on diversity of citizenship. *See Anderson v. Unisys Corp.*, 47 F.3d 302, 309 (8th Cir. 1995); *Appletree Square I, Ltd. P'ship v. W.R. Grace & Co.*, 29 F.3d 1283, 1286 (8th Cir. 1994). "[I]t is the source of the right sued upon, and not the ground on which federal jurisdiction over the case is founded, which determines the governing law." *Appletree*, 29 F.3d at 1286 (quotation omitted, alteration in original). Applying this principle, courts have held that state tolling rules apply to state-law claims asserted by the trustee of a bankruptcy estate. *See, e.g.*, *Ambrose Branch Coal Co. v. Tankersley*, 106 B.R. 462, 465-67 (W.D. Va. 1989).

Here, the Trustee's standing under Counts IV through VII arises expressly under section 544(b) of the Bankruptcy Code, which only gives the Trustee power to avoid transactions "voidable under applicable law by a creditor holding an unsecured claim…." 11 U.S.C. §544(b)(1). His standing, then, is limited to the standing that would otherwise be conferred on a creditor asserting voidability under Minnesota law. Failure to "commence" this adversary proceeding within two years (*see* 11 U.S.C. §§ 108(a) and 546(a)) under applicable law— whether such claim was brought by the Trustee in Minnesota or in this Court—is as fatal to his claims as if he had brought them in Minnesota state court.

> **2.** **Even If the Trustee Timely Filed His Claims Under Section 546(a), the Statute of Limitations Can Only Reach Back From the Date of "Commencement" Under State Law.**

Even if the Trustee argues that his avoidance claims were timely commenced under section 546(a)—which generally prohibits the Trustee from commencing any avoidance claim under the Bankruptcy Code or otherwise applicable law more than two years after the Petition date—the Trustee's limited standing under section 544(b) requires that state law claims he brings be viable under applicable state law. In his capacity as successor to the debtors' unsecured creditors (*see generally Neb. State Bank v. Jones,* 846 F.2d 477 (8th Cir. 1988)), the Trustee can only bring claims under Minnesota law to the extent that they are timely. Absent tolling, then, claims brought prior to October 15, 2004 would be barred by the statutes of limitations contained in sections 541.05 (six years) and 541.07 (two or three years) of the Minnesota Statutes. Minn. Stat. §§ 541.05, 541.07.

Section 546(a), upon which Counts IV through VII rely for the Trustee's standing, is not a tolling statute. *But see Acequia, Inc. v. Clinton (In re Acequia, Inc.)*, 34 F.3d 800, 807 (9th Cir. 1994) (stating in *dictum* that the "bankruptcy petition" tolls the statute of limitations). Rather, it limits the time during which the Trustee may assert avoidance claims. In the absence of a tolling

statute, *Walker* and its progeny instruct that the state court statute of limitations (including calculation based on the definition of commencement) applies.  Thus, for a matter commenced on October 15, 2010 or thereafter, transactions occurring before October 15, 2004 fall outside a six-year statute of limitations.

As to the unjust enrichment claim (Count IX), section 108(a) of the Bankruptcy Code, *not* section 546(a), is the tolling provision upon which the Trustee must rely to the extent that he seeks to avoid transactions occurring prior to October 2004.  That statute provides, in pertinent part:  "If applicable nonbankruptcy law … fixes a period within which the debtor may commence an action, and such period has not expired before the date of the filing of the petition, the trustee may commence such action only before the later of—(1) [the end of the nonbankruptcy limitations period]; or (2) two years after the order for relief."  Because the action premised on Minnesota law was not commenced *under Minnesota law* until more than two years after the order for relief was entered, the two-year tolling period contained in section 108(a)(2) does not apply.

### 3.     The Trustee's Claims Cannot, and Should Not, Be Tolled.

The Trustee has asserted summarily that all limitations periods "are tolled by, among other things, Petters' breach of fiduciary duty in failing to disclose the fraud, the actions of Petters and his associates in fraudulently and intentionally concealing the fraud, and the adverse domination of PCI, PGW, and other debtor entities by Petters."  (Complaint ¶ 90.)  These allegations are fundamentally inadequate, for three reasons:  (1) the applicable statute of limitations for claims based on statute, Minn. Stat. § 541.05(2), does not incorporate a discovery rule (unlike the provision, Minnesota Statute § 541.05(6), that applies to fraud claims generally); (2) the fact that Petters misused the proceeds of loans that were fraudulently obtained does not render his payment of debts owed to the Epsilon/Westford Defendants fraudulent—rather, the

fact of the loans and their termination were properly disclosed in the public record; and (3) there is no allegation whatsoever that the Epsilon/Westford Defendants participated in the fraud or have otherwise conducted themselves such that the imposition of equitable remedies against them would be justified.

