| | |
|---|---|
| In re   Petters Company, Inc., et al., | **Jointly Administered under** |
| | **Case No. 08-45257** |
| Debtors. | Court File Nos.: |
| (includes: | 08-45258 (GFK) |
| Petters Group Worldwide, LLC; | 08-45326 (GFK) |
| PC Funding, LLC; | 08-45327 (GFK) |
| Thousand Lakes, LLC; | 08-45328 (GFK) |
| SPF Funding, LLC; | 08-45329 (GFK) |
| PL Ltd., Inc.; | 08-45330 (GFK) |
| Edge One LLC; | 08-45331 (GFK) |
| MGC Finance, Inc.; | 08-45371 (GFK) |
| PAC Funding, LLC; | 08-45392 (GFK) |
| Palm Beach Finance Holdings, Inc.) | Chapter 11 Cases |

| | |
|---|---|
| Douglas A. Kelley, in his capacity as the court-appointed Chapter 11 Trustee of Debtors Petters Company, Inc. and PL Ltd., Inc., | |
| Plaintiff, | |
| vs. | ADV. NO. 10-04396 |
| Westford Special Situations Master Fund, L.P.; Westford Global Asset Management, Ltd.; Westford Special Situations Fund, Ltd.; Westford Special Situations Fund, L.P.; Westford Asset Management, LLC; Epsilon Global Master Fund, L.P.; Epsilon Global Active Value Fund, Ltd.; Epsilon Global Active Value Fund I-B Ltd.; Epsilon Global Active Value Fund, L.P.; Epsilon Global Master Fund II, L.P. a/k/a Epsilon Global Master Fund II, L.P., Sub 1; Epsilon Global Active Value Fund II, Ltd., f/k/a Westford Investment Fund Ltd.; Epsilon Global Active Value Fund II-B Ltd.; Epsilon Global Active Value Fund II-G Ltd.; Epsilon Global Active Value Fund II, L.P.; Epsilon Global Active Value Fund II-B, L.P.; Epsilon Global Active Value Fund II-G, L.P.; Epsilon Global Asset Management, Ltd.; Epsilon Investment Management, LLC; Epsilon Global Master Fund III – Structured Strategies, L.P.; Epsilon Global Active Value Fund III Ltd.; Capital Strategies Fund Ltd.; Stafford Towne, Ltd.; and Steve Goran Stevanovich, | **PLAINTIFF'S SUPPLEMENTAL MEMORANDUM IN OPPOSITION TO DEFENDANTS' MOTIONS TO DISMISS** |
| Defendants. | |

# I

## INTRODUCTION

Douglas A. Kelley, Trustee for Debtors Petters Company, Inc. ("PCI") and PL Ltd. (the "Trustee") hereby responds in opposition to the Motions to Dismiss filed by the Epsilon/Westford defendants and by defendant Epsilon Global Active Value Fund II, Ltd. (collectively, the "Defendants" or the "Epsilon Defendants"). In doing so, the Trustee adopts the Omnibus Memorandum of Law in Opposition to Defendants' Motions to Dismiss (the "Omnibus Memorandum") filed contemporaneously herewith, and respectfully supplements the Trustee's Omnibus Memorandum regarding three legal issues framed by the Epsilon Defendants and that factually and/or legally are unique to them, as follows:

1. Whether the Complaint fails to provide the degree of particularity required by *Ashcroft v. Iqbal* and Federal Rule of Civil Procedure 9(b);

    a. Whether the Complaint impermissibly fails to distinguish between PCI and PL, Ltd, leaving the Trustee without standing pursuant to Code Section 544(b);

    b. Whether the Complaint fails to distinguish as between the Epsilon/Westford Defendants with respect to specific transfers;

    c. Whether the Trustee's information and belief allegations render the Complaint defective pursuant to Rule 9(b);

2. Whether the Complaint must be dismissed for having failed to join PL Ltd. as a necessary party defendant; and

3. Whether the claimed status of Epsilon Global Active Value Fund II, Ltd. as a feeder fund to another defendant provides grounds for dismissal.[1]

---

[1] The Trustee, prior to argument on the pending Motions to Dismiss, will dismiss Count VIII (Section 506(d)—Lien Avoidance) as alleged in the Complaint filed in this matter without prejudice.

## II

## ARGUMENT

**A.** **The Complaint Is Adequately Specific To Meet The Particularity Standard Required by Federal Rule of Civil Procedure 9(b).**

The Court is well-familiar with the many motions to dismiss citing to Rule 9(b), *Iqbal* and *Twombly*, which the Trustee more exhaustively addresses in his Omnibus Memorandum in opposition, and that the Trustee adopts here. As cast by the Epsilon Defendants, the issue breaks down into three more unique questions that, with the Court's leave, the Trustee determined to brief separately, as follows:

**1.** **The Complaint is Not Defective for Purportedly Failing to Distinguish Between PCI and PL Ltd.**

Defendants claim that PCI and PL Ltd. must be distinguished for purposes of determining the value of transfers or creditors because there is a "crucial difference" between those two debtors. Motion to Dismiss, p. 33. This, the Epsilon Defendants claim, arises because PL Ltd. is their "Borrower." Motion to Dismiss, pp. 1 & 34.

This claim is premature at best in light of the many allegations in the Complaint that PL Ltd. is the alter ego of PCI, which the Epsilon Defendants simply ignore. In fact, as the Complaint makes explicitly clear, there was no "Borrower" involved with the transfers at issue here because the transfers themselves did not result in bona fide loans to anyone, but instead served as part of the daily funding requirements of the largest Ponzi scheme in Minnesota history. Complaint, ¶¶ 71, 83-84. There is no basis to distinguish between PCI and PL Ltd., and

therefore the Trustee's decision not to do so does not support a dismissal.  *See* Complaint, ¶¶ 91-111.[2]

The defendants ignore the Trustee's allegations that PL Ltd. is the alter ego of PCI and the numerous details alleged in the Complaint, as follows:

- PL Ltd. was wholly owned by PCI, which in turn was wholly owned by Thomas Petters.  Complaint ¶¶ 2, 4 & 92;

- PL Ltd. had no functioning board or managers.  Complaint, ¶ 99;

- PL Ltd. had no capital of its own.  Complaint, ¶ 108;

- PL Ltd. was a shell operated by PCI.  Complaint, ¶ 65;

- PL Ltd. existed not to sell goods in transactions financed by the defendants, but for the purpose of transferring money obtained from other putative investors in the Ponzi scheme.  Complaint, ¶¶ 84 & 93;

- Funds distributed through PL Ltd. in fact were provided by PCI, and not by purchasers of goods.  Complaint, ¶¶ 76-82;

- PL Ltd. existed solely as a money funnel for the Transfers at issue in this litigation.  Complaint, ¶¶ 94 & 98;

- PCI and PL Ltd. are the same entity.  Complaint, ¶¶ 91-111.