## II. THE COMPLAINT MUST BE DISMISSED BECAUSE IT IS NOT PLED WITH THE PARTICULARITY REQUIRED BY *TWOMBLY*, *IQBAL* OR RULE 9(b).

Even if the Court finds that the Trustee has stated valid claims for relief in his Complaint, the Complaint must still be dismissed because it is not pled with the particularity that *Twombly*, *Iqbal* or Rule 9(b) of the Federal Rules of Civil Procedure require.[7]  As discussed above, under *Twombly* and *Iqbal*, the Trustee must plead specific *facts* (not mere conclusory statements), which if taken as true state a plausible claim for relief.  *Iqbal*, 129 S. Ct. at 1950; *Twombly*, 550 U.S. at 555.  Rule 9(b), made applicable by Bankruptcy Rule 7009, requires that, "[i]n alleging fraud or mistake, a party must state with particularity the circumstances constituting fraud or mistake."  A plaintiff alleging fraud thus must plead beyond the requirements of *Twombly* and *Iqbal* to allege the "who, what, when, where, and how" of the alleged fraud.  *Drobnak*, 561 F.3d at 783.  The heightened pleading requirement applies to all averments of fraud, including fraudulent transfer claims.  *See, e.g., Kranz v. Koenig*, 240 F.R.D. 453, 455 (D. Minn. 2007) (holding that Rule 9(b) applies to fraudulent transfer claims under MUFTA).

The Trustee's Rule 9(b) pleading failures can be grouped into three general categories: (1) the failure to distinguish between PCI and the Borrower; (2) the failure to distinguish among the

---

[7] Because each count in the Complaint is predicated on the existence of an alleged fraudulent scheme, all of the allegations must be pled with particularity.  *See, e.g., United States v. Henderson*, No. Civ. 03-5060, 2004 WL 540278, at *3 (D. Minn. Mar. 16, 2004) (holding that the court would apply the heightened pleading standard to claims other than fraud because the allegations of fraud formed the basis of the other claims).

Epsilon/Westford Defendants and the individual transfers; and (3) the improper pleading based "on information and belief."

## A. The Complaint Does Not Properly Distinguish Between PCI and the Borrower.

At the outset of his Complaint, the Trustee declares that PCI and the Borrower shall collectively be referred to as the "Debtors." (*See* Complaint ¶ 4.) With this simple statement, the Trustee attempts to gloss over the crucial difference between PCI and the Borrower with respect to their respective roles in the alleged fraudulent scheme and the elements of the Trustee's claims. This renders several key allegations in the Complaint insufficiently pled under *Twombly*, *Iqbal*, and Rule 9(b).

For example, with respect to his constructive fraudulent transfer claims (Counts III, V, VI, and VII), the Trustee asserts that the "Debtors received less than a reasonably equivalent value in exchange for the [] Transfers." (Complaint ¶¶ 136, 149, 155, 161.) It is unclear, however, if the Trustee is alleging that the Borrower received less than a reasonably equivalent value for the transfers to the Direct Lenders, or if PCI received less than reasonably equivalent value for its transfers to the Borrower, or both. With respect to the Borrower, the allegation is implausible on its face, as the Borrower received reasonably equivalent value in exchange for the transfers to the Direct Lenders as a reduction in the debt it owed to the Direct Lenders under the promissory notes it canceled in exchange for the loans. (*See* Discussion *supra* in section I.B.) To the extent that the Trustee claims that PCI received less than reasonably equivalent value in exchange for some transfers, that allegation lacks any specificity as to what transfers the Trustee is referring to (the Complaint does not list a single transfer from PCI to anyone), much less when or how those transfers occurred. Thus, even under *Twombly* and *Iqbal* (much less the heightened standard of Rule 9(b)) this critical allegation lacks the requisite specificity.

Likewise, with respect to his actual fraudulent transfer claims (Counts II and IV), the Trustee makes the blanket assertion that transfers were made "with actual intent to hinder, delay, or defraud a creditor to which the Debtors were or became indebted on or after the date of the [Transfers]." (Complaint ¶¶ 131, 142.) For purposes of evaluating this allegation, however, it is important to note that PCI and the Borrower are differently situated. A creditor of PCI is not thereby a creditor of the Borrower and vice versa. To adequately plead this element the Trustee must allege facts that each debtor intended to defraud one of its own creditors. The Trustee's pleading fails to do so and is, therefore, deficient. In fact, although premised on section 544(b) and its requirement that an actual creditor exist, the Trustee fails to identify even a single creditor. Again, this is patently insufficient under *Twombly*, *Iqbal* and the heightened pleading standard of Rule 9(b).