The defendants contend that the Trustee is required to specify whether it was PCI or PL Ltd. that failed to receive reasonably equivalent value with respect to the fraudulent transfers,

---

[2] The Trustee does not read the Epsilon Defendants' Motions to Dismiss to attack the legal viability of the reverse-pierce/alter ego doctrine pled in the Complaint as to PCI and PL Ltd., and therefore does not separately brief the Trustee's position regarding that legal issue in this supplemental memorandum.  As support for his reverse-pierce/alter ego allegations, the Trustee primarily relies upon the authorities of *Schuster v. Schuster (In re Schuster),* 132 B.R. 604, 607-09 (Bankr. D. Minn. 1991) (reverse-pierce of debtor's family corporation under Minnesota law to subject company's assets to creditor claims) and *ASARCO LLC v. Americas Mining Corp.,* 396 B.R. 278, 316-328 (S.D. Tex. 2008) (reverse-pierce of parent corporation pursuant to Delaware law allowed to vest Trustee with standing to pursue avoidance claims for relief).  *See also Plaintiff's Supplemental Memorandum in Opposition to Opportunity Finance and Its Related Defendants and West LB's Motions to Dismiss Amended Complaint,* Adv. No. 10-04301 at pp. 12-18, filed contemporaneously herewith.

and that the Trustee is required to allege that "each debtor intended to defraud one of its own creditors." Motion to Dismiss, pp. 33-34. With the allegations of the Complaint presumed to be true and correct, including its detailed recitation of facts leading to the reverse-pierce and alter ego conclusion regarding PCI and PL Ltd., the predicate for the defendants' position regarding specifying identifying which debtor is placed at issue fails.

The defendants' position that the Trustee also lacks standing likewise ignores the Complaint's reverse-pierce/alter ego allegations and the very legal standard arising pursuant to Rule 9(b) that the defendants purport to apply to the adequacy of the pleading. The Complaint expressly alleges with respect to each Section 544(b) claim that, "At all times material hereto, there was and is at least one or more creditors who held and who hold unsecured claims against the Debtors that were and are allowable under Bankruptcy Code § 502 or that were and are not allowable only under Bankruptcy Code § 502(e)." *See, e.g.,* Complaint ¶¶ 141, 147 & 153. Nothing more is required to survive the defendants' Motions to Dismiss. *See Picard v. Estate of Stanley Chais (In re Bernard L. Madoff Investment Securities LLC)*, 2010 WL 5841402 (Bankr. S.D.N.Y. February 24, 2011) at *17; *Musicland Holding Corp. v. Best Buy Co.*, *(In re Musicland Holding Corp.),* 398 B.R. 761, 780 (Bankr. S.D.N.Y. 2008). *See also* Omnibus Memorandum at Section III.

Defendants contend that the Trustee's constructive fraud allegations regarding debtors PCI and PL Ltd. are deficient because its is unclear which entity failed to receive reasonably equivalent value in exchange for the fraudulent transfers, and that the defendants are incapable of defending against the actual fraud claims because, "PCI and the Borrower [PL Ltd] are differently situated." Motion to Dismiss, pp. 33 & 34. They ignore the fact that all the transfers passed through PCI first. Complaint, ¶¶ 76-82 & 84. The defendants' contention simply

overlooks the alter ego allegations in the Complaint, which must be presumed to be true. Instead, the defendants ask the Court to replace the Complaint with their own self-serving recitations of fact-based assertions.

Defendants argue that the Trustee cannot have standing to pursue his section 544(b) claims because he must "demonstrate the existence of a real creditor" and "a creditor of PCI is not thereby a creditor of the Borrower and vice versa." Motion to Dismiss, p. 34. This likewise conveniently disregards the Trustee's reverse-pierce and alter ego allegations, his numerous references to the Debtors' creditors in the Complaint, and a record replete with names of creditors of the Debtors, including the numerous proofs of claim recorded in the Claims Register for both PCI and PL Ltd., Case Nos. 08-45257 and 08-45329 respectively, as well as the list of unsecured creditors contained in Schedule F filed in the PCI bankruptcy case as Docket No. 94.

Contrary to the defendants' claim that a single paragraph in the Complaint is not sufficient to allege at least one creditor (Motion to Dismiss, p. 34), the Trustee provides a highly detailed accusation that there was no difference between PCI and PL Ltd., and that the creditors of PCI therefore provide the Trustee with all the standing he needs to pursue his section 544(b) claims. Public record shows there are numerous proofs of claim filed in the PL Ltd bankruptcy case. At this early stage in the proceedings, each of the asserted claims in both the PCI and PL Ltd. cases is presumed to be *prima facie* valid, unless expressly disallowed by this Court. *Travelers Cas. & Surety Co. of Am. v. Pacific Gas & Elec. Co.,* 549 U.S. 443, 453 (2007). For purposes of assessing the Complaint's section 544 claims for relief, which is the only Code section to which the unsecured creditor element is required, the Motion to Dismiss should be denied.