The Trustee's failure to specify the creditors of PCI and the Borrower is also fatal to his standing to bring avoidance claims under 11 U.S.C. § 544(b) (Counts III-VII). To assert a claim under § 544(b), the Trustee must allege facts that demonstrate the existence of a real creditor of the relevant debtor on whose behalf the Trustee may assert a claim. *See* 11 U.S.C. § 544(b). The Trustee does not do so here. Instead, he makes the very sort of conclusory allegation that has been squarely rejected by *Iqbal*. (*See, e.g.,* Complaint ¶ 141 ("there was and is at least one or more creditors who held and who hold unsecured claims against the Debtors . . . ." ).) Additionally, to assert a claim under Minnesota Statute § 513.45(a), the Trustee must plead facts to show the existence of a creditor that existed at the time the allegedly voidable transfer was made. Again, PCI and the Borrower presumably had different creditors at different points in time. But, none of that relevant factual information is pled in the Complaint. The Trustee's failure to plead facts to show that the relevant creditors existed for each debtor entity to assert

standing under 11 U.S.C. § 544(b) and to assert a claim for relief under Minnesota Statute § 513.45(a) dooms his claim.

If creditors exist (and existed at the time of the transfers) for PCI and the Borrower, then the Trustee should be able to plead that information with specificity as to each debtor. He has not done so here and, thus, his claims must be dismissed.

**B.    The Trustee Does Not Properly Distinguish His Allegations Among the Epsilon/Westford Defendants or the Transfers at Issue.**

The Complaint also is not pled with the particularity required by *Twombly*, *Iqbal* or Rule 9(b) because it fails to distinguish between each of the Epsilon/Westford Defendants or the transfers at issue. Each of the Epsilon/Westford Defendants is differently situated. Each had its own role, if any, in making loans to the Borrower. The Trustee, however, essentially ignores these differences and collectively refers to "defendants" in the aggregate without any effort to parse and identify their respective roles and the transfers, if any, in which they were involved. (*See, e.g.*, Complaint ¶ 118 ("*[d]efendants* knew or should have known that they were benefiting from fraudulent activity"); ¶ 119 ("*defendants* were paid more than $3,203,439,988.09 by PL Ltd."); ¶ 144 ("*defendants*…cannot satisfy their burden that they took the Transfers for value and in good faith.") (emphases added)). This is precisely the type of conclusory pleading that *Iqbal* prohibits. *Iqbal*, 129 S. Ct. at 1950.

Moreover, under Rule 9(b), a plaintiff may not—as the Trustee does here—casually aggregate multiple defendants, particularly where the nature and extent of any involvement of those defendants in the events at issue varied (often dramatically). Instead, the plaintiff must—as the Trustee does not do here—differentiate among such defendants and tie specific allegations to specific defendants. *See Moua v. Jani-King of Minnesota, Inc.*, 613 F. Supp. 2d 1103, 1111 (D. Minn. 2009) (holding that "Plaintiffs' fraud claims fail to satisfy Rule 9(b) because the

allegations cluster all the defendants together without the required specificity to discern the respective roles of the individual defendants in the alleged fraud scheme"); *Apace Commc'ns, Ltd. v. Burke*, 522 F. Supp. 2d 512, 517 (W.D.N.Y. 2007) (dismissing complaint where plaintiffs make allegations against "defendants" in the aggregate, without specifically alleging the fraud perpetrated by each defendant). To meet his pleading obligations, therefore, the Trustee must make specific allegations as to each Epsilon/Westford Defendant.

The Trustee fails to meet this burden at the most basic level, by among other things, failing to identify which Epsilon/Westford Defendants made and received the transfers from the Borrower or PCI that he is seeking to void. *See Official Comm. of Unsec. Creditors v. JP Morgan Chase Bank, N.A. (In re M.F. Fabrikant & Sons)*, 394 B.R. 721, 740 (Bankr. S.D.N.Y. 2008) (holding that a complaint does not comply with Rule 9(b) where it fails to identify which of several defendants received a particular transfer). While not entirely clear, Exhibits J and K to the Complaint appear to list the transfers at issue, but they fail to identify the Epsilon/Westford Defendants to which those transfers may have been made. (Based on their headings, Exhibit J appears to list transfers to the Borrower, while Exhibit K appears to list transfers from the Borrower to PCI; neither exhibit lists the transfers to the Epsilon/Westford Defendants that are the subject of this avoidance action.)