Defendants also make the unsupported allegation that the Trustee must identify the creditors of PCI and PL Ltd., based on 11 U.S.C. § 544(b) and Minn. Stat. § 513.45(a) which require the existence of a creditor. Motion to Dismiss, p. 34. Notably, Defendants fail to cite to a single case, or to any verbiage in either statute, which requires the Trustee to identify a specific creditor. In fact, Defendants admit that the Trustee must allege only the *existence* of a creditor under 11 U.S.C. 544(b) and Minn. Stat. § 513.45(a). Motion to Dismiss, p. 34 The Trustee has done so. *See* Complaint, ¶¶ 141, 147 & 153. ("There was and is at least one or more creditors who held and who hold unsecured claims. . . .").[3]

The Complaint specifically identifies transfers, dates and values, as well as the debtors' insolvency. The Trustee provides an illustration of a specific transaction, valued at $12,000,000 to the defendants, beginning April 30, 2001 (Complaint, ¶ 112) and another valued at $20,000,000, beginning May 21, 2003. Complaint, ¶ 67. In addition, the Complaint details the amount of each note to specific defendants, as well as the value to those defendants, resulting in an incredible 34.2 percent annualized rate of return. Complaint, ¶¶ 67-69. The Trustee also identifies the details of the fraudulent transfers as a whole–344 transactions resulting in false profits to defendants of $323,343,275 between 2001 and the Petition Date. Complaint, ¶¶ 119 & 121. The Complaint expressly alleges that the debtors were not solvent, and that they engaged in a scheme that shifted funds of newer investors to handsomely pay an exorbitant rate of return to the Epsilon Defendants. Complaint, ¶¶ 64, 70-71, 96-98, 108. This specificity is more than Rule 9(b) requires, and adequately permits the defendants to respond to the Complaint on the merits.

---

[3] This issue is addressed more fully in the Trustee's Omnibus Memorandum at Section III.

## 2. The Trustee Adequately Distinguishes Among the Defendants and the Fraudulent Transfers.

Defendants contend that the Trustee has not properly distinguished between the Epsilon Defendants or the transfers at issue. Motion to Dismiss, p. 35. The objective of Rule 9(b) is to give defendants sufficient notice to enable a response and to prepare a defense to allegations of fraud. *Commercial Prop. Inv., Inc. v. Quality Inns Intern., Inc.*, 61 F.3d 639, 644 (8th Cir. 1995)(identifying the circumstances to meet Rule 9(b) requirements are time, place, contents, identity of the defendants and what was given up).

The defendants' position that the Trustee must distinguish as between them, or with respect to specific fraudulent transfers, is a red herring. As argued more fully below, the Trustee may commence an action and recover against either initial transferees, or subsequent transferees, or both initial and subsequent transferees. *See Wells Fargo Home Mortgage, Inc. v. Lindquist*, 592 F.3d 838, 845 (8th Cir. 2010) ("the trustee may recover from any immediate or mediate transferee of such transferee. . . . [B]y providing that the trustee can seek recovery from the initial transferee or an immediate transferee of the initial transferee, § 550(a) allows the trustee to pick his named defendant"), citing *Leonard v. First Commercial Mortg. Co., (In re Circuit Alliance, Inc.),* 228 B.R. 225, 236 (Bankr. D. Minn. 1998). Without any obligation to sue only initial transferees or subsequent transferees, it is difficult to appreciate how Rule 9(b) possibly could be implicated by suing all of the defendants in the alternative as both. *See* Complaint, ¶¶ 49-56. The funds were transferred to the Defendants, and how the money was allocated as between the Defendants will be learned through discovery.

The Trustee provides ample detail by specifying not only the role that every single defendant played in the fraudulent scheme, but also identifying every defendant by name and the

interrelationships among all of the defendants in perpetuating the fraudulent scheme. Complaint ¶¶ 5-35. Yet, the Epsilon/Westford defendants seemingly overlook the following:

- The Trustee describes the structure defendants used in the scheme, known as a master-feeder fund structure. Complaint, ¶ 8 and Ex. A;

- The Trustee describes each defendant's specific role in the master-feeder fund structure, identifying, for example, which defendants provided funds and which defendants enabled other defendants to provide funds and collectively perpetuate the fraudulent transfers. Complaint ¶¶ 5-35;

- The Trustee identifies defendants who served as the master funds (Complaint ¶¶ 12, 18, 21, ) and the feeder funds. Complaint ¶¶ 14-15, 19;

- The Complaint specifies which defendants created, organized and orchestrated the activities of the other defendants in perpetuating the Petters Ponzi scheme. Complaint, ¶ 11, 12, 13, 16, 18, 20, 21, 23, 24, 25, 28, 29, 32, 33;

- The Complaint specifies which defendants served as the source of funds for the Petters Ponzi scheme. Complaint, ¶ 12, 14, 15, 18, 19, 20, 21, 22, 23, 32;

- The Complaint specifies which entities received management and "performance" fees based on the performance of investments in the Petters Ponzi scheme. Complaint, ¶ 13, 24;

- The Complaint identifies the parties to the fraudulent transfers, the dates of the transfers and the amounts of the fraudulent transfers. Complaint, Exhibits J and K;

- The Complaint particularizes what was lost—$323,343,275 in false profits (Complaint, ¶ 115) and $2,794,923,275.07 in net transfers. Complaint, ¶ 119.

Defendants rely on *Moua v. Jani-King of Minnesota, Inc.,* 613 F.Supp.2d 1103 (D. Minn. 2009) for the proposition that each allegation must be tied to each defendant. Defendants' reliance is misplaced. The standard set forth in *Moua* does not require "that the exact particulars of every instance of fraud be alleged, so long as the complaint includes enough detail to inform the defendant of the 'core' factual basis for the fraud claim." *Moua*, 613 F.Supp.2d at 1110. *See Commercial Property*, 61 F.3d at 645-46 (an allegation of fraud does not fail for lacking some

specifics that can be later developed at trial, as long as a defendant is apprised of the "core" of the claims against defendants and the factual basis for those claims.).