Additionally, the Trustee provides no specificity as to what subsequent transfers (if any) were made with respect to those transfers it seeks to void. Instead, the Trustee merely intones repeatedly that the Epsilon/Westford Defendants are "initial transferees of the fraudulent, or other avoidable transfers alleged in this Complaint, or a person or entity for whose benefit such transfers were made, or immediate or mediate transferees of any initial transferee of such transfers." (Complaint ¶¶ 49-56.) The law treats initial and subsequent transferees differently,

and each Epsilon/Westford Defendant is entitled to know the category into which it allegedly falls. Because the Complaint fails to apprise the Epsilon/Westford Defendants of the specific allegations against them individually, it is impossible for the Epsilon/Westford Defendants to prepare an adequate defense. *See Greenwood v. Dittmer*, 776 F.2d 785, 789 (8th Cir. 1985) (stating that one of the primary purposes of Rule 9(b) "is to facilitate a defendant's ability to respond to and prepare a defense to plaintiff's charges.").

Finally, the Trustee must plead his allegations with respect to each individual transfer at issue. For example, with respect to his actual fraudulent transfer claims, the Trustee must plead facts to show that, at the time that each transfer was made, it was done with the "actual intent to hinder, delay, or defraud any creditor of the debtor." Likewise, for his constructive fraudulent transfer claims he must plead facts to show the debtor's insolvency at the time of transfer. The transfers at issue here span an approximately five-year period during which the debtor's financial situation, creditors and intent surely did not remain static. Accordingly, to meet his pleading obligations under Rule 9(b), the Trustee must adequately plead each element of his causes of action with respect to each transfer. The Trustee has not done so here, and accordingly, the Complaint must be dismissed.

## C. The Trustee's Complaint Improperly Pleads Allegations "on Information and Belief."

The Complaint should also be dismissed for failure to plead with the particularity that Rule 9(b) requires because most of the allegations of substance against the Epsilon/Westford Defendants are impermissibly pled "on information and belief." As a general matter, allegations of fraud based "on information and belief" do not satisfy Rule 9(b)'s heightened pleading standard. *See Feldman v. Chase Home Fin. (In re Image Masters Inc.)*, 421 B.R. 164, 184-85 (Bankr. E.D. Pa. 2009). In limited circumstances, however, where the relevant facts are

peculiarly within the knowledge of the opposing party, allegations pled "on information and belief" may satisfy Rule 9(b) if the complaint also sets forth the source of the information and the reasons for the belief. *See Parnes v. Gateway 2000, Inc.*, 122 F.3d 539, 550 (8th Cir. 1997); *Kranz*, 240 F.R.D. at 456.

Here, the Trustee pleads allegations "on information and belief" on over 40 separate occasions in his 48-page Complaint. (*See, e.g.*, Complaint ¶ 117 ("[o]n information and belief, in each instance, every transaction entered into by the Epsilon and Westford Funds to invest in PCI and the [so-called] Ponzi scheme—through PL—was based upon wholly fraudulent and fictitious documents and financial transactions"); ¶ 118(d) ("On information and belief, defendants never questioned why Petters accepted their investments in lieu of other available and less expensive financing alternatives . . . .").) The Trustee has not asserted that the information he needs to plead with Rule 9(b) particularity is solely within the control of the Epsilon/Westford Defendants, nor has he indicated the source of or reason for his belief, and thus, he cannot resort to pleading "on information and belief." *See Kranz*, 240 F.R.D. at 456. Accordingly, the Complaint should be dismissed.

## III. THE TRUSTEE FAILED TO JOIN THE BORROWER, WHICH IS A NECESSARY PARTY, AS THE INITIAL TRANSFEREE OF THE TRANSFERS AT ISSUE IN THE COMPLAINT.

To the extent that the Trustee's fraudulent transfer claims (Counts II through VII) are brought on behalf of PCI, they must be dismissed for an additional reason: the Trustee has failed to join a required and indispensible party defendant—the Borrower. The Federal Rules of Civil Procedure define a "required party" as one without which "the court cannot accord complete relief among existing parties." Fed. R. Civ. P. 19(a)(1)(A); *Bailey v. Bayer CropScience L.P.*, 563 F.3d 302 (8th Cir. 2009). Here, the Borrower is a required party because it was the initial

transferee of the loan repayments at issue. (Complaint ¶ 82.) Without joining the Borrower as a defendant in this case, the Court will be unable to accord complete relief to the existing parties.