*Moua* held that the complaint failed to meet the specificity of Rule 9(b) "because the allegations cluster all the defendants together without the required specificity to discern *the respective roles* of the individual defendants in the alleged fraud scheme. *Moua*, 613 F.Supp.2d at 1111 (emphasis added). Unlike the parties in *Moua*, the Trustee was not a party to the fraudulent Ponzi scheme alleged in this case, and does not have the same first-hand knowledge the defendants possess. The Trustee has not had the benefit of discovery. Further, the requirement in *Moua* that the plaintiff identify which defendant was responsible for a particular representation was specific to a misrepresentation fraud claim, the elements of which require a specific statement at a specific time by a specific person to establish a misrepresentation. *See Apace Commc'ns, Ltd. v. Burke*, 522 F.Supp.2d 509, 517 (W.D.N.Y. 2007)(claims for breach of fiduciary duty based on falsehoods and material representations). That is not this case. In any event, the Trustee painstakingly specifies the roles of each defendant, such that even if *Moua* were not so readily distinguishable, its standard has been met and exceeded here.

Defendants' arguments based on cases involving claims with wholly different elements and that are far less complex than the ongoing international money-funneling scheme at issue in this case, should be rejected. Based on the complexity and longevity of the fraud pleaded in the Complaint, and the elements of a fraudulent transfer claim, under the pleading standard of Rule 9(b) in conjunction with Rule 8 generally, the Trustee should not be held to a standard that requires him to tie every fraudulent transfer to a specific defendant, in particular because the transferees' information in this regard exceeds the Trustee's. *Hassett v. Zimmerman (In re OPM Leasing Servs., Inc.),* 32 B.R. 199, 203 (Bankr. S.D.N.Y. 1983)("greater liberality should be

afforded in the pleading of fraud in a bankruptcy case. As mentioned earlier, this liberality is required because it is often the Trustee, a third party outsider to the fraudulent transaction, that must plead fraud on secondhand knowledge for the benefit of the estate and all of its creditors"). Defendants' motion on this point should be denied.

### 3. The Complaint Passes Rule 9(b)'s Pleading Standards Notwithstanding The Trustee's Allegations Based upon Information and Belief.

The Epsilon Defendants complain that the Complaint fails to comply with Rule 9(b)'s particularity requirement because certain of its allegations are based upon information and belief. Motion to Dismiss, p. 37. Even accepting that certain allegations are based upon information and belief, the Complaint satisfies Rule 9(b).

It is inescapable that many paragraphs of the Complaint that the defendants claim are defective in this regard comprise allegations regarding the structure and business relationships that exist as between the defendants. *See, e.g.,* Complaint, ¶¶ 13-16, 19, 20, 22-24, 27, 28, 30, 31, & 33. The Epsilon Defendants know the nature and substance of their relationships with one another better than anyone else, and certainly are placed on notice of the issues and claims alleged by the Trustee.

To maintain a claim of fraud, a party typically must identify the "who, what, where, when and how" of the fraud. *United States ex rel. Costner v. United States.,* 317 F.3d 883, 888 (8th Cir. 2003). Rule 9(b) also must be read in harmony with the principles of simplicity and flexibility established in Rule 8, as interpreted by *Twombly*, 550 U.S. 544 (2007), and *Iqbal*, 129 S. Ct. 1937 (2009). Where the plaintiff has not been a party to the who, what, where, when and how of the fraud, courts have declined to dismiss complaints, recognizing that "particularity in pleading may become impracticable." *Abels v. Farmers Commodities Corp.*, 259 F.3d 910, 921

(8th Cir. 2001)(declining to dismiss a fraud complaint by a third-party plaintiff where plaintiff did not have the benefit of discovery)(citations omitted).

The Eighth Circuit recognizes a relaxed pleading standard for Rule 9(b) when a fraud claim arises in a bankruptcy proceeding, particularly when the plaintiff, as in this case, is a third-party trustee pleading fraud for the benefit of the estate.  *In re Brown*, 444 F.2d, 49, 50 (8th Cir. 1971); *see also Air Cargo, Inc. v. i2 Technologies, Inc. and Mercer Mgt Consulting, Inc (In re Air Cargo),* 401 B.R. 178, 192 n.8 (D. Md. 2008); *Miller v. Dutil (In re Total Containment),* 335 B.R. 589, 600-01 (Bankr. E.D. Pa. 2005); *Official Comm. of Asbestos Claimants of G-I Holding, Inc. v. Heyman*, 277 B.R. 20, 36 (S.D.N.Y. 2002); *Davidson v. Twin City Bank*, (*In re Hollis & Co.),* 83 B.R. 588, 590 (Bankr. E.D. Ark. 1988) ("The court is also mindful of the more liberal approach to fraud pleading in bankruptcy cases especially in those instances where a trustee is bringing the action.").  The rationale for this relaxed standard is based on the trustee's lack of knowledge concerning acts of fraud that the debtor committed.  *In re Hollis*, 83 B.R. at 590.

The defendants' grousing about the Trustee pleading on information and belief "on over 40 separate occasions in his 48-page Complaint" proves too much when one notes that the Complaint itself includes 130 other paragraphs that apparently do not similarly offend them and that many, if not most of the Trustee's "information and belief" pleading concerns the identities of the defendants, who operates them, and the structure of the commercial and business relationships between them.  Certainly, the defendants are more than capable of knowing the relationships between themselves with greater specificity than the Trustee.

Whether Rule 9(b) or a relaxed version of Rule 9(b) applies, the Trustee has sufficiently pleaded its claims of actual and constructive fraud.  The Trustee was not a party to the fraudulent scheme, no discovery directed to the allegations in the Complaint has been answered and many

of the facts which defendants claim have not been pled remain within the defendants' private knowledge. The Complaint surpasses any heightened pleading standard to be applied by the Court and clears the Rule 9(b) hurdle with ease.

**B.** **PL Ltd. Is Not A Necessary Party Defendant**

Defendants seek dismissal upon the grounds that the Trustee has not named PL Ltd. as a necessary party defendant under Rule 19. Defendants expressly assert that PL Ltd. is an initial transferee and that transfers to PL Ltd. therefore first must be avoided before the Trustee may bring claims against subsequent transferees. Motion to Dismiss, p. 18.

Defendants' claim fails for three reasons. First, the Trustee is not required to avoid transfers to an initial transferee pursuant to Section 550(a) to recover against subsequent transferees under 11 U.S.C. § 550(b), and thus the defendants' Rule 19 position fails as a matter of law. Second, taking the allegations in the Complaint as true, PL Ltd. is not an initial transferee. Third, the defendants' position does not meet even the basic elements of Rule 19 to establish a necessary party.