Each of the Trustee's fraudulent transfer claims seeks to recover funds from the Epsilon/Westford Defendants pursuant to 11 U.S.C. § 550 for allegedly fraudulent transfers. But section 550 only permits the Trustee to pursue parties for the avoided transaction where the initial transfer itself has been avoided. Section 550 expressly states that a Trustee may only recover property "to the extent that a transfer is avoided under Section 544 [or] 548[.]" 11 U.S.C. § 550(a). Since both 11 U.S.C. § 548 and Minnesota Statute § 513.44 (which the Trustee invokes pursuant to 11 U.S.C. § 544(b)) only allow avoidance of transfers from the debtor to the initial transferee, recovery under section 550 cannot be achieved unless and until the initial transfer itself has been avoided. Accordingly, recovery under section 550 is only triggered by avoidance of a transfer from the debtor to the initial transferee—in this case, the transfer between PCI and the Borrower.

The Eighth Circuit has not expressly addressed this issue. However, several federal courts have interpreted section 550 to require avoidance of the debtor's transfer to the initial transferee. For example, in *Weinman v. Simons (In re Slack-Horner Foundries Co.)*, 971 F.2d 577 (10th Cir. 1992), the Tenth Circuit held that a Trustee could not avoid a transaction because the Trustee had not sought to avoid the transfer to the initial transferee:

> Although § 550 of the Code authorizes the trustee in certain circumstances to recover the value of the property transferred from either the initial transferee [or a subsequent transferee], in order to recover from a subsequent transferee the trustee must first have the transfer of the debtor's interest to the initial transferee avoided under § 548.

*Id.* at 580 (internal citation omitted). Similarly, in *Greenwald v. Latham & Watkins (In re Trans-End Tech., Inc.)*, 230 B.R. 101, 105 (Bankr. N.D. Ohio 1998), a district court followed *Slack-*

*Horner* and refused a Trustee's request to recover from a subsequent transferee where the Trustee had failed to avoid the initial transfer by joining the initial transferee in the lawsuit. And because the Trustee was barred by the statute of limitations from adding the initial transferee as a defendant, recovery against the subsequent transferee was also barred. *Id; see also Brandt v. Hicks, Muse & Co., Inc. (In re Healthco Intern., Inc.)*, 195 B.R. 971, 981-82 (Bankr. D. Mass. 1996) ("An avoided 'transfer' is recoverable only from a 'transferee.' If the initial transferee makes a second transfer, the property may be recovered from the later transferee only if the 'transfer is avoided' with respect to the 'initial transferee.'").

Courts in other jurisdictions have rejected the Tenth Circuit's approach in *Slack-Horner*. *See, e.g.*, *IBT Int't, Inc. v. Northern (In re Int'l Admin. Servs., Inc.)*, 408 F.3d 689, 704 (11th Cir. 2005); *Woods & Erickson, LLP v. Leonard (In re AVI, Inc.)*, 389 B.R. 721, 732 (B.A.P. 9th Cir. 2008). But these cases should not be regarded as persuasive authority because they are contrary to the unambiguous text of section 550, which plainly limits a trustee's authority to recover from subsequent transferees only "to the extent that" he has successfully avoided the initial transfer. *See e.g.*, *IBT*, 408 F.3d at 707 ("We are mindful that our reading of § 550(a) does not embrace a strict construction."). As the district court stated in *Trans-End*, "[t]he language of § 550(a) is unarguably both unambiguous and plain and it clearly provides for the recovery of fraudulent transfers from initial and subsequent transferees "'to the extent that the transfer is avoided under section . . . 548.'" 230 B.R. at 104 (emphasis original). This Court should apply the same reasoning in this case.

Here, the Complaint alleges that the Borrower was the initial transferee of the funds from the other Petters entities. The Trustee describes the Borrower's role in the transfer process as follows:

> After extracting commissions for their respective roles in the Ponzi scheme, Reynolds (through Nationwide) or Catain (through Enchanted) would transfer the funds to PCI, which would then transfer some or all of those funds back to the SPEs [including PL Ltd.] for repayment of Principal and earnings in the form of false profits.

(Complaint ¶ 82.)  Therefore, as the initial transferee of the funds at issue, the Borrower is a necessary party.  *In re Slack-Horner*, 971 F.2d at 580.