**1.** **Avoiding a Transfer to an Initial Transferee is not a Prerequisite to Recovering from an Immediate or a Mediate Transferee.**

The defendants underlying legal premise—that the Trustee first must recover against an initial transferee before seeking recovery against subsequent transferees—is incorrect as a matter of law.

The Bankruptcy Code separates defining transfers subject to avoidance and identifying who might be required to repay them. *See* S. Rep. No. 95-989 at 90 (1978) ("Section 550 … enunciates the separation between the concepts of avoiding a transfer and recovering from the transferee"). In the same manner, the Bankruptcy Code ascribes different characteristics to each

concept. "[A]voidability is an attribute of the transfer rather than that of the creditor." *Kendall v. Sorani (In re Richmond Produce),* 195 B.R. 455, 463 (Bankr. N.D. Cal. 1996).

The test for determining whether a transfer is avoidable arises in several sections of the Bankruptcy Code, but Section 550 is not among them. Section 550 addresses the liability of those that are the recipients of avoidable transfers, but they makes no effort to determine what comprises an avoidable transfer and what does not.

Section 550(a) provides:

> (a)   Except as otherwise provided in this section, to the extent that a transfer is avoided under section 544, 545, 547, 548, 549, 553(b), or 724(a) of this title, the trustee may recover, for the benefit of the estate, the property transferred, or, if the court so orders, the value of such property, from—
>
> (1)   the initial transferee of such transfer or the entity for whose benefit such transfer was made; or
>
> (2)   any immediate or mediate transferee of such initial transferee.

The defendants' contention is that the Trustee must actually avoid a transfer to an initial transferee before maintaining an action against an immediate or mediate transferee. Motion to Dismiss, p. 39. The Trustee's position, consonant with the greater weight of legal authority, is that the phrase "to the extent the transfer is avoided" within Section 550(a) requires only that the transfer be avoidable, not that it already must have been avoided.

In support of their position, defendants cite *Weinman v. Simons (In re Slack-Horner Foundries Co.),* 971 F.2d 577 (10th Cir. 1992). *See Crafts Plus+, Inc. v. Foothill Capital Corp. (In re Crafts Plus+, Inc.),* 220 B.R. 331, 335 (Bankr. W.D. Tex. 1998) ("In *Slack–Horner*, the problem is not necessarily that the trustee failed to avoid the transfer *as to the debtor's creditor* (the county tax authority), but that the trustee failed to avoid the transfer of property *of the debtor*")(emphasis in original). The 2-1 opinion in *Slack-Horner* and its reasoning has been

14

widely criticized, and the few cases that adopt its rationale should not be followed. *See IBT Int'l,*
*Inc. v. Northern (In re Int'l Admin. Servs., Inc.),* 408 F.3d 689, 704 (11th Cir. 2005)("*Slack-*
*Horner,* "produces a harsh and inflexible result that runs counterintuitive to the nature of
avoidance actions"); *In re Nat'l Audit Def. Network*, 332 B.R. 896, 916 (Bankr. D. Nev.
2005)(rejecting *Slack-Horner)*; *Riederer v. Logan Wildlife Corp. (In re Brooke Corp.)*, 443 B.R.
847, 853-54 (Bankr. D. Kan. 2010) (noting *Slack-Horner's* "harsh and inflexible result", that it
"has not been widely followed" and that "the Trustee's argument that *Slack-Horner* was wrongly
decided is attractive"), citing *In re Int'l Admin. Servs.*, 408 F.3d at 703; 5 *Collier on Bankruptcy*
¶¶ 550.02[1] (A. Resnick and H. Sommer, eds., 16th ed. 2010).

> *Collier* recommends that:

> > Recovery "to the extent that" a transfer is avoided has been interpreted to
> > require a successful avoidance action against the initial transferee before
> > recovery may be had from a subsequent transferee. The better view,
> > adopted by the majority of courts, is that a transfer may be found
> > avoidable and a recovery may be had from a subsequent transferee without
> > suing the initial transferee.

5 *Collier on Bankruptcy* ¶550.02[1].

This Court should not adopt *Slack-Horner* and instead conclude that the phrase "to the
extent that a transfer is avoided" simply "recognizes that transfers sometimes may be avoided
only in part, and that only the avoided portion of a transfer is recoverable." *In re Richmond*
*Produce,* 195 B.R. at 463 (holding that because the bankruptcy court correctly found that a party
was an immediate transferee of fraudulent and avoidable funds, that party may be held liable for
the transfer, notwithstanding the absence of a suit or recovery against the initial transferee).

Construing Section 550(a)'s "to the extent that a transfer is avoided" verbiage to mean
that the transfer only must be "avoidable" and not that the Trustee must already have avoided the
transfer to sue a subsequent transferee, brings Section 550(a), (c) and (d) into harmony with

Sections 544 (state law fraud claims), 547 (preferences), 548(a) ("The trustee may avoid any transfer. . . of an interest of the debtor in property") and 548(c) (specifying defense against avoidance actions).  While Sections 544, 547 and 548 identify the types of transfers subject to avoidance by the Trustee, Section 550(a) identifies the transferees responsible for repayment to the estate to be initial, mediate or intermediate transferees and Section 550(b) specifies a defense against recovery.  This construction of Sections 544 547, 548 and 550 recognizes that:

> The effect of the qualifying phrase "to the extent that a transfer is avoided" is "that liability is not imposed on a transferee to the extent that a transferee is protected under a provision such as section 548(c)." 124 Cong Rec. H11097 (daily ed. Sept. 28, 1978); S17414 (daily ed. Oct. 6, 1978); (remarks of Rep. Edwards and Sen. DeConcini). This suggests that "avoided" in § 550 is not in the past tense, but instead the present perfect. That is, § 550 does not require that the transfer be avoided in a temporally antecedent and separate procedure, but simply recognizes the limitations placed on recovery by the safe harbors for certain transfers found in provisions such as § 548(c).