## CONCLUSION

For the foregoing reasons, the Epsilon/Westford Defendants respectfully request that the Court dismiss the Trustee's Complaint, with prejudice.

Dated: February 18, 2011

Respectfully submitted,

/e/  Robert T. Kugler

Robert T. Kugler
robert.kugler@leonard.com
LEONARD STREET & DEINARD
150 South Fifth Street
Suite 2300
Minneapolis, MN 55402
Telephone:  (612) 335-1645
Facsimile:  (612) 335-1657

Daniel E. Reidy
Theodore T. Chung
Tara A. Fumerton
dereidy@jonesday.com
ttchung@jonesday.com
tfumerton@jonesday.com
JONES DAY
77 West Wacker
Chicago, IL 60601
Telephone:  (312) 782-3939
Facsimile:  (312) 782-8585

Tobias S. Keller
David C. Kiernan
tkeller@jonesday.com
dkiernan@jonesday.com
JONES DAY
555 California Street, 26th Floor
San Francisco, CA 94101
Telephone:  (415) 626-3939
Facsimile:  (415) 875-5700

***Counsel for the
Epsilon/Westford Defendants***

## UNITED STATES BANKRUPTCY COURT
## DISTRICT OF MINNESOTA

In re:

Petters Company, Inc., et al.,
                    Debtors.

(includes:
Petters Group Worldwide, LLC;
PC Funding, LLC;
Thousand Lakes, LLC;
SPF Funding, LLC;
PL Ltd., Inc.;
Edge One LLC;
MGC Finance, Inc.;
PAC Funding, LLC;
Palm Beach Finance Holdings, Inc.)

**Jointly Administered under**
**Case No. 08-45257**

Court File No. 08-45257

Court Files Nos.:
08-45258 (GFK)
08-45326 (GFK)
08-45327 (GFK)
08-45328 (GFK)
08-45329 (GFK)
08-45330 (GFK)
08-45331 (GFK)
08-45371 (GFK)
08-45392 (GFK)

Chapter 11 Cases
Judge Gregory F. Kishel

---

Douglas A. Kelley, in his capacity as the
court-appointed Chapter 11 Trustee of
Debtors Petters Company, Inc. and
PL Ltd., Inc.,
                    Plaintiff,
vs.

Westford Special Situations Master Fund, L.P.;
et al.,
                    Defendants.

ADV. NO. 10-04396

---

## CERTIFICATE OF SERVICE

---

I, Ma Xiong, declare, under penalty of perjury, that on February 18, 2011, I filed a **Notice of Defendants' Motion to Dismiss** with the Clerk of Bankruptcy Court through ECF, and that ECF will send an e-notice of electronic filing to the following:

**Adam C Ballinger**; aballinger@lindquist.com
**Daniel E Reidy**; dereidy@jonesday.com
**Daryle Uphoff**; duphoff@lindquist.com
**David C Kiernan**; dkiernan@jonesday.com
**James A. Lodoen**; jlodoen@lindquist.com
**Jeffrey D. Smith**; jsmith@lindquist.com
**Kirstin D. Kanski**; kkanski@lindquist.com
**Marcus A Ploeger**; mploeger@briggs.com
**Mark D Larsen**; mlarsen@lindquist.com
**Richard D Anderson**; randerson@briggs.com
**Robert T. Kugler**; robert.kugler@leonard.com
**Tara A Fumerton**; tfumerton@jonesday.com
**Theodore T Chung**; ttchung@jonesday.com
**Tobias S Keller**; tkeller@jonesday.com
**US Trustee**; ustpregion12.mn.ecf@usdoj.gov

I further certify that I caused a copy of the foregoing document and the Notice of Electronic

Filing to be served by First Class Mail on the following parties:

**ARROWHEAD CAPITAL
MANAGEMENT LLC**
C/O JAMES N FRY, STE 1250
601 CARLSON PKWY
MINNETONKA, MN 55305

**KEVIN J SHORT**
150 S. 5TH ST. STE 3260
MINNEAPOLIS, MN 55402

**NEAL GERBER & EISENBERG LLP**
C/O THOMAS C. WILFORD
SUITE 1700
TWO NORTH LASALLE STREET
CHICAGO, IL 60602

**JONATHAN HACKBARTH**
QUARLES & BRADY
411 E WISCONSIN AVE
MILWAUKEE, WI 53202

**RONALD R PETERSON**
JENNER & BLOCK, LLP
330 NORTH WABASH AVENUE
CHICAGO, IL 60611-7603

**JESSICA S ETRA**
WILLKIE FARR & GALLAGHER LLP
787 7TH AVE
NEW YORK, NY 10019-6099

**TAUNTON VENTURES LP**
C/O PAUL TAUNTON
990 DEERBROOK DR
CHANHASSEN, MN 55317

**EDWARD J ESTRADA**
REED SMITH LLP
599 LEXINGTON AVE 22ND FLR
NEW YORK, NY 10022

**ERIC W OSTROFF**
MELAND RUSSIN & BUDWICK PA
200 S BISCAYNE BLVD STE 3000
MIAMI, FL 33131

**HUGH HILL**
875 THIRD AVE
NEW YORK, NY 10022

**MATTHEW A FELDMAN**
787 7TH AVE
NEW YORK, NY 10019

**JONATHAN S FELDMAN**
MELAND RUSSIN & BUDWICK PA
200 S BISCAYNE BLVD STE 3000
MIAMI, FL 33131

**CAPITAL STRATEGIES FUND LTD.**
HWR SERVICES LIMITED
CRAIGMUIR CHAMBERS
PO BOX 71
ROAD TOWN, TORTOLA
BRITISH VIRGIN ISLANDS

**EPSILON ACTIVE VALUE FUND II, LTD.**
HWR SERVICES LIMITED
CRAIGMUIR CHAMBERS
PO BOX 71
ROAD TOWN, TORTOLA
BRITISH VIRGIN ISLANDS

**ISSA MOE**
MOSS AND BARNETT PA
4800 WELLS FARGO CENTER
90 SOUTH 7TH ST
MPLS, MN 55402

**MATTHEW J FLYNN**
QUARLES & BRADY
411 E WISCONSIN AVE
MILWAUKEE, WI 53202

**MICHAEL S BUDWICK**
MELAND RUSSIN & BUDWICK PA
200 S BISCAYNE BLVD STE 3000
MIAMI, FL 33131

**STEVEN W THOMAS**
THOMAS ALEXANDER & FORRESTER LLP
14 27TH AVE
VENIE, CA 90291

**ROBIN E KELLER**
HOGAN LOVELLUS US LLP
875 3RD AVE
NEW YORK, NY 10022

**SOLOMON B GENET**
MELAND RUSSIN & BUDWICK PA
200 S BISCAYNE BLVD STE 3000
MIAMI, FL 33131

**EPSILON GLOBAL ACTIVE VALUE FUND I-B, LTD.**
HWR SERVICES LIMITED
CRAIGMUIR CHAMBERS
PO BOX 71
ROAD TOWN, TORTOLA
BRITISH VIRGIN ISLANDS

**EPSILON GLOBAL ACTIVE VALUE FUND II-B, LTD.**
HWR SERVICES LIMITED
CRAIGMUIR CHAMBERS
PO BOX 71
ROAD TOWN, TORTOLA
BRITISH VIRGIN ISLANDS

**EPSILON GLOBAL ACTIVE VALUE FUND II-G, L.P.**
NATIONAL REGISTERED AGENTS
160 GREENTREE DRIVE, SUITE 101
DOVER, DE 19904

**EPSILON GLOBAL ACTIVE VALUE FUND II-G, LTD.**
HWR SERVICES LIMITED
CRAIGMUIR CHAMBERS
PO BOX 71
ROAD TOWN, TORTOLA
BRITISH VIRGIN ISLANDS

**EPSILON GLOBAL ACTIVE VALUE FUND III LTD**
C/O STEVE GORAN STEVANOVICH
7521 ISLA VERDE WAY
DELRAY BEACH, FL 33446

**EPSILON GLOBAL ACTIVE VALUE FUND III LTD.**
HWR SERVICES LIMITED
CRAIGMUIR CHAMBERS
PO BOX 71
ROAD TOWN, TORTOLA
BRITISH VIRGIN ISLANDS

**EPSILON GLOBAL ACTIVE VALUE FUND, LTD.**
HWR SERVICES LIMITED
CRAIGMUIR CHAMBERS
PO BOX 71
ROAD TOWN, TORTOLA
BRITISH VIRGIN ISLANDS

**EPSILON GLOBAL ASSET MANAGEMENT, LTD.**
MAPLES AND CALDER
PO BOX 309, UGLAND HOUSE
SOUTH CHURCH STREET
GEORGE TOWN
GRAND CAYMAN KY1-1104
CAYMAN ISLANDS