*In re Nat'l Audit Def. Network*, 332 B.R. 896, 921 (Bankr. D. Nev. 2005) citing *Crafts Plus+*, 220 B.R. at 335.  *See* S. Rep. No. 95-989, Pub. L. 95-598 at 90 (1978) (reprinted in *Collier*, Legislative History of the Bankruptcy Reform Act of 1978, App. Pt. (4)(e)(i) at 4-2039 (15th ed. 2009) ("Section 550 prescribes the liability of a transferee of an avoided transfer, and enunciates the separation between the concepts of avoiding a transfer and recovering it from the transferee.").

The "better view," as *Collier* characterizes it, flatly rejects the defendant's argument, which would conflate the provisions of the Code defining what is avoidable and the section identifying who may be sued.  *In re Int'l Admin. Servs.*, 408 F.3d at 706 ("An interpretation of Section 550 mandating actual avoidance of initial transfers, conflates Chapter [sic] 11's avoidance and recovery sections.") (internal citations omitted).  Section 550, the cases construing the statute and its legislative history in both the Senate and the House make clear that the phrase

"to the extent that a transfer is avoided" is a quantitative limitation on recovery by the Trustee and not a temporal mandate requiring a particular sequence of events. *See* 124 Cong. Rec. H11089 (daily ed. Sept. 28, 1978) (statement of Rep. Edwards) ("Section 550(a)(1) of the House amendment has been modified in order to permit recovery from an entity for whose benefit an avoided transfer is made in addition to a recovery from the initial transferee of the transfer."). Thus, avoidability as a characteristic of a "transfer", and as specified within Sections 544, 547 and 548, may be sought against any party that Section 550 authorizes the Trustee to sue. As provided by the Code, the Code permits the Trustee to seek relief now against initial, immediate, or mediate transferees, all of them, any combination of them or none of them, at his option.

The Eighth Circuit has followed the majority position and has adopted *Collier's* "better view." In *Wells Fargo Home Mortg., Inc. v. Lindquist*, 592 F.3d 838 (8th Cir. 2010), the court found that a Trustee, when seeking to recover an avoidable transfer (a preference in the *Wells Fargo* case), "'may recover, for the benefit of the estate the property transferred, or its value, from the initial transferee of such transfer or the entity for whose benefit such transfer was made.'" *Id.* at 845, quoting 11 U.S.C. § 550(a)(1). "Alternatively, the trustee may recover from 'any immediate or mediate transferee of such initial transferee.'" *Wells Fargo*, 592 F.3d at 845, quoting 11 U.S.C. § 550(a)(2). By providing that the trustee can seek recovery from the initial transferee or an immediate transferee of the initial transferee, "§ 550(a) allows the trustee to pick his named defendant." *Id.* at 845, citing *Leonard v. First Commercial Mortg. Co. (In re Circuit Alliance, Inc.),* 228 B.R. 225, 236 (Bankr. D. Minn. 1998) (emphasis added).

Because the Epsilon Defendants' premise that initial transferees must first be sued to determine liability of subsequent transferees is incorrect, their Rule 19 position that there is an initial transferee that must be joined to the Complaint fails as a matter of law. In the

circumstance of a trustee seeking the return of the property transferred by a debtor to an initial transferee who then transfers it to an immediate transferee, the initial transferee would not be a required party pursuant to Rule 19 to "afford complete recovery" to the trustee. See *Official Committee of Unsecured Creditors v. JP Morgan Chase, et al. (In re M. Fabrikant & Sons, Inc.)*, 394 B.R. 721, 744 (Bankr. S.D.N.Y. 2008) ("A Rule 19(a)(1) inquiry is limited to whether the district court can grant complete relief to the persons already parties to the action. The effect a decision may have on the absent party is not material."). Section 550(a) and *Wells Fargo* confirm this common sense result regarding joining parties. The Trustee therefore holds the discretion to pick his named defendant, or to sue anyone that received the benefit of a fraudulent transfer, or all of them in a single complaint.

### 2. PL Ltd. Is Not an Initial Transferee.

Taken as true, the Amended Complaint conclusively establishes that PL Ltd. is not an initial transferee. Thus, even if the defendants were correct to assert that the Trustee is first required to avoid initial transfers, their conclusion that the Trustee first would need to sue PL Ltd. would not be correct.

The Trustee properly alleges that defendants, not PL Ltd., are initial transferees of the avoidable transfers identified in the Complaint. Complaint, ¶¶ 49-56. These allegations are sufficient to state a claim for relief.

The Trustee also has alleged that PL Ltd. is the alter ego of PCI and that the two of them comprised a unified corporate unit formed and utilized to perpetrate a fraud. Complaint at ¶¶ 91-111. As a result the Trustee is bringing this Complaint on behalf of PCI, through its alter ego PL Ltd., against the defendants definitively determined for purposes of the Motion to Dismiss to be initial, immediate, or mediate transferees. Complaint at ¶¶ 49-56. PL Ltd. therefore is not an

initial transferee, even assuming defendants were correct to assert that Section 550 requires the Trustee to sue the initial transferees first.

### 3. Federal Rule of Civil Procedure 19 Does Not Require joining PL Ltd. as a Defendant.

Federal Rule 19 requires joining a party only if the Court cannot provide complete relief among existing parties, or the party claims an interest relating to the subject of the action and disposing of the action without her may impair or impede her ability to protect the interest or leave an existing party subject to a substantial risk of incurring multiple or inconsistent obligations. Fed. R. Civ. P. 19(a). A party is not necessary to an action where it does not have an interest in the proceeding, will not be affected by any judgment and is not necessary to fully dispose of the case. *Scenic Holding, LLC v. New Board Of Trustees of Tabernacle Missionary Baptist Church,* 506 F.3d 656, 669 (8th Cir. 2007).

In *Menninger v. Attiyah (In re Midwest Mobile Techs., Inc.)*, 304 B.R. 787, 789 (Bankr. S.D. Ohio 2003), a bankruptcy preference action under Sections 547(b) and 550(a), a trustee attempting to recover a transfer for the benefit of a creditor brought an action against the guarantors of a debt but not against the bank that received the direct transfer. The guarantors sought dismissal for failure to join the bank as a necessary party. The court denied the motion to dismiss under Rule 19, recognizing that Section 550 establishes joint liability, comparable to joint and several liability of joint tortfeasors, and that joint tortfeasors are permissive parties in an action against another party with similar liability. *Id.* at 789, citing *Lynch v. Johns-Manville Sales Corp.,* 710 F.2d 1194, 1198-99 (6th Cir. 1983).