**EPSILON GLOBAL MASTER FUND II, L.P.**
MAPLES AND CALDER
PO BOX 309, UGLAND HOUSE
SOUTH CHURCH STREET
GEORGE TOWN
GRAND CAYMAN KY1-1104
CAYMAN ISLANDS

**EPSILON GLOBAL MASTER FUND III - STRUCTURED STRATEGIES, L.P.**
HWR SERVICES LIMITED
CRAIGMUIR CHAMBERS
PO BOX 71
ROAD TOWN, TORTOLA
BRITISH VIRGIN ISLANDS

**EPSILON GLOBAL MASTER FUND III - STRUCTURED STRATEGIES, L.P.**
C/O STEVE GORAN STEVANOVICH
7521 ISLA VERDE WAY
DELRAY BEACH, FL 33446

**EPSILON GLOBAL MASTER FUND L.P.**
MAPLES AND CALDER
PO BOX 309, UGLAND HOUSE
SOUTH CHURCH STREET
GEORGE TOWN
GRAND CAYMAN KY1-1104
CAYMAN ISLANDS

**STAFFORD TOWNE, LTD**
C/O HWR SERVICES LIMITED
CRAIGMUIR CHAMBERS
PO BOX 71
ROAD TOWN TORTOLA
BRITISH VIRGIN ISLANDS

**EPSILON INVESTMENT MANAGEMENT, LLC**
FIRST CANADIAN PLACE
100 KING STREET WEST, SUITE 5715
TORONTO M5X 1 A9 ONTARIO
CANADA

**STAFFORD TOWNE, LTD.**
7280 W. PALMETTO PARK ROAD
BOCA RATON, FL 33433

**WESTFORD ASSET MANAGEMENT, LLC**
FIRST CANADIAN PLACE
100 KING STREET WEST, SUITE 5715
TORONTO M5X 1 A9 ONTARIO
CANADA

**WESTFORD GLOBAL ASSET MANAGEMENT, LTD.**
MAPLES AND CALDER

PO BOX 309, UGLAND HOUSE
SOUTH CHURCH STREET
GEORGE TOWN
GRAND CAYMAN KY1-1104
CAYMAN ISLANDS

**WESTFORD SPECIAL SITUATIONS FUND LTD.**
HWR SERVICES LIMITED
CRAIGMUIR CHAMBERS
PO BOX 71
ROAD TOWN, TORTOLA
BRITISH VIRGIN ISLANDS

Dated: February 18, 2011

/e/ Ma Xiong
Ma Xiong

**UNITED STATES BANKRUPTCY COURT**
**DISTRICT OF MINNESOTA**

In re:                                          **Jointly Administered under**
                                                **Case No. 08-45257**

Petters Company, Inc., et al.,                  Court File No. 08-45257
                    Debtors.

(includes:                                       Court Files Nos.:
Petters Group Worldwide, LLC;                    08-45258 (GFK)
PC Funding, LLC;                                 08-45326 (GFK)
Thousand Lakes, LLC;                             08-45327 (GFK)
SPF Funding, LLC;                                08-45328 (GFK)
PL Ltd., Inc.;                                   08-45329 (GFK)
Edge One LLC;                                    08-45330 (GFK)
MGC Finance, Inc.;                               08-45331 (GFK)
PAC Funding, LLC;                                08-45371 (GFK)
Palm Beach Finance Holdings, Inc.)               08-45392 (GFK)

                                                 Chapter 11 Cases
                                                 Judge Gregory F. Kishel

---

Douglas A. Kelley, in his capacity as the
court-appointed Chapter 11 Trustee of
Debtors Petters Company, Inc. and
PL Ltd., Inc.,
                    Plaintiff,
vs.                                              ADV. NO. 10-04396

Westford Special Situations Master Fund, L.P.;
et al.,
                    Defendants.

---

**[PROPOSED] ORDER GRANTING DEFENDANTS' MOTION TO DISMISS**

---

Upon consideration of the motion of the Epsilon/Westford Defendants, requesting the

entry of an order granting their Motion to Dismiss Trustee's Complaint; due and proper notice of

the Epsilon/Westford Defendants having been provided; it appearing that there is good cause to

grant the relief requested; and there being no objection to the relief requested; it is therefore

ORDERED as follows:

      1.     The Epsilon/Westford Defendant's Motion to Dismiss is hereby granted, and the

Trustee's Complaint is dismissed in its entirety with prejudice.

UNITED STATES BANKRUPTCY COURT

Dated: _____

_____
The Honorable Gregory F. Kishel
United States Chief Bankruptcy Judge