As the alter ego of PCI, any interest of PL Ltd. is protected through its participation in this case as a plaintiff with PCI seeking a single measure of recovery. The Trustee's decision to bring this action without naming PL Ltd. as a defendant does not place the parties now before the

Court at risk of incurring multiple or inconsistent obligations. Defendants therefore have failed to establish the fundamental elements to demonstrate that PL Ltd. is a necessary party-defendant.

**C.** **The Motion Filed by Epsilon Global Active Value Fund II, Ltd. Should Be Denied.**

In its Motion to Dismiss, Epsilon Global Active Value Fund II, Ltd. joins in the Motion to Dismiss filed by the remaining Epsilon and Westford defendants, and by Steve Goran Stevanovich. The Trustee's Omnibus brief and this supplemental memorandum apply to Epsilon Global Active Value Fund II's Motion to Dismiss as well.

Epsilon Global Active Value Fund II, Ltd additionally contends that it "never invested in either PCI or PL" and that its liability is derivative of a master fund in which it invested— Epsilon Global Active Value Master Fund II, L.P.[4] According to this self-styled "feeder fund", the Master Fund's liability is, "a necessary prerequisite to any potential liability for Epsilon II Feeder Fund." Motion to Dismiss, pp. 3-4. For two reasons, this proposed rule of law is incorrect.

First, the gravamen of this action concerns the liability of those who received fraudulent transfers. Whether Epsilon Global Active Value Fund II invested directly with PL Ltd. or PCI is of no consequence to its liability given its status as a transferee of stolen money.

Second, to prove liability and obtain a judgment against Epsilon Global Active Value Fund II, it is not necessary that the Trustee prevail against any other defendant in this case. As noted above, the Trustee may commence an action and recover against either initial transferees,

---

[4] Epsilon Global Active Value Fund II also states that it "has never conducted any business in Minnesota." Motion to Dismiss, p. 3. To the extent this defendant argues a lack of personal jurisdiction, the Trustee hereby incorporates Plaintiff's Supplemental Memorandum of Law in Opposition to Defendants' Motions to Dismiss filed contemporaneously herewith in Adv. No. 10-04354.

or subsequent transferees, or both initial and subsequent transferees. *See Wells Fargo,* 592 F.3d at 845 ("§ 550(a) allows the trustee to pick his named defendant.").

## III

## CONCLUSION

Based upon the foregoing, and the Trustee's Omnibus Memorandum of Law in Opposition to Motions to Dismiss, Defendants' Motions to Dismiss should be denied.

DATED: April 22, 2011

**LINDQUIST & VENNUM P.L.L.P.**

By:  _s/ Mark D. Larsen_____
Daryle L. Uphoff (0111831)
Mark D. Larsen (318498)
James A. Lodoen (173605)
DeAnne M. Hilgers (301784)
Kirstin D. Kanski (0346676)
Adam C. Ballinger (0389058)
4200 IDS Center
80 South Eighth Street
Minneapolis, MN 55402-2274
(612) 371-3211
(612) 371-3207 (facsimile)
www.lindquist.com

ATTORNEYS FOR
DOUGLAS A. KELLEY
CHAPTER 11 TRUSTEE OF
PETTERS COMPANY, INC., MGC
FINANCE AND PL LTD., LLC

## UNITED STATES BANKRUPTCY COURT
## DISTRICT OF MINNESOTA

| | |
|---|---|
| In re   Petters Company, Inc., et al., | **Jointly Administered under** |
| | **Case No. 08-45257** |
| Debtors. | Court File Nos.: |
| (includes: | 08-45258 (GFK) |
| Petters Group Worldwide, LLC; | 08-45326 (GFK) |
| PC Funding, LLC; | 08-45327 (GFK) |
| Thousand Lakes, LLC; | 08-45328 (GFK) |
| SPF Funding, LLC; | 08-45329 (GFK) |
| PL Ltd., Inc.; | 08-45330 (GFK) |
| Edge One LLC; | 08-45331 (GFK) |
| MGC Finance, Inc.; | 08-45371 (GFK) |
| PAC Funding, LLC; | 08-45392 (GFK) |
| Palm Beach Finance Holdings, Inc.) | Chapter 11 Cases |

Douglas A. Kelley, in his capacity as the
court-appointed Chapter 11 Trustee of
Debtors Petters Company, Inc. and
PL Ltd., Inc.,

                         Plaintiff,

vs.                                                          ADV. NO. 10-04396

Westford Special Situations Master Fund, L.P.;
Westford Global Asset Management, Ltd.; Westford
Special Situations Fund, Ltd.; Westford Special
Situations Fund, L.P.; Westford Asset Management,          **CERTIFICATE OF SERVICE**
LLC; Epsilon Global Master Fund, L.P.; Epsilon
Global Active Value Fund, Ltd.; Epsilon Global
Active Value Fund I-B Ltd.; Epsilon Global Active
Value Fund, L.P.; Epsilon Global Master Fund II,
L.P. a/k/a Epsilon Global Master Fund II, L.P., Sub 1;
Epsilon Global Active Value Fund II, Ltd., f/k/a
Westford Investment Fund Ltd.; Epsilon Global
Active Value Fund II-B Ltd.; Epsilon Global Active
Value Fund II-G Ltd.; Epsilon Global Active Value
Fund II, L.P.; Epsilon Global Active Value Fund II-
B, L.P.; Epsilon Global Active Value Fund II-G, L.P.;
Epsilon Global Asset Management, Ltd.; Epsilon
Investment Management, LLC; Epsilon Global
Master Fund III – Structured Strategies, L.P.; Epsilon
Global Active Value Fund III Ltd.; Capital Strategies
Fund Ltd.; Stafford Towne, Ltd.; and Steve Goran
Stevanovich,

Donna J. Daun, of the City of Mounds View, County of Ramsey, State of Minnesota, states that on April 22, 2011 she served the following document(s):

1. Plaintiff's Supplemental Memorandum in Opposition to Defendants' Motions to Dismiss

| | |
|---|---|
| Richard D. Anderson on behalf of Defendant Epsilon Global Active Value Fund, II, Ltd. randerson@briggs.com | Adam C. Ballinger on behalf of Plaintiff Douglas A. Kelley, Trustee aballinger@lindquist.com ddavis@lindquist.com |
| Theodore T. Chung on behalf of Defendant Westford Special Situations Master Fund, L.P. Westford Asset Management, LLC Epsilon Global Active Value Fund, L.P. Epsilon Global Active Value Fund II, L.P. Epsilon Global Active Value Fund II-B, L.P. Epsilon Investment Management, LLC Steve Goran Stevanovich ttchung@jonesday.com | Jack J. Cullen on behalf of Defendant Epsilon Global Active Value Fund, II, Ltd. Epsilon Global Active Value Fund II, Ltd. fka Westford Investment Fund Ltd. jc@foster.com RistJ@foster.com |
| Tara A. Fumerton on behalf of Defendant Westford Special Situations Master Fund, L.P. Westford Asset Management, LLC Epsilon Global Active Value Fund, L.P. Epsilon Global Active Value Fund II, L.P. Epsilon Global Active Value Fund II-B, L.P. Epsilon Investment Management, LLC Steve Goran Stevanovich tfumerton@jonesday.com daralevinson@jonesday.com | Kirstin Kanski on behalf of Plaintiff Douglas A. Kelley, Trustee kkanski@lindquist.com cfunk@lindquist.com |
| Tobias S. Keller on behalf of Defendant Westford Special Situations Master Fund, L.P. Westford Asset Management, LLC Epsilon Global Active Value Fund, L.P. Epsilon Global Active Value Fund II, L.P. Epsilon Global Active Value Fund II-B, L.P. Epsilon Investment Management, LLC Steve Goran Stevanovich tkeller@jonesday.com | David C. Kiernan on behalf of Defendant Westford Special Situations Fund L.P. Westford Asset Management, LLC Epsilon Global Active Value Fund, L.P. Epsilon Global Active Value Fund II, L.P. Epsilon Global Active Value Fund II-B, L.P. Epsilon Investment Management, LLC Steve Goran Stevanovich dkiernan@jonesday.com |
| Robert T. Kugler on behalf of Defendant Westford Global Asset Management, Ltd. Westford Special Situation Fund L.P. Westford Asset Management, LLC Epsilon Global Active Value Fund, Ltd. Epsilon Global Active Value Fund I-B, Ltd. Epsilon Global Active Value Fund, L.P. Epsilon Global Active Value Fund II-B, Ltd. Epsilon Global Active Value Fund II, L.P. Epsilon Global Active Value Fund II-B, L.P. Epsilon Global Asset Management, Ltd. Epsilon Investment Management, LLC Steve Goran Stevanovich Stafford Towne, Ltd. Robert.kugler@leonard.com Ma.xiong@leonard.com | Mark D. Larsen on behalf of Plaintiff Douglas A. Kelley, Trustee mlarsen@lindquist.com ddaun@lindquist.com |

2

| James A. Lodoen on behalf of Plaintiff Douglas A. Kelley<br>jlodoen@lindquist.com<br>gluessenheide@lindquist.com | Marcus A. Ploeger on behalf of Defendant<br>Epsilon Global Active Value Fund, II, Ltd.<br>mploeger@briggs.com<br>mjacobson@briggs.com |
| --- | --- |
| Daniel E. Reidy on behalf of Defendant<br>Westford Special Situations Master Fund, L.P.<br>Westford Asset Management, LLC<br>Epsilon Global Active Value Fund, L.P.<br>Epsilon Global Active Value Fund II, L.P.<br>Epsilon Global Active Value Fund II-B, L.P.<br>Epsilon Investment Management, LLC<br>Steve Goran Stevanovich<br>dereidy@jonesday.com<br>ma.xiong@leonard.com | Jeffrey D. Smith on behalf of Plaintiff Douglas A. Kelley<br>jsmith@lindquist.com<br>ddavis@lindquist.com |
| Bradley P. Thoreson on behalf of Defendant<br>Epsilon Global Active Value Fund, II, Ltd.<br>Epsilon Global Active Value Fund II, Ltd.<br>fka Westford Investment Fund Ltd.<br>thorb@foster.com<br>boleb@foster.com | Daryle Uphoff on behalf of Plaintiff Douglas A. Kelley<br>duphoff@lindquist.com |

to the addresses listed above and electronically by Notice of Electronic Filing upon all parties who have requested service in this cases by filing the same via ECF with the Bankruptcy Court in the District of Minnesota.

and I further certified that I served the following document(s):

      1.      Plaintiff's Supplemental Memorandum in Opposition to Defendants' Motions to Dismiss

via U.S. Mail, First Class, to the addresses listed below:

| Westford Special Situations Fund Ltd.<br>Epsilon Global Active Value Fund II-G, Ltd.<br>Epsilon Global Master Fund III – Structured Strategies, L.P.<br>Epsilon Global Active Value Fund III Ltd.<br>Capital Strategies Fund Ltd.<br>HWR Services Limited<br>Craigmuir Chambers<br>PO Box 71<br>Road Town, Tortola<br>British Virgin Islands | Epsilon Global Master Fund L.P.<br>Epsilon Global Master Fund II, L.P.<br>aka Epsilon Global Master Fund II, L.P., Sub 1<br>Maples and Calder<br>PO Box 309, Ugland House<br>South Church Street<br>George Town<br>Grand Cayman KY1-1104<br>Cayman Islands |
| --- | --- |
| Epsilon Global Active Value Fund II-G, L.P.<br>National Registered Agents<br>160 Greentree Drive<br>Suite 101<br>Dover, DE 19904 | Epsilon/Westford<br>c/o Peter J. Schwingler<br>Bryan D. Tchida<br>Leonard Street & Deinard<br>150 South Fifth Street, Ste 2300<br>Minneapolis, MN 55402 |

                          /e/ Donna J. Daun
                          Donna J. Daun