## UNITED STATES BANKRUPTCY COURT
## DISTRICT OF MINNESOTA

In re:

**Jointly Administered under**
**Case No. 08-45257**

Petters Company, Inc., et al.,
            Debtors.

Court File No. 08-45257

(includes:
Petters Group Worldwide, LLC;
PC Funding, LLC;
Thousand Lakes, LLC;
SPF Funding, LLC;
PL Ltd., Inc.;
Edge One LLC;
MGC Finance, Inc.;
PAC Funding, LLC;
Palm Beach Finance Holdings, Inc.)

Court Files Nos.:
08-45258 (GFK)
08-45326 (GFK)
08-45327 (GFK)
08-45328 (GFK)
08-45329 (GFK)
08-45330 (GFK)
08-45331 (GFK)
08-45371 (GFK)
08-45392 (GFK)

Chapter 11 Cases
Judge Gregory F. Kishel

Douglas A. Kelley, in his capacity as the
court-appointed Chapter 11 Trustee of
Debtors Petters Company, Inc. and
PL Ltd., Inc.,
            Plaintiff,

vs.

ADV. NO. 10-04396

Westford Special Situations Master Fund, L.P.;
et al.,
            Defendants.

**<u>Jury Trial Demanded</u>**

## REPLY BRIEF IN SUPPORT OF DEFENDANTS' MOTION TO DISMISS

<u>**TABLE OF CONTENTS**</u>

PRELIMINARY STATEMENT ............................................................................... 1

ARGUMENT ........................................................................................................... 4

I.    THE COMPLAINT MUST BE DISMISSED BECAUSE IT FAILS TO
STATE A CLAIM FOR WHICH RELIEF CAN BE GRANTED ...................... 4

    A.    The Trustee's Actual and Constructive Fraudulent Transfer Claims
(Counts II-VII) Should Be Dismissed Because the Repayment of
an Antecedent Debt Is Not an Avoidable Fraudulent Transfer.................. 4

    B.    The Trustee's Constructive Fraudulent Transfer Claims (Counts
III, V-VII) Should Also Be Dismissed Because the
Epsilon/Westford Defendants Provided "Reasonably Equivalent
Value" for the Transfers........................................................................... 8

        1.    The Borrower Received Reasonably Equivalent Value in
Exchange for Repayment of Principal ........................................... 9

        2.    The Borrower Received Reasonably Equivalent Value in
Exchange for the Payment of Interest.......................................... 10

    C.    The Trustee's Turnover and Accounting Claim (Count I) Should
Be Dismissed Because the Transfers Are Not "Property of the
Estate" ..................................................................................................... 13

    D.    The Trustee's Claim for Unjust Enrichment (Count IX) Must Be
Dismissed Because It Fails to State a Claim for Which Relief Can
Be Granted .............................................................................................. 16

        1.    Unjust Enrichment Does Not Occur When a Defendant
Receives Payments To Satisfy a Contractual Obligation ............ 17

        2.    The Doctrine of *In Pari Delicto* Bars the Trustee's Claim.......... 20

        3.    The Trustee Cannot Assert a Claim for Unjust Enrichment
When He Has an Adequate Remedy at Law................................. 21

    E.    The Trustee Has Agreed to Dismiss His Claim for Lien Avoidance....... 23

    F.    Counts IV Through VII and IX Are Time-Barred .................................. 23

        1.    The Complaint Was Not Timely Commenced as to Several
Defendants Under Minnesota Law ............................................... 23

        2.    Even If the Trustee Had Timely Filed His Claims Under
Section 546(a), the Statute of Limitations Can Only Reach
Back From the Date of "Commencement" Under State Law ...... 28

        3.    The Trustee's Claims Cannot, and Should Not, Be Tolled.......... 31

II.    THE COMPLAINT SHOULD BE DISMISSED FOR FAILURE TO
PLEAD SUFFICIENT FACTS AND DISTINGUISH BETWEEN PCI
AND THE BORROWER ................................................................................ 32

III.  THE COMPLAINT SHOULD BE DISMISSED BECAUSE THE
TRUSTEE FAILED TO JOIN THE BORROWER, WHICH IS A
NECESSARY PARTY, AS THE INITIAL TRANSFEREE OF THE
TRANSFERS AT ISSUE ...................................................................................... 36

A.  This Court Should Follow *Slack-Horner* .................................................. 36

B.  The Borrower Is the Initial Transferee Here and Should Have Been
Joined ........................................................................................................ 38

CONCLUSION ............................................................................................................... 39

# TABLE OF AUTHORITIES

**Page**

C<span>ASES</span>

*Anderson v. Unisys Corp.*,
    47 F.3d 302 (8th Cir. 1995) ...................................................................................................25

*Appletree Square I, Ltd. P'ship v. W.R. Grace & Co.*,
    29 F.3d 1283 (8th Cir. 1994) .........................................................................................25, 28

*Arena Dev. Group, LLC v. Naegle Commc'ns, Inc.*,
    No. 06-2806, 2007 WL 2506431 (D. Minn. Aug. 30, 2007)..................................................22

*Armstrong v. Collins*,
    No. 01 Civ. 2437, 2011 WL 308260 (S.D.N.Y. Jan. 31, 2011)...............................................7

*B.E.L.T., Inc. v. Wachovia*,
    403 F.3d 474 (7th Cir. 2005) ........................................................................................ passim

*Bear, Stearns Secs. Corp. v. Gredd (In re Manhattan Inv. Fund Ltd.)*,
    397 B.R. 1 (S.D.N.Y. 2007)....................................................................................................7

*Bergquist v. Vista Dev., Inc. (In re Quality Pontiac Buick GMC Truck, Inc.)*,
    222 B.R. 865 (Bankr. D. Minn. 1998) (Kishel, J.).........................................................29, 31

*Block v. Litchy*,
    428 N.W.2d 850 (Minn. Ct. App. 1988)...............................................................................28

*Boston Trading Grp., Inc. v. Burnazos*,
    835 F.2d 1504 (1st Cir. 1987)............................................................................................4, 6

*Brand & Co. v. Williams*,
    13 N.W. 42 (Minn. 1882) ...............................................................................................17, 18

*Brandt v. Hicks, Muse & Co. (In re Healthco Int'l, Inc.)*,
    195 B.R. 971 (Bankr. D. Mass. 1996) ..................................................................................37

*Brown v. Pyatt (In re Pyatt)*,
    486 F.3d 423 (8th Cir. 2007) .........................................................................................14, 19

*Butner v. United States*,
    440 U.S. 48 (1979)................................................................................................................28

*Cady v. Bush*,
    166 N.W.2d 358 (Minn. 1969) .............................................................................................18

*Campbell v. Cathcart (In re Derivium Capital, LLC)*,
    380 B.R. 429 (Bankr. D. S.C. 2006) ........................................................................................15

*Christian Bros. High Sch. Endowment v. Bayou No Leverage Fund, LLC*
    *(In re Bayou Group, LLC)*,
    439 B.R. 284 (S.D.N.Y. 2010) ..................................................................................................7

*Conroy v. Shott*,
    363 F.2d 90 (6th Cir. 1966) ....................................................................................................13

*Cullen Ctr. Bank & Trust v. Hensley (In re Criswell)*,
    102 F.3d 1411 (5th Cir. 1997) ..................................................................................................5

*Curtis v. Altria Group, Inc.,*
    792 N.W.2d 836 (Minn. Ct. App. 2010) ................................................................................21

*Custom Design Studio v. Chloe, Inc.*,
    584 N.W.2d 430 (Minn. Ct. App. 1998) ................................................................................18

*Daigle v. Ford Motor Co.*,
    713 F. Supp. 2d 822 (D. Minn. 2010) ...............................................................................22, 23

*Daly v. Deptula (In re Carrozzella & Richardson)*,
    286 B.R. 480 (D. Conn. 2002) ................................................................................................11

*Dicello v. Jenkins (In re Int'l Loan Network)*,
    160 B.R. 1 (Bankr. D.D.C. 1993) ...........................................................................................13

*Doyle v. Paolino (In re Energy Sav. Ctr., Inc.)*,
    61 B.R. 732 (E.D. Pa. 1986) ...................................................................................................15

*Frank v. Gold'N Plump Poultry, Inc*.,
    No. 07-4655, 2007 WL 2780504 (D. Minn. Sept. 24, 2007) ..................................................22

*Greenwald v. Latham & Watkins (In re Trans-End Tech., Inc.)*,
    230 B.R. 101 (Bankr. N.D. Ohio 1998) .................................................................................37

*Greenwood v. Dittmer*,
    776 F.2d 785 (8th Cir. 1985) ..................................................................................................34

*Grubbs Construction Co. v. Fla. Dept. of Revenue (In re Grubbs Constr. Co.)*,
    321 B.R. 346 (Bankr. M.D. Fla. 2005) ..................................................................................26

*Gunten v. Neilson (In re Slatkin)*,
    243 Fed. Appx. 255 (9th Cir. 2007) ......................................................................................13

*Hamann v. Park Nicollet Clinic*,
    792 N.W.2d 468 (Minn. Ct. App. 2010) ..........................................................................18, 20

*Hartford Fire Ins. Co. v. Clark*,
    727 F. Supp. 2d 765 (D. Minn. 2010) ....................................................................19

*Hecht v. Malvern Preparatory Sch.*,
    716 F. Supp. 2d 395 (E.D. Pa. 2010) ....................................................................19

*Henkin v. Rockower Brothers, Inc.*,
    259 F. Supp. 202 (S.D.N.Y. 1966).........................................................................25

*IBT Int'l, Inc. v. Northern (In re Int'l Admin. Servs., Inc.)*,
    408 F.3d 689 (11th Cir. 2005) ...............................................................................36

*In re Bayou*,
    362 B.R. 624 (Bankr. S.D.N.Y. 2007) ..................................................................13

*In re Circuit Alliance*,
    228 B.R. 225 (Bankr. D. Minn. 1998) ...................................................................37

*In re Hollis*,
    83 B.R. 588 (Bankr. E.D. Ark. 1988) ....................................................................33

*In re Honeywell/Alliant Techsystems Fed. Credit Union v. Buckhalton*,
    No. C2-99-1194, 2000 WL 53875 (Minn. Ct. App. Jan. 25, 2000).......................19

*In re Lair*,
    235 B.R. 1 (Bankr. M.D. La. 1999) .......................................................................26

*In re Lofton*,
    246 B.R. 604 (Bankr. E.D. Ark. 2000) ..................................................................14

*In re Old Carco LLC*,
    435 B.R. 169 (Bankr. S.D.N.Y. 2010) ..................................................................34

*In re Schwab*,
    378 B.R. 854 (Bankr. D. Minn. 2007) ...................................................................14

*In re Taubman*,
    160 B.R. 964 (Bankr. S.D. Ohio 1993)..................................................................13

*In re Thielking*,
    163 B.R. 543 (Bankr. S.D. Iowa 1994)..................................................................14

*Jones Truck Lines, Inc. v. Full Serv. Leasing Corp.*,
    83 F.3d 253 (8th Cir. 1996) .....................................................................................5

*Kaler v. Able Debt Settlement (In re Kendall)*,
    440 B.R. 526 (B.A.P. 8th Cir. 2010)................................................................11, 12

*Klesalek v. Klesalek (In re Klesalek)*,
  307 B.R. 648 (B.A.P. 8th Cir. 2004)..............................................................................24, 25

*Kranz v. Koeing*,
  484 F. Supp. 2d 997 (D. Minn. 2007)............................................................................19, 34

*Leonard v. Optimal Payments Ltd. (In re Nat'l Audit Def. Network)*,
  332 B.R. 896 (Bankr. D. Nev. 2005) ....................................................................................36

*Limor v. Buerger (In re Del-Met Corp.)*,
  322 B.R. 781 (Bankr. M.D. Tenn. 2005) ..............................................................................15

*Lindell v. JNG Corp. (In re Lindell)*,
  334 B.R. 249 (Bankr. D. Minn. 2005) ....................................................................................9

*Liquidating Tr. of the Amcast Unsecured Creditor Liquidating Trust v. Baker (In re
  Amcast Indus. Corp.)*,
  365 B.R. 91 (Bankr. S.D. Ohio 2007).....................................................................................16

*Lustig v. Weisz and Assocs., Inc. (In re Unified Commercial Capital, Inc.)*,
  260 B.R. 343 (Bankr. W.D.N.Y. 2001) ..................................................................................11

*Maranda v. Group Health Plan, Inc*.,
  2008 WL 2139584 (D. Minn. May 20, 2008).........................................................................22

*McCuskey v. Cent. Trailer Servs., Ltd. (In re Rose Way, Inc.)*,
  37 F.3d 1329 (8th Cir. 1994) ..........................................................................................29, 30

*Mendelsohn v. Jacobowitz (In re Jacobs)*,
  394 B.R. 646 (Bankr. E.D.N.Y. 2008)...................................................................................15

*Meyers v. Raynor (In re Raynor)*,
  617 F.3d 1065 (8th Cir. 2010) ...............................................................................................30

*Midwest Sports Mktg., Inc. v. Hillerich & Bradsby of Canada, Ltd.*,
  552 N.W.2d 254 (Minn. Ct. App. 1996).................................................................................19

*MW AG, Inc. v. N.H. Ins. Co*.,
  107 F.3d 644 (8th Cir. 1997) .................................................................................................23

*Nicklaus v. Peoples Bank & Trust Co.*,
  369 F.2d 683 (8th Cir. 1966) .............................................................................................4, 6

*Nordberg v. Sanchez (In re Chase & Sanborn Corp.)*,
  813 F.2d 1177 (11th Cir. 1987) ...............................................................................................5

*Official Comm. of Unsec. Creditors v. JP Morgan Chase Bank, N.A.*
   (*In re Fabrikant & Sons*),
   394 B.R. 721 (Bankr. S.D.N.Y. 2008) ..................................................................34

*Parnes v. Gateway 2000, Inc.*,
   122 F.3d 539 (8th Cir. 1997) ...........................................................................34

*Pereira v. Dow Chem. Co. (In re Trace Int'l Holdings, Inc.)*,
   301 B.R. 801 (Bankr. S.D.N.Y. 2003), *vacated on other grounds*, 2009 WL 1810112
   (S.D.N.Y. Jun. 25, 2009) ...........................................................................8, 16

*Pereira v. Grecogas Ltd. (In re Saba Enters., Inc.)*,
   421 B.R. 626 (Bankr. S.D.N.Y. 2009) ..................................................................15

*Picard v. Estate of Stanley Chais (In re Bernard L. Madoff Inv. Servs., LLC)*,
   445 B.R. 206 (Bankr. S.D.N.Y. 2011) ..................................................................10

*Ramette v. Digital River, Inc. (In re Graphics Tech., Inc.)*,
   306 B.R. 630 (B.A.P. 8th Cir. 2004) ..................................................................18

*Ramirez v. Rodriguez (In re Ramirez)*,
   413 B.R. 621 (Bankr. S.D. Tex. 2009) ................................................................26

*Richardson v. Countrywide Home Loans (In re Gregory)*,
   316 B.R. 82 (Bankr. W.D. Mich. 2004) ................................................................26

*Riederer v. Logan Wildlife Corp. (In re Brooke Corp.)*,
   443 B.R. 847 (Bankr. D. Kan. 2010) ..................................................................36

*S.E.C. v. Brown*,
   643 F. Supp. 2d 1077 (D. Minn. 2009) ...........................................................19, 20

*Savage & Assoc., P.C. v. BLR Servs. SAS (In re Teligent, Inc.)*,
   307 B.R. 744 (Bankr. S.D.N.Y. 2004) ..................................................................16

*Schaaf v. Residential Funding Corp.*,
   517 F.3d 544 (8th Cir. 2007) ...............................................................17, 18, 19, 20

*Scholes v. Lehmann*,
   56 F.3d 750 (7th Cir. 1995) ...........................................................................13

*Schroeder v. Rouse (In re Redding)*,
   247 B.R. 474 (B.A.P. 8th Cir. 2000) ..................................................................14

*Servicemaster of St. Cloud v. GAB Business Servs., Inc.*,
   544 N.W.2d 302 (Minn. 1996) ...........................................................................18

*Sharp Int'l Corp. v. State St. Bank & Trust Co. (In re Sharp Int'l)*,
 403 F.3d 43 (2d Cir. 2005)..................................................................................4, 6, 7, 8

*Shields v. Crel, Inc. (In re Dartco, Inc.)*,
 203 B.R. 285 (Bankr. D. Minn. 1996) ............................................................14, 15

*Silverman v. Actrade Capital, Inc. (In re Actrade Fin. Techs. Ltd.)*,
 337 B.R. 791 (Bankr. S.D.N.Y. 2005)........................................................................9

*Slone-Stiver v. Sec. Nat'l Bank & Trust Co. (In re Tower Metal Alloy Co.)*,
 196 B.R. 266 (Bankr. S.D. Ohio 1996)...............................................................24, 25

*Southtown Plumbing, Inc. v. Har-Ned Lumber Co.*,
 493 N.W.2d 137 (Minn. Ct. App. 1992)...................................................................21

*Summit Secs., Inc. v. Sandifur (In re Metro. Mortg. & Secs. Co., Inc.)*,
 344 B.R. 138 (Bankr. E.D. Wash. 2006) .................................................................26

*Stein v. O'Brien*,
 565 N.W.2d 472 (Minn. Ct. App. 1997).................................................................19

*U.S. Fire Ins. Co. v. Minnesota State Zoological Bd.*,
 307 N.W.2d 490 (Minn. 1981).................................................................................21

*Velez Constr. Inc., v. Consol. Edison Co. (In re Andrew Velez Constr., Inc.)*,
 373 B.R. 262 (Bankr. S.D.N.Y. 2007).....................................................................16

*Walker v. Armco Steel Corp.*,
 446 U.S. 740 (1980).......................................................................................... passim

*Wedtech Corp. v. Denlinger (In re Wedtech Corp.)*,
 121 B.R. 286 (Bankr. S.D.N.Y. 1990).....................................................................26

*Wells Electric, Inc. v. Schaper*,
 2006 WL 2807179 (D. Minn. Oct. 3, 2006) ...........................................................19

*Wells Fargo Home Mortg., Inc. v. Lindquist*,
 592 F.3d 838 (8th Cir. 2010) ............................................................................36, 37

*West v. Conrail*,
 481 U.S. 35 (1987)......................................................................................26, 27, 28

*Williams v. Mortillaro (In re Resource, Recycling & Remediation, Inc.)*,
 314 B.R. 62 (W.D. Penn. 2004)...............................................................................37

*Woods & Erickson LLP v. Leonard (In re Avi, Inc.)*,
 389 B.R. 721 (B.A.P. 9th Cir. 2008).......................................................................16

*Yoppolo v. Fifth Third Bank (In re Bostic)*,
171 B.R. 270 (Bankr. N.D. Ohio 1994) ..........................................................2, 3, 15

## Statutes

11 U.S.C. § 108 ..............................................................................................................29

11 U.S.C. § 541 ..................................................................................................13, 15, 21

11 U.S.C. § 544 ..................................................................................20, 26, 28, 30

11 U.S.C. § 546 .................................................................................................. passim

11 U.S.C. § 547 ................................................................................................................4

11 U.S.C. § 548 ..................................................................................................8, 9, 11

11 U.S.C. § 550 .................................................................................................. passim

Minn. Stat. § 513.43 ......................................................................................................11

Minn. Stat. § 513.44 ..................................................................................................8, 9

Minn. Stat. § 541.05 ..............................................................................................28, 32

## Other Authorities

Federal Rule of Bankruptcy Procedure 7008 ..................................................................1

Federal Rule of Bankruptcy Procedure 7009 ..................................................................1

Federal Rule of Bankruptcy Procedure 7012 ..................................................................1

Federal Rule of Civil Procedure 3 ............................................................................24, 25

Federal Rule of Civil Procedure 8 ................................................................................22

Federal Rule of Civil Procedure 9 .......................................................................... passim

Minnesota Rule of Civil Procedure 3 ............................................................................23

Defendants Westford Special Situations Master Fund, L.P.; Westford Global Asset Management Ltd.; Westford Special Situations Fund Ltd.; Westford Special Situations Fund, L.P.; Westford Asset Management, LLC; Epsilon Global Master Fund, L.P.; Epsilon Global Active Value Fund Ltd.; Epsilon Global Active Value Fund I-B Ltd.; Epsilon Global Active Value Fund, L.P.; Epsilon Global Master Fund II, L.P. a/k/a Epsilon Global Master Fund II, L.P., Sub 1; Epsilon Global Active Value Fund II-B Ltd.; Epsilon Global Active Value Fund II, L.P.; Epsilon Global Active Value Fund II-B, L.P.; Epsilon Global Asset Management Ltd.; Epsilon Investment Management, LLC; Epsilon Global Active Value Fund III Ltd.; Stafford Towne Ltd.; and Steve Goran Stevanovich (collectively, the "Epsilon/Westford Defendants" or "Defendants") respectfully submit this reply brief (the "Reply") in support of their motion, pursuant to Rules 7008, 7009 and 7012(b) of the Federal Rules of Bankruptcy Procedure, to dismiss with prejudice the claims asserted in the Complaint dated October 8, 2010 (the "Complaint") filed by Douglas A. Kelley as trustee (the "Trustee") for Petters Company, Inc. ("PCI") and PL Ltd., Inc. (the "Borrower").

## PRELIMINARY STATEMENT

The Trustee's response, much like his Complaint, rests solely on his allegation that the loan repayments at issue here arose out of an alleged "Ponzi scheme." He uses the Ponzi refrain repeatedly to avoid addressing controlling law and to justify his hiding behind conclusory allegations. But whether the debtors were part of or operated a Ponzi scheme is simply irrelevant to deciding the Epsilon/Westford Defendants' Motion to Dismiss. It is black letter law that repayments of antecedent debt made pursuant to contract are not fraudulent transfers or unjust enrichment. This is true even if the payor was engaged in a so-called Ponzi scheme or any other type of fraudulent activity. The reason is simple. The lender is entitled to keep the loan

repayments under the terms of the loan contract.  In short, for the reasons set forth below and in Defendants' Motion to Dismiss, the Complaint should be dismissed with prejudice.

First, the Trustee provides no response to the argument that the Borrower's repayments of the antecedent debts at issue might have constituted a preferential transfer, but were not voidable fraudulent transfers.  Nor does he effectively counter or distinguish the four separate federal appellate decisions or the compelling policy arguments cited by Defendants in support of this argument.

Second, the Trustee does not dispute that the challenged "transfers" were repayments of antecedent debt owed by the Borrower.  As a matter of law, these repayments satisfied the Borrower's obligation to repay the loans and thus provided the Borrower with "reasonably equivalent value."  The Trustee's response in this regard is unavailing because it is premised on cases involving equity investments, not loans.  Distributions on equity investments are recoverable because there is no exchange of reasonably equivalent value—the investor is not entitled to any such return, or even the original capital invested.  In sharp contrast, the repayment of principal and payment of interest pursuant to a loan agreement provide an exchange of "reasonably equivalent value" as a matter of law.

Third, the Trustee's turnover claim must also be dismissed.  The Trustee all but admits that this claim is not yet ripe since the transfers at issue are not and were not as of the filing date "property of the estate."  This Court should follow the numerous federal courts that have dismissed turnover claims under virtually identical circumstances.

Fourth, three independent reasons support dismissal of the Trustee's unjust enrichment claim: (1) the Eighth Circuit and the overwhelming preponderance of Minnesota case law hold

that unjust enrichment does not occur when a defendant receives payment to satisfy a contractual obligation; (2) *in pari delicto* bars recovery; and (3) the Trustee has an adequate remedy at law.

Fifth, the Trustee cannot clear numerous statute of limitations obstacles. His Minnesota state claims are time-barred as to certain Defendants because he failed to "commence" the instant adversary proceeding against those Defendants within two years of filing the Bankruptcy Petition. In addition, the Trustee's Minnesota state claims only reach back six years from the commencement date of the adversary proceeding because Bankruptcy Code section 546(a) is not a tolling provision. Finally, the Trustee's state law claims cannot be tolled because (1) no discovery period applies to the six-year statute under Minnesota law; (2) the Trustee misapplies the doctrine of fraudulent concealment; and (3) there is no allegation that Defendants participated in the fraud or should otherwise be subject to the imposition of equitable remedies such as tolling.

Sixth, the Complaint falls short of the pleading standards established by *Twombly*, *Iqbal* and Rule 9(b). Contrary to his assertion, the Trustee is not entitled to a relaxation of these standards, particularly given that, among other things, he and his forensic accounting team have had the benefit of more than two years of investigation to develop these claims. Moreover, as demonstrated again below, the distinction between PCI and the Borrower is critical to this case and the Trustee should not be allowed to proceed without specifically pleading each entity's role in connection with the Trustee's theory of liability and recovery.

Seventh, the Trustee cites no authority excusing his failure to join the Borrower—a necessary party—as the initial transferee of the transfers at issue. Without the Borrower as a defendant, the plain language of Bankruptcy Code section 550(a) bars recovery against

subsequent transferees because the initial transfer cannot be avoided.  The Trustee's argument

that the Court should overlook the plain meaning of section 550(a) should be rejected.

## ARGUMENT

I.    **THE COMPLAINT MUST BE DISMISSED BECAUSE IT FAILS TO STATE A CLAIM FOR WHICH RELIEF CAN BE GRANTED.**

      A.    **The Trustee's Actual and Constructive Fraudulent Transfer Claims (Counts II-VII) Should Be Dismissed Because the Repayment of an Antecedent Debt Is Not an Avoidable Fraudulent Transfer.**

  The Trustee fails to respond to the Epsilon/Westford Defendants' argument that each

repayment of Defendants' loans was not a fraudulent transfer but, if anything, a preferential

transfer.  (*See* Motion to Dismiss at 11-15.)  As demonstrated in the Defendants' Motion to

Dismiss, basic principles of bankruptcy law provide that repayment of an antecedent debt may be

a preferential transfer pursuant to section 547 of the Bankruptcy Code.  Where such transfers are

made more than 90 days prior to the filing of the petition, however, they cannot be avoided.  (*Id.*)

  The Trustee's response briefs do not acknowledge these basic principles—and for an

obvious reason.  No fewer than four federal appellate courts, including the Eighth Circuit, have

warned against confusing a preferential transfer with a fraudulent transfer and, indeed, have

firmly distinguished between the two.  *See Nicklaus v. Peoples Bank & Trust Co.*, 369 F.2d 683,

684 (8th Cir. 1966); *Boston Trading Grp., Inc. v. Burnazos*, 835 F.2d 1504, 1508-1509 (1st Cir.

1987); *Sharp Int'l Corp. v. State St. Bank & Trust Co. (In re Sharp Int'l)*, 403 F.3d 43, 54 (2d Cir.

2005); *B.E.L.T., Inc. v. Wachovia*, 403 F.3d 474, 478 (7th Cir. 2005).  (The Epsilon/Westford

Defendants addressed each of these cases at length in their brief in support of their Motion to

Dismiss and do not repeat that discussion here.  (*See* Motion to Dismiss at 11-15.)

  These cases emphasize the significant policy differences underlying preferential transfers

and fraudulent transfers.  As discussed in the Defendants' Motion to Dismiss, the aim of

avoiding a fraudulent transfer is to prevent a debtor from transferring assets beyond the reach of the debtor's creditors. *Cullen Ctr. Bank & Trust v. Hensley (In re Criswell)*, 102 F.3d 1411, 1414 (5th Cir. 1997); *Nordberg v. Sanchez (In re Chase & Sanborn Corp.)*, 813 F.2d 1177, 1181 (11th Cir. 1987). The aim of avoiding a preferential transfer, by contrast, is to prevent a debtor from transferring assets to one creditor and thus favoring that creditor over others. *See Jones Truck Lines, Inc. v. Full Serv. Leasing Corp.*, 83 F.3d 253, 257 (8th Cir. 1996); *In re Criswell*, 102 F.3d at 1414.

Here, the facts alleged in the Complaint show that the Borrower's repayment of its loans to the six Defendants that made short-term, asset-based loans to the Borrower (the "Direct Lenders") might have constituted preferential transfers but did not constitute fraudulent transfers. Far from transferring the Borrower's assets beyond the reach of its creditors, the Borrower's transfers put assets in the hands of its only creditors—the Direct Lenders. Because these transfers took place more than 90 days prior to the filing of the Bankruptcy Petition, they cannot be avoided as preferential transfers.

Rather than responding to this argument, the Trustee attempts to distinguish the above-cited cases on two grounds: (1) the plaintiffs in those cases did not allege or prove fraudulent intent on behalf of the transferor; and (2) the cases did not involve a Ponzi scheme. (Omnibus Br. at 65-67.) Neither argument is persuasive.

First, the courts in the above-cited cases did not dismiss the fraudulent transfer claims because the plaintiffs failed to allege or prove fraudulent intent on behalf of the transferor. Instead, those courts held that payment of an antecedent debt owed to a creditor is not recoverable because, as a matter of law, it is not made to hinder, delay or defraud present or future creditors. For instance, as the Seventh Circuit explained in *B.E.L.T.*,

> [P]laintiffs' contention is that Lacrad prolonged the fraud, borrowing more money until it finally collapsed. Paying First Union did not enable Lacrad to stay in business longer; distribution of assets may have made it thirsty for capital, but it also reduced the time it could stay afloat. Plaintiffs have not pointed to any decision from Illinois (or any other state) that treats a comparable payment of a third-party creditor (paying corporate insiders and their cronies is altogether different), which dealt with the debtor at arms' length, as a fraudulent conveyance on the theory that paying an antecedent debt evinces "actual intent to hinder, delay, or defraud any [other] creditor of the debtor".

403 F.3d at 478. *See also Boston Trading Grp., Inc.*, 835 F.2d at 1511 ("[T]he case does resemble the fourth paradigm, a 'preference,' which Massachusetts courts (and most courts) have specifically held *is not* a fraudulent conveyance. . . . The debtors (S & K) prefer to satisfy a creditor (B) who seems far less worthy than another creditor (C), but both B & C are legitimate creditors of S & K.") (emphasis in the original); *Nicklaus*, 369 F.2d at 684 ("To constitute a conveyance voidable under the provisions of 67e (now 67d (2)(d)), actual intent on the part of the debtor to hinder, delay, or defraud creditors must be shown, and that requirement is not satisfied by a showing that in the light of subsequent events an actual preference may have been effected by the payment in question."); *Sharp,* 403 F.3d at 56 ("The fraud alleged in the complaint relates to the manner in which Sharp obtained new funding from the Noteholders, not Sharp's subsequent payment of part of the proceeds to State Street. The $12.25 million payment was at most a preference between creditors and did not 'hinder, delay, or defraud either present or future creditors.'"). The rule that now prevails in these circuits—that payment of a legitimate creditor (whether procured in the context of a fraudulent scheme or not) *cannot* constitute a fraudulent transfer—is not and should not be affected by the transferor's rationale for paying the creditor.

Indeed, whether the fraud at issue could be characterized as a Ponzi scheme or not is irrelevant. Using the phrase "Ponzi scheme" is merely jargon for the allegation that the

transferor was engaged in fraud. But this says nothing about other parties that never, in effect, joined the operation as equity holders but instead established enforceable contractual *rights* to reciprocal performance (e.g., repayments of interest and principal on loans) through arm's-length negotiations. None of these cases indicated that the result depended on the nature of the fraud at issue or that a different ruling would have obtained had a Ponzi scheme been involved. Indeed, the Seventh Circuit expressly rejected the precise argument that the Trustee advances here:

> The opinions to which plaintiffs refer speak of the duties of one who receives the "fruits" of a fraud, which could occur when the operator of a Ponzi scheme rewards some of the early investors with exorbitant returns, inducing them to shill for the venture. . . . Being paid for services rendered is a different thing entirely. Someone who sells a car at the market price to Charles Ponzi is entitled to keep the money without becoming liable to Ponzi's victims for the loss created by his scheme. First Union loaned money to Lacrad at the market price, in the ordinary course of its business, and is presumptively entitled to keep the repayment.

*B.E.L.T.*, 403 F.3d at 477.

Notably, the Trustee does not cite any cases rejecting this authority in the context of a fraud in which the transfers at issue satisfied loan obligations. Instead, the Trustee focuses on *Sharp* and cites three cases from the Southern District of New York that refused to apply *Sharp* to dismiss fraudulent transfer claims in the context of alleged Ponzi schemes. (Omnibus Br. at 65-66, citing *See Armstrong v. Collins*, No. 01 Civ. 2437, 2011 WL 308260 (S.D.N.Y. Jan. 31, 2011); *Christian Bros. High Sch. Endowment v. Bayou No Leverage Fund, LLC (In re Bayou Group, LLC)*, 439 B.R. 284 (S.D.N.Y. 2010); *Bear, Stearns Secs. Corp. v. Gredd (In re Manhattan Inv. Fund Ltd.)*, 397 B.R. 1 (S.D.N.Y. 2007)).

These cases involved equity investments, for which the transferee had no right to a distribution *ahead of creditors*, rather than commercial loans owing *to creditors*. As such, unlike *Sharp* and the instant case, there was no "antecedent debt" to be repaid. For this reason, none of these cases consider the argument made by the Epsilon/Westford Defendants that the payments

at issue constituted preferential transfers rather than fraudulent transfers. Nor do these cases discuss the markedly different policies underlying preferential and fraudulent transfers, which is exactly what the Second Circuit had directed subordinate courts to consider in cases involving payments to existing creditors: The repayment of a valid debt "does not constitute a fraudulent conveyance." *Sharp*, 403 F.3d at 54. That rule is sufficiently well established that, as a district court in the same district observed, it "is more ungrudgingly accepted" than any other point of bankruptcy law. *Pereira v. Dow Chem. Co. (In re Trace Int'l Holdings, Inc.)*, 301 B.R. 801, 805 (Bankr. S.D.N.Y. 2003), *vacated on other grounds*, 2009 WL 1810112 (S.D.N.Y. Jun. 25, 2009). The Trustee's cases offer no explanation as to why this rule should not apply with equal force to loans made in an alleged Ponzi scheme context.

For all of these reasons, the Trustee's actual and constructive fraudulent transfer claims should be dismissed.

B.     **The Trustee's Constructive Fraudulent Transfer Claims (Counts III, V-VII) Should Also Be Dismissed Because the Epsilon/Westford Defendants Provided "Reasonably Equivalent Value" for the Transfers.**

The Trustee's constructive fraudulent transfer claims against the Epsilon/Westford Defendants must also be dismissed because, as a matter of law, the Borrower received "reasonably equivalent value" in exchange for the transfers—namely, release from the Borrower's contractual obligation to repay principal and accrued interest. *See B.E.L.T.,* 403 F.3d at 478 ("Repayment of an antecedent loan comes within the 'reasonably equivalent value' rule— which is just another way of saying that preferential transfers differ from fraudulent conveyances."). The Trustee does not dispute the general principle that repayment of principal and payment of interest for an antecedent debt both constitute reasonably equivalent value under section 548(a) of the Bankruptcy Code and Minnesota Statute 513.44(a)(2). Nor does he address

the substantial relevant authority in the Eighth Circuit or even the plain language of either statute. (*See* Motion to Dismiss at 16-18.)

Instead, the Trustee argues that the Borrower did not receive reasonably equivalent value in exchange for (1) repayment of principal because Defendants had knowledge of the Petters fraud; and (2) payment of interest because any payments from an alleged Ponzi scheme in excess of principal are voidable as fraudulent transfers. The Trustee is wrong on both counts.

> ### 1. The Borrower Received Reasonably Equivalent Value in Exchange for Repayment of Principal.

The Trustee first argues that the Borrower did not receive reasonably equivalent value when it paid down principal because the Direct Lenders had no valid claim for repayment of that principal due to their alleged knowledge of the Petters fraud. In other words, the Trustee contends that Defendants abandoned their claim to loan principal because they did not act in good faith.

Defendants dispute any suggestion that they did not exercise good faith regarding their loans to the Borrower. As a legal matter, however, the Trustee's argument is irrelevant because there is no "good faith" requirement to demonstrate reasonably equivalent value under the plain language of either Bankruptcy Code section 548(a) or Minnesota Statute 513.44(a)(2). *See also Lindell v. JNG Corp. (In re Lindell)*, 334 B.R. 249, 255 n.4 (Bankr. D. Minn. 2005) ("Reasonably equivalent value under the Bankruptcy Code does not have a good faith requirement like that which appears in UFCA's fair consideration definition."); *Silverman v. Actrade Capital, Inc. (In re Actrade Fin. Techs. Ltd.)*, 337 B.R. 791, 804 (Bankr. S.D.N.Y. 2005) ("Under § 548 of the Bankruptcy Code, good faith is not expressly subsumed in the definition of reasonably equivalent value."). Put more directly, a plain reading of the statute establishes that even if a defendant had not acted in good faith but had given reasonably equivalent value, it

could not be liable for a constructively fraudulent transfer; instead, the plaintiff would have to resort to allegations that the transfer was made with the intent to hinder, delay or defraud.

The Trustee proffers a handful of cases from outside the Eighth Circuit holding that *equity investors* do not provide reasonably equivalent value in exchange for repayment of *investment* principal by a fraudster where the investors were aware of the fraud. (Omnibus Br. at 73-74.) None of these cases involved loans or antecedent debt. In the case of an equity investment, "reasonably equivalent value" is conveyed through release of the investor's claim for restitution of the amount of the principal invested under fraudulent circumstances. However, if the investor is aware of the fraud, a claim for restitution is barred as an equitable matter. *See, e.g,. Picard v. Estate of Stanley Chais (In re Bernard L. Madoff Inv. Servs., LLC)*, 445 B.R. 206, 226 (Bankr. S.D.N.Y. 2011) ("Only innocent investors who reasonably believed they were investing in a legitimate enterprise are entitled to claims for restitution."). That equitable bar on restitution has no application here, where Defendants were creditors rather than investors, and the "reasonably equivalent value" conveyed constituted release of each lender's contractual claim for repayment of its loans, rather than an investor's claim for restitution.

In sum, the Trustee does not dispute that the Borrower repaid an antecedent debt owed to Defendants or that repayment of antecedent debt constitutes "reasonably equivalent value" under the Bankruptcy Code and Minnesota law. The Borrower's dollar-for-dollar repayment of the principal constituted "reasonably equivalent value," and therefore the Trustee's claim for constructive fraudulent transfer fails as a matter of law.

> **2.      The Borrower Received Reasonably Equivalent Value in Exchange for the Payment of Interest.**

The Trustee also asserts that the Borrower did not receive reasonably equivalent value in exchange for payment of interest because, he argues, payments arising out of a fraudulent

scheme in excess of the principal invested are voidable. (Omnibus Br. at 75-76.) As noted in the Defendants' Motion to Dismiss, federal courts—including the court in *Carrozzella*, cited favorably by the Eighth Circuit Bankruptcy Appellate Panel in *Kendall*—have rejected this argument even in the context of an alleged Ponzi scheme, finding that such payments constitute reasonably equivalent value under the plain language of the Bankruptcy Code. *See, e.g., Daly v. Deptula (In re Carrozzella & Richardson)*, 286 B.R. 480, 492 (D. Conn. 2002) ("[W]e agree with the Bankruptcy Court that the Trustee failed to establish that the debtor did not receive reasonably equivalent value upon his payment of reasonable, contractual interest to the six Defendants. The fact that the Debtor was involved in a Ponzi scheme does not change our conclusion in this regard."); *Lustig v. Weisz and Assocs., Inc. (In re Unified Commercial Capital, Inc.)*, 260 B.R. 343, 351 (Bankr. W.D.N.Y. 2001) (explaining that public policy permits an investor to enforce a contract with an entity engaged in an alleged Ponzi scheme under certain circumstances).

The Trustee attempts to distinguish *Carrozzella* and *Unified Commercial Capital*, arguing that they do not apply where the transferee did not act in good faith and the transactions did not involve "commercially reasonable rates of return." The Trustee is mistaken.

First, as explained above, there is no good faith requirement to demonstrate reasonably equivalent value under the plain language of the Bankruptcy Code or Minnesota law. If the transfer was made for reasonably equivalent value—as is the case of repayment of an antecedent debt—the inquiry ends. Therefore, that argument fails at the outset.

Second, the amount of the interest rate is irrelevant. The Borrower's payment of interest pursuant to a loan agreement is reasonably equivalent value to the Borrower because it releases the Borrower from the obligation to pay accrued interest. Both section 548 and the Minnesota

Statute 513.43 define "value" to include satisfaction of an antecedent debt. The Trustee does not dispute that the Borrower voluntarily entered into these loan agreements with Defendants, and agreed to the interest rates contained in those agreements. Therefore, those loan agreements created an antecedent debt owed by the Borrower to Defendants. Because payment of accrued interest by the Borrower released the Borrower from its contractual obligation to pay that interest, the Borrower received reasonably equivalent value in exchange for those payments in the form of dollar-for-dollar reduction in the accrued interest the Borrower owed in connection with those loans.

Even if charging interest was held illegal for technical reasons, that would not change the fact that the Borrower received reasonably equivalent value when it satisfied its interest obligations on the loans at issue. In other words, there is no "interest rate" or "illegality" exception to the reasonably equivalent value rule. The Eighth Circuit Bankruptcy Appellate Panel's guidance on the subject bears emphasis:

> The mere fact that a contract is void, unenforceable, or illegal does not require a finding that there was no reasonably equivalent value given for purposes of § 548(a)(1)(B). As one Court has said, "there is nothing in the plain language of [§548] . . . suggesting an illegality exception to the 'reasonably equivalent value' requirement."

*Kaler v. Able Debt Settlement (In re Kendall)*, 440 B.R. 526, 532 (B.A.P. 8th Cir. 2010) (quoting *Daly v. Deptula (In re Carrozzella & Richardson)*, 286 B.R. 480, 491 (D. Conn. 2002)).

The Trustee cites no cases to the contrary. Instead, he refers the Court to cases from outside the Eighth Circuit rejecting *equity investors'* claims for profits from *equity investments* in Ponzi schemes. (*See* Omnibus Br. at 75-76.) The Trustee's reliance on these cases is misplaced. (*See* Motion to Dismiss at 19-21.) As with the "repayment of principal" cases discussed above, the vast majority of the Trustee's cases involve not lenders that charged interest on loans but

equity investors that made "false profits" on investments over and above the restitution claims they would otherwise have had for investments made under false pretenses. *See Gunten v. Neilson (In re Slatkin)*, 243 Fed. Appx. 255, 259 (9th Cir. 2007); *Scholes v. Lehmann*, 56 F.3d 750, 757 (7th Cir. 1995); *In re Bayou*, 362 B.R. 624, 636 (Bankr. S.D.N.Y. 2007); *Dicello v. Jenkins (In re Int'l Loan Network)*, 160 B.R. 1, 16 (Bankr. D.D.C. 1993); *In re Taubman*, 160 B.R. 964, 985 (Bankr. S.D. Ohio 1993). These cases have no application here, where the Borrower repaid antecedent debt pursuant to contract. Unlike the investors in the cases cited by the Trustee, the Borrower here did not pay any "false profits," but paid accrued interest payments that the parties had agreed upon.[1]

## C. The Trustee's Turnover and Accounting Claim (Count I) Should Be Dismissed Because the Transfers Are Not "Property of the Estate".

The Trustee does not dispute that his turnover claim is premature. Nor can he. The language of sections 541 and 542 of the Bankruptcy Code and Eighth Circuit authority interpreting those sections show, as a matter of law, that the Trustee cannot allege a critical element of his turnover claim—that the funds transferred to the Epsilon/Westford Defendants constitute "property of the estate." The Bankruptcy Code defines "property of the estate" as "all legal or equitable interests of the debtor in property *as of the commencement of the case*" as well as "[a]ny interest in property that the trustee recovers under section 329(b), 363(n), 543, 550, 553, or 723 of this title." 11 U.S.C. § 541(a)(1), (3) (emphasis added). The Complaint does not allege—and the Trustee's omnibus opposition does not contend—that at "the commencement of

---

[1] The Trustee cites only one case involving payment of interest on a loan. *See Conroy v. Shott*, 363 F.2d 90 (6th Cir. 1966). But *Conroy* is not controlling for several reasons. First, it was decided in the Sixth Circuit applying Ohio law. More importantly, the case addressed a claim for actual rather than constructive fraud and held that interest payments were recoverable where the transferor intended to defraud creditors *and* where defendant knew of the fraud. As such, *Conroy* does not apply in the constructive fraud setting. Finally, with respect to actual fraud, it is against the weight of authority discussed in section I.A, including *B.E.L.T., Inc. v. Wachovia*, 403 F.3d 474, 478 (7th Cir. 2005).

the case" (or now for that matter), the estate possessed any interest in the Epsilon/Westford Defendants' funds or that he has received a judgment entitling him to recover those funds under any of the pertinent sections.

Courts in the Eighth Circuit, including both the Bankruptcy Appellate Panel and this Court, have explained that "property of the estate" does not include property merely *alleged* to have been fraudulently transferred by the debtor. Rather, there must first be a judicial determination that the transfer was fraudulent and that the Trustee is entitled to recover it. *See Schroeder v. Rouse (In re Redding)*, 247 B.R. 474, 477 (B.A.P. 8th Cir. 2000); *In re Lofton*, 246 B.R. 604, 605 (Bankr. E.D. Ark. 2000); *In re Thielking*, 163 B.R. 543, 545 (Bankr. S.D. Iowa 1994); *Shields v. Crel, Inc. (In re Dartco, Inc.)*, 203 B.R. 285, 296 n.19 (Bankr. D. Minn. 1996). As there has been no such judicial determination here, the funds at issue are not "property of the estate" as a matter of law, and the Trustee's claim for turnover under section 542 must fail.

Moreover, the Trustee must establish the Epsilon/Westford Defendants' control over the property or its proceeds. *Brown v. Pyatt (In re Pyatt)*, 486 F.3d 423, 429 (8th Cir. 2007); *In re Schwab*, 378 B.R. 854, 855 n.1 (Bankr. D. Minn. 2007) ("The request for turnover would be denied in any event regarding the checking account balance and the accounts receivable because the debtor no longer had these when the trustee brought the motion."). Here, the Trustee cannot credibly assert that transfers made between 2001 and 2007, or their proceeds, are currently in the Epsilon/Westford Defendants' possession or control without undertaking a massive tracing analysis involving the Defendants and their investors.

The Trustee fails to address any of the above-referenced Eighth Circuit authority. Instead, he cites five bankruptcy court cases from outside the Eighth Circuit, claiming that the

courts in those cases allowed a turnover claim to be asserted alongside an avoidance claim.[2] But these cases are inapposite.[3] Three of these cases did not involve a motion to dismiss. Rather, in each case, the Court only reached the turnover claim after making evidentiary findings that the challenged transfers constituted "property of the estate." *See Mendelsohn v. Jacobowitz (In re Jacobs)*, 394 B.R. 646 (Bankr. E.D.N.Y. 2008); *Yoppolo v. Fifth Third Bank (In re Bostic)*, 171 B.R. 270 (Bankr. N.D. Ohio 1994); *Doyle v. Paolino (In re Energy Sav. Ctr., Inc.)*, 61 B.R. 732, 735 (E.D. Pa. 1986).

The remaining two cases likewise are not persuasive. Although both cases were decided at the pleading stage, neither case provided any analysis or explanation as to why the turnover claims were ripe for the court's consideration at that early stage without a finding by the Court that the challenged transfers constituted "property of the estate." *See Campbell v. Cathcart (In re Derivium Capital, LLC)*, 380 B.R. 429 (Bankr. D. S.C. 2006); *Pereira v. Grecogas Ltd. (In re Saba Enters., Inc.)*, 421 B.R. 626, 657-59 (Bankr. S.D.N.Y. 2009). Devoid of analysis as they are, these cases lend little, if any, support to the Trustee's position.

Each of these cases stands in sharp contrast to the numerous cases cited in the Epsilon/Westford Defendants' Motion to Dismiss—including several decided within the Eighth Circuit—explicitly analyzing the text of the turnover statute in the context of the Bankruptcy Code and explaining why a cause of action for turnover cannot lie until there is a judicial determination that the alleged transfers constitute property of the estate in control of the

---

[2] One of the decisions cited by the Trustee is distinguishable because there was no dispute in that case that the transfers were "property of the estate." In *Limor v. Buerger (In re Del-Met Corp.)*, 322 B.R. 781 (Bankr. M.D. Tenn. 2005), the challenged transfers to defendant took place after the bankruptcy petition was filed. Thus, there was no question that the transfers were property of the estate at the commencement of the bankruptcy. *See Shields v. Crel, Inc. (In re Dartco, Inc.)*, 203 B.R. 285, 296 n.19 (Bankr. D. Minn. 1996) ("Under 11 U.S.C. § 541(a)(1), 'all legal or equitable interests of the debtor in property as of the commencement of the case' pass into the estate.").

[3] The Trustee also argues that many Defendants challenge his turnover claims by citing cases involving use of the turnover statute as a stand-alone action to recover property. (Omnibus Br. at 95.) But that is not the case for the Epsilon/Westford Defendants' Motion to Dismiss.

defendant. *See, e.g., Velez Constr. Inc., v. Consol. Edison Co. (In re Andrew Velez Constr., Inc.)*, 373 B.R. 262, 273 (Bankr. S.D.N.Y. 2007) (dismissing a debtor's turnover of fraudulently transferred property claim because fraudulently transferred property is not subject to turnover until it has been recovered by the estate); *Liquidating Tr. of the Amcast Unsecured Creditor Liquidating Trust v. Baker (In re Amcast Indus. Corp.)*, 365 B.R. 91, 122 (Bankr. S.D. Ohio 2007) (dismissing a trustee's claim for turnover of property alleged to have been fraudulently transferred, and holding that a party cannot allege turnover in the alternative to fraudulent transfer for the same property); *Savage & Assoc., P.C. v. BLR Servs. SAS (In re Teligent, Inc.)*, 307 B.R. 744, 751 (Bankr. S.D.N.Y. 2004) (dismissing the trustee's turnover claim because fraudulently transferred property does not become property of the estate until after it has been recovered). Against the backdrop of this authority, the Trustee's turnover claim should be dismissed.[4]

**D.** **The Trustee's Claim for Unjust Enrichment (Count IX) Must Be Dismissed Because It Fails to State a Claim for Which Relief Can Be Granted.**

As demonstrated in the Epsilon/Westford Defendants' motion, the Trustee's claim for unjust enrichment (Count IX) fails because: (1) unjust enrichment does not occur when (as is the case here) a defendant receives payments to satisfy a contractual; (2) the doctrine of *in pari delicto* bars the Trustee's claim; and (3) the Trustee has an adequate remedy at law. (Motion to

---

[4] The Trustee also argues that pairing avoidance and turnover claims is appropriate for reasons of "judicial economy." (Omnibus Br. at 97.) That is a red herring. The claim is not ripe. Therefore, there is no economy to be gained. Further, he cites no authority for his argument. Although he references two cases from outside the Eighth Circuit and a citation from *Collier on Bankruptcy*, none of these authorities analyzes any potential judicial economy in bringing a turnover and avoidance claim together. In fact, he apparently cites *Woods & Erickson LLP v. Leonard (In re Avi, Inc.)*, 389 B.R. 721 (B.A.P. 9th Cir. 2008), and the *Collier* treatise for the unremarkable proposition that an avoidance action and a recovery action under Bankruptcy Code section 550 may be brought together. Defendants do not dispute that the Trustee may assert his section 550 claims for recovery concurrently with his avoidance claims. Further, neither *Woods* nor the *Collier* treatise section references a claim for turnover. The *Pereira* decision, discussed *supra*, did not discuss judicial economy.

Dismiss at 25.)  As demonstrated below, the Trustee's Memorandum in Opposition fails to rebut these arguments.

1.    **Unjust Enrichment Does Not Occur When a Defendant Receives Payments To Satisfy a Contractual Obligation.**

The Trustee mischaracterizes the Epsilon/Westford Defendants' argument and ignores the cases cited by the Epsilon/Westford Defendants that are directly on point.

The Trustee declares that "Defendants espouse a narrow definition of unjust enrichment and contend the Trustee must allege and prove the individual Defendants acted illegally or unlawfully."  (Omnibus Br. at 99.)  That characterization is wrong.  The Epsilon/Westford Defendants' brief stated the well-established rule in Minnesota that, where a defendant receives payments to satisfy a contractual obligation, a plaintiff cannot recover under a theory of unjust enrichment.  *See Schaaf v. Residential Funding Corp.*, 517 F.3d 544, 554 (8th Cir. 2007) (dismissing an unjust enrichment claim where the defendant was entitled to the proceeds under the contract and the plaintiff could not allege otherwise).  This is because the defendant in that situation is entitled to the money it received pursuant to the contract.  There is nothing "unjust" about receiving that to which you are entitled.  Therefore, repayment of a loan is not, and cannot be, unjust enrichment.  *Id.*; *see also B.E.L.T., Inc.*, 403 F.3d at 477 ("Anyway, repayment of a loan is not 'unjust' enrichment.").  The Trustee does not address this bedrock principle.

Instead, the Trustee pulls quotes from two Minnesota Supreme Court cases to create the misleading impression that the doctrine of unjust enrichment has almost limitless reach.  (*See* Omnibus Br. at 100.)  One case is inapplicable and the other supports the Epsilon/Defendants' position.  The Trustee's first case, *Brand & Co. v. Williams*, did not involve a transfer that was made pursuant to a contract.  13 N.W. 42 (Minn. 1882).  Moreover, the Court made plain that the doctrine does not apply where the defendant has a "legal" "right" to the money, which is the case

when the money is paid over pursuant to a contract. Among other things, The Trustee's other case, *Cady v. Bush*, expressly held that unjust enrichment cannot be invoked when "defendants did no more than exercise rights which were granted to them under the plain provisions of their written agreement." 166 N.W.2d 358, 361-62 (Minn. 1969). That is all that the Epsilon/Westford Defendants did here and, therefore, the result should be no different.

Moreover, several cases decided after *Brand* and *Cady* have honed the rhetoric used in those cases to make clear that a plaintiff must show that the defendant was "enriched in the sense that the term 'unjustly' could mean illegally or unlawfully." *See, e.g.*, *Servicemaster of St. Cloud v. GAB Business Servs., Inc*., 544 N.W.2d 302, 306 (Minn. 1996); *Hamann v. Park Nicollet Clinic*, 792 N.W.2d 468, 473 (Minn. Ct. App. 2010); *Custom Design Studio v. Chloe, Inc.*, 584 N.W.2d 430, 433-34 (Minn. Ct. App. 1998); *Ramette v. Digital River, Inc. (In re Graphics Tech., Inc.)*, 306 B.R. 630, 637 (B.A.P. 8th Cir. 2004). Receiving loan repayments—or any other payments pursuant to contract—is neither illegal nor unlawful. *See, e.g., Schaaf*, 517 F.3d 544, 554

*Schaaf v. Residential Funding Corp.* provides an apt illustration, a case the Trustee ignores. In that case, the Eighth Circuit specifically held that "unjust enrichment does not occur when a defendant is enriched by what he is entitled to under a contract or otherwise." 517 F.3d 544, 554 (8th Cir. 2007). There, plaintiff investors alleged that United Homes, Inc. ("United"), in whose securities plaintiffs invested, used proceeds of the offerings to pay off some of its debt to Heller Financial, Inc. ("Heller"), and that these proceeds unjustly enriched Heller. *Id*. at 553. Applying Minnesota law, the court dismissed the investors' unjust enrichment claim because they failed to allege that Heller was not entitled to the proceeds it received from United. To the contrary, the court held, the complaint alleged that these funds had enabled United to reduce its

debt to Heller by half. The court stated, "[t]he loan agreement between United and Heller provided a contractual basis for Heller's receipt of the funds. Hence, the district court properly dismissed the investors' claim for unjust enrichment." *Id.* at 554. That result should obtain here. Like the defendant in *Schaaf*, the funds at issue were paid to the Epsilon/Westford Defendants pursuant to a loan agreement to reduce a debt owed. *See also Stein v. O'Brien*, 565 N.W.2d 472, 474-75 (Minn. Ct. App. 1997) (holding that an unjust enrichment claim must fail because there was a valid contract that governed the parties' partnership rights and obligations); *Midwest Sports Mktg., Inc. v. Hillerich & Bradsby of Canada, Ltd.*, 552 N.W.2d 254, 268 (Minn. Ct. App. 1996) (same); *B.E.L.T.*, 403 F.3d at 477 ("repayment of a loan is not 'unjust' enrichment").

Indeed, the Trustee cites only one case in which a court overruled a motion to dismiss an unjust enrichment claim where the payment at issue was made pursuant to a valid contractual obligation and with no allegations of wrongdoing.[5] In *S.E.C. v. Brown*, 643 F. Supp. 2d 1077 (D. Minn. 2009), the District Court for District of Minnesota surmised that the Minnesota Supreme Court might not require an unjust enrichment claim to include allegations that the defendant committed illegal or unlawful conduct, and ultimately concluded that it would not require the plaintiff in that case to do so at the pleading stage. *Id.* at 1083-84. Respectfully, *Brown* was wrongly decided. It is against the great weight of authority that payments made pursuant to a contract cannot be recovered under a theory of unjust enrichment. The court likely reached the

---

[5] The majority of the other cases on which the Trustee relies involve unjust enrichment claims where the transfer at issue was a gift or was made for little or no consideration. *See In re Honeywell/Alliant Techsystems Fed. Credit Union v. Buckhalton*, No. C2-99-1194, 2000 WL 53875 at *1 (Minn. Ct. App. Jan. 25, 2000) (money sought to be recovered was given as a gift); *Kranz v. Koeing*, 484 F. Supp. 2d 997, 1001 (D. Minn. 2007) (property at issue was transferred to defendants for no consideration); *Hecht v. Malvern Preparatory Sch.*, 716 F. Supp. 2d 395, 402-03 (E.D. Pa. 2010) (property at issue was a charitable donation). Additionally, *Hartford Fire* and *Wells Electric* are factually distinguishable—neither case addressed the issue of whether a defendant can be unjustly enriched by receiving loan repayments. *See Hartford Fire Ins. Co. v. Clark*, 727 F. Supp. 2d 765, 778 (D. Minn. 2010) (defendant allegedly unjustly enriched by taking a percentage of fraudulently obtained revenue); *Wells Electric, Inc. v. Schaper*, 2006 WL 2807179 *6 (D. Minn. Oct. 3, 2006) (permitting unjust enrichment claim to proceed where plaintiff alleged that defendant gained a competitive advantage by disrupting the business relationships of the plaintiff).

wrong decision because the parties did not bring cases like *Schaaf* or the other cases cited above to its attention. *See id.* The court also ignored Minnesota state court decisions that make clear that the plaintiff must show that the defendant was unjustly enriched by illegal or unlawful conduct in order to pursue an unjust enrichment claim. *See, e.g.*, *Hamann v. Park Nicolett Clinic*, 792 N.W.2d 468, 473 (Minn. Ct. App. 2010) (dismissing unjust enrichment claim where there were no allegations that defendant "acted with an illegal or fraudulent motive").

In short, the overwhelming weight of the authority in Minnesota does not permit a plaintiff to proceed on a theory of unjust enrichment to recover funds paid to satisfy a contractual obligation, and the Court should not permit the Trustee to do so here.

### 2. The Doctrine of *In Pari Delicto* Bars the Trustee's Claim.

Even had the Trustee stated a valid claim for unjust enrichment (which he has not), that claim is barred on the face of the pleadings by the doctrine of *in pari delicto*. The Trustee addresses this argument only in a passing reference in a footnote.[6] (*See* Omnibus Br. at 113 n.55.) In that footnote, the Trustee does not dispute that *in pari delicto* would bar the Trustee's unjust enrichment claim if it were being brought on behalf of the debtor's estate. Instead, the Trustee attempts to avoid the application of *in pari delicto* by arguing that it is asserting its unjust enrichment claim pursuant to 11 U.S.C. § 544(b) and is standing in the shoes of a creditor of PCI (rather than those of PCI or the Borrower). The Trustee's assertion fails.

The Trustee's Complaint nowhere indicates that he is bringing the unjust enrichment claim pursuant to 11 U.S.C. § 544(b). Nor does the Complaint assert that he is bringing his claim on behalf of creditors of PCI or of the Borrower. To the contrary, it appears that the

---

[6] The Trustee devotes more time to responding to those defendants that argue that *in pari delicto* bars all of Trustee's causes of action, including his fraudulent transfer claims. The Epsilon/Westford Defendants do not make that argument at this time and, instead assert the applicability of *in pari delicto* to only the Trustee's unjust enrichment claims. Accordingly, the Epsilon/Westford Defendants ask the Court to analyze *in pari delicto* in the narrow and precise context of the Trustee's unjust enrichment claim.

Trustee brings his claim for unjust enrichment under 11 U.S.C. § 541 as a successor to the Borrower's interest. In any event, this ambiguity highlights the inadequacy with which the Trustee has pled this claim and, therefore, it must be dismissed for failure to comply with *Twombly*, *Iqbal* and Rule 9(b).

Moreover, the Trustee does not cite to any authority within this circuit showing that he even has standing to bring unjust enrichment claims on behalf of the Borrower's creditors. Without this standing, any unjust enrichment claim brought by the Trustee would have to be on behalf of the Borrower under section 541. As the Trustee implicitly concedes, though, any unjust enrichment claim brought on behalf of the Borrower is barred by the doctrine of *in pari delicto*.

> ### 3. The Trustee Cannot Assert a Claim for Unjust Enrichment When He Has an Adequate Remedy at Law.

Minnesota courts specifically reject unjust enrichment claims when, as is the case here, statutory standards for recovery are set by the legislature. *See U.S. Fire Ins. Co. v. Minnesota State Zoological Bd.*, 307 N.W.2d 490, 497 (Minn. 1981) (dismissing unjust enrichment claim because, if equitable relief were granted, statutory restrictions would be circumvented); *Southtown Plumbing, Inc. v. Har-Ned Lumber Co.*, 493 N.W.2d 137, 140 (Minn. Ct. App. 1992) (remedy in equity is not available "where statutory standards for recovery are set by the legislature."); *see also Curtis v. Altria Group, Inc.,* 792 N.W.2d 836, 852-53 (Minn. Ct. App. 2010) (affirming trial court's dismissal of unjust enrichment claim where a statutory remedy existed). The Minnesota legislature has established the statutory standards for recovery for fraudulent transfers by enacting MUFTA. Accordingly, the Trustee cannot utilize unjust enrichment as a means of circumventing those standards.

The Trustee argues that Federal Rule of Civil Procedure 8(d)(2) permits him to plead in the alternative at this stage of the proceedings and attempts to distinguish the cases that Defendants cite on the ground that they did not arise in the pleading context. In focusing on Rule 8(d)(2), however, the Trustee misses the larger import of the cases upon which Defendants rely: Simply put, because the Minnesota legislature has set the standards of recovery for fraudulent transfers, the Trustee cannot use unjust enrichment as a way to circumvent those standards—in the alternative or ever.

Thus, the Trustee's reliance on *Daigle v. Ford Motor Co*., 713 F. Supp. 2d 822 (D. Minn. 2010) is misplaced. While the court in *Daigle* did permit an unjust enrichment claim to survive a motion to dismiss where the plaintiff pled a breach of warranty claim as an alternative theory of liability, the court did not undertake any analysis of the Minnesota cases holding that unjust enrichment claims cannot survive where there is an adequate remedy at law or where standards for recovery are set by the legislature. Moreover, *Daigle* did not overturn or distinguish the many other cases in the same court that have dismissed unjust enrichment claims because there was an adequate remedy at law.[7] *See, e.g., Maranda v. Group Health Plan, Inc*., 2008 WL 2139584, at *3 (D. Minn. May 20, 2008) (holding that plaintiffs may not assert an unjust enrichment claim because there are legal remedies available); *Frank v. Gold'N Plump Poultry, Inc*., No. 07-4655, 2007 WL 2780504, at *11 (D. Minn. Sept. 24, 2007) (holding that plaintiffs cannot sue for unjust enrichment as well as statutory labor claims because unjust enrichment is not available where statutory standards for recovery exist); *Arena Dev. Group, LLC v. Naegle Commc'ns, Inc.*, No. 06-2806, 2007 WL 2506431, at *11 (D. Minn. Aug. 30, 2007) (dismissing

---

[7] The court in *Daigle* did attempt to distinguish the Eighth Circuit's decision in *Drobnak* on the basis that in *Drobnak* all claims were dismissed. *Daigle*, 713 F. Supp. 2d at 828 n.1.

plaintiffs' claim for unjust enrichment where the Uniform Fraudulent Transfer Act provided a remedy at law). This court should not rely on *Daigle* in the face of Minnesota case law and conflicting District of Minnesota cases holding that unjust enrichment cannot be alleged where, as is the case here, there is an adequate remedy at law.

### E. The Trustee Has Agreed to Dismiss His Claim for Lien Avoidance.

The Epsilon/Westford Defendants moved to dismiss the Trustee's claim for lien avoidance (Count VIII) because the Trustee had not alleged that Defendants asserted a lien or even filed a claim. (*See* Motion to Dismiss at 24.) In his Supplemental Memorandum in Opposition to Defendants' Motions to Dismiss, the Trustee stated that prior to argument on the pending Motion to Dismiss, he would dismiss Count VIII without prejudice. (Separate Br. at 2 n.1.) The Epsilon/Westford Defendants consent to this dismissal.

### F. Counts IV Through VII and IX Are Time-Barred.

#### 1. The Complaint Was Not Timely Commenced as to Several Defendants Under Minnesota Law.

The Trustee's claims arising under Minnesota law (Counts IV through VII and IX) must be dismissed as untimely because they were not "commenced" within two years of the filing of the bankruptcy petition. To determine the date of commencement when the underlying action arises under state law, federal courts follow state substantive law. *MW AG, Inc. v. N.H. Ins. Co.*, 107 F.3d 644, 646 (8th Cir. 1997); *Walker v. Armco Steel Corp.*, 446 U.S. 740, 752-53 (1980). The Minnesota Rules of Civil Procedure define "commence" to include service of the summons and complaint. Minn. R. Civ. P. §§ 3.01(a); 3.02. The Borrower's bankruptcy petition was filed on October 15, 2008. Thus under section 546(a), the Trustee had until October 15, 2010, to file

and serve the instant adversary proceeding.[8] However, some of the Epsilon/Westford Defendants were not served until October 27, 2010 or later.[9] As a result, the action was not "commenced" by PCI within the two-year deadline provided by section 546(a) and was timely commenced by PL only with respect to Steve Stevanovich, Westford Special Situations Fund, L.P., Westford Asset Management LLC, Epsilon Global Active Value Fund II-B, L.P., Epsilon Investment Management LLC, and Epsilon Global Active Value Fund L.P.

The Trustee counters this argument with several erroneous contentions.

First, he contends that the governing definition of "commencement" is found in Federal Rule of Civil Procedure 3, which defines "commencement" as the date of the filing of the complaint. He claims that federal courts addressing this issue in the context of an adversary proceeding have "uniformly" applied the federal commencement rule instead of the state law commencement rule. Not one of the cases he cites supports that claim.

The Trustee first cites *Klesalek v. Klesalek (In re Klesalek)*, 307 B.R. 648 (B.A.P. 8th Cir. 2004), which held that Federal Rule of Civil Procedure 3 only requires a complaint to be filed to "commence" a case. Contrary to the Trustee's characterization of *Klesalek*, the court did not hold that a "state commencement rule was inapplicable in bankruptcy court." (Omnibus Br. at 17.) In fact, there was no state commencement rule at issue in the case since the parties *agreed* that Federal Rule 3 applied to the action. The Trustee also cites *Slone-Stiver v. Sec. Nat'l Bank & Trust Co. (In re Tower Metal Alloy Co.)*, 196 B.R. 266, 271 (Bankr. S.D. Ohio 1996).

---

[8] PCI's bankruptcy petition was filed on October 11, 2008. Therefore, any adversary proceedings arising out of PCI's bankruptcy were untimely if commenced after October 11, 2010.

[9] PCI did not serve any of the Epsilon/Westford Defendants timely. PL did not timely serve Westford Special Situations Master Fund, L.P., Westford Global Asset Management Ltd., Westford Special Situations Fund Ltd., Epsilon Global Master Fund, L.P., Epsilon Global Active Value Fund Ltd., Epsilon Global Master Fund II, L.P., a/k/a Epsilon Global Master Fund II, L.P., Sub 1, Epsilon Global Active Value Fund II-B Ltd., Epsilon Global Asset Management Ltd., Epsilon Global Active Value Fund III Ltd., or Stafford Towne Ltd.

*Slone-Stiver*, like *Klesalek*, did not involve the interplay of state and federal commencement rules, because the original complaint only included claims arising under federal law. *Id*. at 268. Therefore, in determining whether the original complaint had been timely filed, the court looked only to Rule 3 and the date of the filing of the complaint. *Id*. at 271. Also cited by the Trustee is *Henkin v. Rockower Brothers, Inc*., 259 F. Supp. 202, 204-05 (S.D.N.Y. 1966). In that case, defendant argued that plaintiff's complaint was untimely because it was not filed and served before the statutory bar date as required by state law. The court disagreed, finding that filing alone was sufficient because the complaint—a preference action brought pursuant to section 11(e) of the Bankruptcy Act—arose under federal law rather than state law, and was therefore governed by Federal Rule of Civil Procedure 3. But the *Henkin* court did not hold that the federal commencement rule applied where the claim arose under state law, as is the case here.

The Trustee also takes issue with Defendants' citation to *Walker*, arguing that its holding is limited to diversity actions. The Trustee is mistaken. As Defendants explained in their Motion to Dismiss, the basis for the Court's jurisdiction is irrelevant to this issue. The Eighth Circuit itself has explained that the *Walker* rule still applies even where the jurisdictional basis is not diversity. *Anderson v. Unisys Corp*., 47 F.3d 302, 309 (8th Cir. 1995) ("There is no logical reason to make a distinction" about which commencement rule applies based on the source of the court's jurisdiction); *Appletree Square I, Ltd. P'ship v. W.R. Grace & Co*., 29 F.3d 1283, 1286 (8th Cir. 1994) ("[I]t is the source of the right sued upon, and not the ground on which federal jurisdiction over the case is founded, which determines the governing law.").

The Trustee does not provide a meaningful analysis of these Eighth Circuit cases, and simply asserts they are "inapposite" without further explanation. (Omnibus Br. at 17.) Instead, he argues that the Trustee's section 544 strong-arm powers "are substantive rights granted by the

Bankruptcy Code and come into existence with the filing of the bankruptcy petition." (Omnibus Br. at 17-18, citing *Summit Secs., Inc. v. Sandifur (In re Metro. Mortg. & Secs. Co., Inc.)*), 344 B.R. 138, 141 (Bankr. E.D. Wash. 2006). But the Trustee ignores the substantial number of federal cases expressly rejecting that interpretation of section 544 and holding that section 544 is simply an enabling statute that "creates a status and allows applicable nonbankruptcy law to determine the rights that accrue as a result of the created status." *Grubbs Construction Co. v. Fla. Dept. of Revenue (In re Grubbs Constr. Co.)*, 321 B.R. 346, 350 (Bankr. M.D. Fla. 2005); *see also Richardson v. Countrywide Home Loans (In re Gregory)*, 316 B.R. 82, 92 (Bankr. W.D. Mich. 2004) ("Section 544(a)(1) is nothing more than an enabling statute.…Section 544(a)(1) does not state what the [creditor's] rights might be with respect to such transfers. Those rights are established by applicable state law."); *Wedtech Corp. v. Denlinger (In re Wedtech Corp.)*, 121 B.R. 286, 292 (Bankr. S.D.N.Y. 1990) ("It is well-settled that section 544(b) does not provide the trustee with any independent substantive rights…. Rather, the section is simply a conduit to state law substantive remedies.").

Although a small number of federal cases have followed *Summit*'s interpretation of section 544, those cases are not well-reasoned because they fail to explain why section 544 confers substantive rights on the Trustee. *See, e.g., In re Lair*, 235 B.R. 1, at *50 (Bankr. M.D. La. 1999); *Ramirez v. Rodriguez (In re Ramirez)*, 413 B.R. 621, 628 (Bankr. S.D. Tex. 2009). Therefore, the Court should reject the Trustee's argument that section 544 confers substantive rights on the Trustee, and follow the better-reasoned cases holding that section 544 merely provides the Trustee with a vehicle to assert the underlying state substantive rights.

The Trustee next argues that the *Walker* rule has no application in federal question cases according to the Supreme Court's decision in *West v. Conrail*, 481 U.S. 35 (1987). Although the

*West* case is instructive, it does not support the Trustee's position. In *West*, the underlying cause of action was brought pursuant to the federal Railway Labor Act, which did not contain an express statute of limitations provision. Accordingly, the Court found it appropriate to borrow a statute of limitations provision from a related federal statute. However, the Court cautioned that the mere act of borrowing a statute of limitations from one federal statute to fill the gap in another federal statute does not require that the borrowed statute's service provisions also be adopted. *Id.* at 38. The Court also noted that where the underlying cause of action "is based on state law" and federal jurisdiction arises from diversity of citizenship, the state law's service rules must also be adopted. *Id.* at 39 n.4, citing *Walker v. Armco Steel Corp.*, 446 U.S. 740, 752-53 (1980). The Court reaffirmed that this requirement does not apply to "federal-question cases."

The *West* case not only fails to support the Trustee's position, but in fact provides further support for the Epsilon/Westford Defendants' argument that the *Walker* rule applies here. As a preliminary matter, it is unclear whether the *West* Court's analysis of state causes of action is binding since the facts in *West* related exclusively to federal statutes, and therefore, the Court's discussion of *Walker* was not essential to the Supreme Court's holding.

In any event, the Supreme Court expressly acknowledged the importance of "[r]espect for the State's substantive decision that actual service is a component of the policies underlying the statute of limitations" and that such service rules should "be considered part and parcel of the statute of limitations." *Id.* at 39 n.4. Although the Supreme Court limited its discussion of this rule to diversity cases, and noted that it does not apply to "federal-question cases," it did not address whether the rule should be applied to state law causes of action arising in such federal question cases—such as the present case. Had the Supreme Court reached that question, based

on its discussion of the deference due to state law service requirements, it likely would have found such state law service provisions applicable. Finding state service provisions applicable would also be consistent with the Eighth Circuit's analysis in *Appletree*—which was decided after *West*—that "the rationale of *Walker* does not change 'solely because of the fortuity' that [plaintiff] pleaded a federal claim along with state claims." *Id.*[10]

For all of these reasons, *Walker* applies to render the commencement date for purposes of section 546 as the date of service, and therefore the Trustee's state-law causes of action are untimely and must be dismissed.

> 2. **Even If the Trustee Had Timely Filed His Claims Under Section 546(a), the Statute of Limitations Can Only Reach Back From the Date of "Commencement" Under State Law.**

Even if this Court finds that the Trustee's state-law claims were timely commenced under section 546, his claims still must be viable under state law. 11 U.S.C. § 544(b). The relevant Minnesota statutes of limitations are six years for both fraudulent transfer and unjust enrichment claims. Minn. Stat. §§ 541.05 subd. 1(2); 541.05 subd. 1(1); *Block v. Litchy*, 428 N.W.2d 850, 854 (Minn. Ct. App. 1988). Therefore, absent tolling, any of the Trustee's claims arising more than six years before the date of commencement of the action are barred by the Minnesota statute of limitations.

The Trustee contends that limitations period is tolled for two years following the filing of the Bankruptcy Petition pursuant to section 546(a). However, the plain language of section 546(a) does not contain any tolling provisions. Instead, section 546(a) provides, in pertinent part:

---

[10] This is further bolstered by the strong position that state law trumps generalized federal rules of equity in bankruptcy cases. *See Butner v. United States*, 440 U.S. 48 (1979).

An action or proceeding under section 544, 545, 547, 548 or 553 of this title may not be commenced after the earlier of –

(1) the later of –

(A)     2 years after the entry of the order for relief;

There is no language in section 546(a) tolling the underlying state statute(s) of limitations governing state claims brought pursuant to section 544.  The absence of such tolling language is telling since Congress certainly knows how to toll a statute of limitations for a Trustee's claims and has done so expressly in other sections of the Bankruptcy Code.  *See, e.g.*, 11 U.S.C. § 108 (tolling a Trustee's nonbankruptcy claims for two years following the filing of a Bankruptcy petition).  Congress's refusal to include similar language in section 546 is further proof that section 546 was not intended to be a tolling statute.

Instead, section 546(a), entitled "Limitations on Avoiding Powers," simply serves as a separate statute of limitations on the Trustee's avoidance powers.  *See also McCuskey v. Cent. Trailer Servs., Ltd. (In re Rose Way, Inc.)*, 37 F.3d 1329, 1333 (8th Cir. 1994) ("Section 546(a)(1) is a provision of limitation, not a provision designed to allow the chapter 7 trustee to maximize recovery for the chapter 7 estate.  The purpose of this section then, like most statutes of limitations, are to bring finality to an issue and to prevent stale claims."); *Bergquist v. Vista Dev., Inc. (In re Quality Pontiac Buick GMC Truck, Inc.)*, 222 B.R. 865, 869 (Bankr. D. Minn. 1998) (Kishel, J.) ("[T]he Bankruptcy Code expressly places temporal limits on the trustee's right to sue, in § 546(a).").

The Trustee's confusion is understandable.  As he notes in his opposition brief, several courts have held that section 546(a) serves as a tolling statute.  (*See* Omnibus Br. at 13-14.) However, none of these cases parses the plain language of section 546(a).  Instead, they rely on policies and other considerations that have no basis in a plain-language analysis.  For example,

the Trustee cites several cases stating that section 546(a) gives a newly-appointed trustee some "breathing room" before he has to file an adversary proceeding. (Omnibus Br. at 13-14.) The Trustee notes that such "breathing room" is especially important in fraud cases, where the debtor was controlled by wrongdoers with little incentive to bring avoidance lawsuits. (Omnibus Br. at 14). However, this "breathing room" concept, and the alleged Congressional intent behind it, are nowhere to be found in the plain language of section 546(a), and therefore the cases cited by the Trustee should be rejected.

Further, the Eighth Circuit itself has rejected a comparable policy analysis of 546(a). *See McCuskey v. Cent. Trailer Servs., Ltd. (In re Rose Way, Inc.)*, 37 F.3d 1329 (8th Cir. 1994). In *McCuskey*, the trustee argued that the policy of allowing a Chapter 7 trustee to carry out his duties to maximize the Chapter 7 estate should outweigh the policies underlying a statute of limitations. The Eighth Circuit rejected the trustee's position:

> [T]here is no indication anywhere in the Bankruptcy Code or the policies underlying § 546(a)(1) that Congress intended courts construing § 546(a)(1) to make the well-established purposes of statutes of limitations subservient to considerations of a chapter 7 trustee's ability to pursue actions to maximize the chapter 7 estate after a case is converted from chapter 11. In our view, if Congress had intended such an interpretation, it would have explicitly provided for it.

*Id.* at 1333. Although the *McCuskey* decision arose out of a conversion from a Chapter 7 to a Chapter 11, the Eighth Circuit's statutory analysis of section 546(a) is equally applicable to this case. The plain language of the statute, in concert with the policies underlying the statute of limitations in section 546(a), outweigh the Trustee's desire to maximize recovery for the estate under Chapter 7 or 11.[11]

---

[11] The Trustee mischaracterizes the Court's holding in *Meyers v. Raynor (In re Raynor)*, 617 F.3d 1065, 1069-71 (8th Cir. 2010). The *Raynor* court did not hold that section 546(a) tolls underlying statutes of limitations applicable to state claims brought by the Trustee pursuant to section 544(b). Rather, *Raynor* simply stands for the

Even this Court has questioned the tolling presumption that other courts have applied to section 546. In *Bergquist v. Vista Dev., Inc. (In re Quality Pontiac Buick GMC Truck, Inc.)*, 222 B.R. 865 (Bankr. D. Minn. 1998) (Kishel, J.), this Court held that section 546(a) is a statute of limitation for a Trustee's avoidance powers. But the Court also acknowledged that the question of whether section 546(a) tolls the underlying state statute of limitations is unclear: "Whether the state statute of limitations cumulates with § 546(a) must be left for future determination, in another proceeding." *Id.* at 870 n.11. Consistent with the plain meaning of the statute, and the policy analysis expressed by the Eighth Circuit, the Court should take this opportunity to rule that section 546(a) is *not* a tolling statute and thus does not toll state statutes of limitations. Accordingly, any of the Trustee's state-law claims arising more than six years before service on the Epsilon/Westford Defendants are barred by the statute of limitations and must be dismissed.

### 3. The Trustee's Claims Cannot, and Should Not, Be Tolled.

There are no grounds on which the Trustee's claims can be tolled. In his Complaint, the Trustee alleges that all limitations periods are tolled by "Petters [sic] breach of fiduciary duty in failing to disclose the fraud, the actions of Petters and his Associates in fraudulently and intentionally concealing the fraud, and the adverse domination of PCI, PGW, and other debtor entities by Petters." (Complaint ¶ 90.) The Epsilon/Westford Defendants understand that other Defendants have asserted the same arguments raised by the Epsilon/Westford Defendants against tolling the Trustee's claims. Rather than burden the Court with additional argument on these

---

(continued…)

proposition that a Trustee must bring all adversary proceedings within two years of the Bankruptcy petition date pursuant to section 546(a). *Id.* at 1069. It did not reach the tolling question.

points, the Epsilon/Westford Defendants join the statute of limitations sections of the motions to dismiss and reply briefs filed by those defendants.[12]

In sum, the Trustee's tolling argument fails for three reasons. First, the applicable statute of limitations for claims based on a statute is six years, and does not include a discovery period. Minn. Stat. § 541.05 subd. 1(2). Second, the Trustee misconstrues equitable tolling based on fraudulent concealment. That Tom Petters misused the proceeds of the loans he received from the Epsilon/Westford Defendants does not mean that his repayment of the loans and contractual interest likewise were fraudulent, especially since they were disclosed in the public record and not concealed in any way. Third, the Trustee does not, and cannot, allege that the Epsilon/Westford Defendants participated in the fraud or have misbehaved such that the imposition of equitable remedies against them is warranted.

Because there is no basis to toll the statute of limitations, the Trustee's state-law claims are time-barred and must be dismissed.

## II. THE COMPLAINT SHOULD BE DISMISSED FOR FAILURE TO PLEAD SUFFICIENT FACTS AND DISTINGUISH BETWEEN PCI AND THE BORROWER.

The Trustee attempts to excuse its failure to plead sufficient facts by contending that the "Eighth Circuit recognizes a relaxed pleading standard for Rule 9(b) when a fraud claim arises in a bankruptcy proceeding" because of "the trustee's lack of knowledge concerning acts of fraud that the debtor committed." (*See* Separate Br. at 12.) Regardless of whether such a relaxation of pleading standards may be appropriate under other circumstances, it would be entirely inappropriate here, given that the Trustee has been investigating the debtors' conduct for more

---

[12] The Defendants that have raised these arguments and in whose motions to dismiss and reply briefs the Epsilon/Westford Defendants join are: Opportunity Finance, the Northwestern Foundation, General Electric Capital Corporation, Don Aron, Dean Vlahos, Marcellus Knoblach, Lynn Isaac, Circle F Ventures, LLC, and the Employee Defendants in the Joint Defense Group (*see* list at Appendix A of Mary Pernula's Motion to Dismiss (Adversary No. 10-04366)).

than two years with extensive assistance from a national accounting firm, PricewaterhouseCoopers LLP ("PwC").

The Trustee first retained PwC on November 11, 2008 (in his role as receiver) to perform, among other things, forensic accounting services in connection with the Petters entities' fraud. (*See* ECF No. 808 "The PwC Interim Report December 15, 2010" at ¶ 1.) On September 24, 2010, PwC was hired in this bankruptcy proceeding to continue its investigation of the Petters entities. (*Id*. at ¶ 3.) A primary focus of PwC's work was to analyze the investor activity at issue in this adversary proceeding. (*Id*. at ¶ 9.) As part of its investigation, PwC identified and analyzed accounting records, email and user files, third party records and bank transaction data to trace investor notes payable activity. (*Id*. at ¶ 10.) PwC also "analyze[d] the flow of funds to, from, and between" the various Petters' entities, including PCI and the Borrower. (*Id*. at ¶ 5.) In addition, PwC performed "targeted research" relating to "other companies, individuals or assets of interest," including some of the specific Epsilon/Westford Defendants. (*Id*. at ¶ 118 (identifying Stafford Towne, Ltd., Epsilon Investments, LLC, and Steve Stevanovich as such targets).) PwC gathered the equivalent of approximately 560,332 banker boxes of data and documentation in its initial analysis. (*Id*. at ¶ 400.)

In light of the duration and extent of these investigative activities, the Trustee's claim that he "has not had the benefit of discovery" is simply not true. (Separate Br. at 10.) Indeed, under these circumstances, with more than two years of investigation already conducted, the Trustee cannot plead ignorance or helplessness as a defense for his failure to plead his allegations with specificity. As the court in *In re Hollis* (a case cited by the Trustee) acknowledged, "[A]s an outsider to the transactions complained of, the Trustee may be impaired but he is not disabled." *In re Hollis*, 83 B.R. 588, 590 (Bankr. E.D. Ark. 1988) (requiring the Trustee to replead with any

and all other facts that he might have); *see also In re Old Carco LLC*, 435 B.R. 169, 192 (Bankr. S.D.N.Y. 2010) (refusing to relax the standard for pleading fraud where the Trustee had ample opportunity to investigate any potential claims prior to filing the complaint).

Among the numerous deficiencies in the Trustee's pleading, the Trustee's failure to distinguish between PCI and the Borrower is perhaps the most egregious.[13] Instead of utilizing his access to ample information to distinguish between PCI and the Borrower and otherwise satisfy his pleading requirements, the Trustee has set forth his allegations in a manner that effectively obscures his theory of liability. This, in turn, deprives the Epsilon/Westford Defendants of the notice to which they are entitled and impermissibly hampers them in their efforts to prepare a defense. *See Greenwood v. Dittmer*, 776 F.2d 785, 789 (8th Cir. 1985) (stating that one of the primary purposes of Rule 9(b) "is to facilitate a defendant's ability to respond to and prepare a defense to plaintiff's charges"); *In re Old Carco LLC*, 435 B.R. at 191 (stating that one purpose of Rule 9(b) is "to give fair notice to a defendant of the claim to enable it to prepare its defense"). Accordingly, the Court should require the Trustee to specify which debtor he is referring to with respect to each allegation in the Complaint.

The distinction between PCI and the Borrower is important. This is because the defenses available to Defendants differ depending on which debtor is claiming to have made the particular

---

[13] For example, the Trustee, through PwC, has long had access to all of PCI's and the Borrower's bank statements and wire transfers, which should permit him to specifically identify from and to whom each of the allegedly fraudulent transfers occurred, which despite his claims otherwise (Separate Br. at 9) the Trustee has not done. The exhibits that the Trustee points to as identifying the "parties to the fraudulent transfers"—Exhibits J and K—list the transfers to the Borrower and to PCI, but do not list any transfers from either debtor to any Epsilon/Westford Defendant. The Trustee has no basis for not providing this basic information. *See Official Comm. of Unsec. Creditors v. JP Morgan Chase Bank, N.A. (In re Fabrikant & Sons)*, 394 B.R. 721, 740 (Bankr. S.D.N.Y. 2008) (holding that a complaint does not comply with Rule 9(b) where it fails to identify which of several defendants received a particular transfer). Moreover, given PwC's investigation into the specific Epsilon/Westford Defendants, the Trustee should not have to resort to pleading allegations "on information and belief" or, at the very least, it should provide the Trustee with facts to set forth the source of the information and the reasons for the belief, as is required in the Eighth Circuit when a plaintiff pleads "on information and belief." *See Parnes v. Gateway 2000, Inc.*, 122 F.3d 539, 550 (8th Cir. 1997); *Kranz*, 240 F.R.D. at 456.

fraudulent transfer at issue.  If, for instance, PCI is the transferor, then the Borrower is the initial transferee, making the Epsilon/Westford Defendant the subsequent transferee, and affording additional defenses under 11 U.S.C. § 550(b).  If, on the other hand, the Borrower is the transferor, then certain Epsilon/Westford Defendants may be considered initial transferees.  Moreover, the pool of creditors and assets is different for PCI and the Borrower.  By failing to identify which debtor was the initial transferor and therefore which debtor's creditors and assets are relevant for purposes of evaluating the Trustee's claims, the Epsilon/Westford Defendants are unduly handicapped in the preparation of their defense and unable to effectively evaluate their litigation risk.

As evidenced by his motion to substantively consolidate the debtor estates, the Trustee is well aware of the legal significance of the distinction between PCI and the Borrower.  The Epsilon/Westford Defendants oppose that motion, and the parties are now engaged in discovery in advance of an evidentiary hearing on the motion.  The Trustee's Complaint, however, is pled as if the motion for substantive consolidation has already been granted.

Indeed, the Trustee does not argue that he has sufficiently pled the respective roles of PCI and the Borrower in the transactions at issue.  He simply states that he need not do so because he makes alter-ego allegations.  (Separate Br. at 3.)  The Trustee does not cite to a single case holding that he is relieved of the pleading requirements of Rule 9(b) by virtue of making these allegations.  Nor can he.  Rule 9(b) requires that the Trustee allege the "who, what, when, where, and how" of the alleged fraud.  *Drobnak*, 561 F.3d at 783.  The Trustee has failed to allege the critical "who" element, by collectively referring to PCI and the Borrower as "Debtors" in his Complaint.

The Trustee's Complaint should be dismissed for failure to plead with the specificity required by Rule 9(b). Alternatively, the Court should postpone ruling on this portion of the Epsilon/Westford Defendants' Motion to Dismiss until after the resolution of the Trustee's Motion for Substantive Consolidation. If the Court denies the Trustee's Motion, then it will be abundantly clear that the Trustee must provide additional detail regarding his allegations with respect to each individual debtor.

III.  **THE COMPLAINT SHOULD BE DISMISSED BECAUSE THE TRUSTEE FAILED TO JOIN THE BORROWER, WHICH IS A NECESSARY PARTY, AS THE INITIAL TRANSFEREE OF THE TRANSFERS AT ISSUE.**

A.  **This Court Should Follow *Slack-Horner*.**

In urging this Court not to adopt the Tenth Circuit's approach in *Slack-Horner*, the Trustee relies on cases that have criticized *Slack-Horner* on the ground that adopting the plain meaning of section 550(a) might produce a "harsh and inflexible result." *See, e.g., IBT Int'l, Inc. v. Northern (In re Int'l Admin. Servs., Inc.)*, 408 F.3d 689, 704 (11th Cir. 2005); *Riederer v. Logan Wildlife Corp. (In re Brooke Corp.)*, 443 B.R. 847, 853 (Bankr. D. Kan. 2010); *Leonard v. Optimal Payments Ltd. (In re Nat'l Audit Def. Network)*, 332 B.R. 896, 915 (Bankr. D. Nev. 2005). That concern is not present here because following the plain meaning of the statute will not create a harsh and inflexible result. It is neither harsh, nor inflexible, for the Trustee to join the Borrower where the Borrower could easily have been joined to the lawsuit in the first instance.

The Trustee's reliance on *Wells Fargo Home Mortg., Inc. v. Lindquist* and *Leonard v. First Commercial Mortg. Co. (In re Circuit Alliance, Inc.)* is flawed and misleading. The Trustee offers these cases as an alternate view to the plain language of section 550(a) and *Slack-Horner*. Neither of these cases, however, addresses the specific reasoning set forth in *Slack-Horner*. Moreover, in both cases, the defendant *was* the initial transferee. *See Wells Fargo*, 592

F.3d 838, 844-45 (8th Cir. 2010) (rejecting defendant's argument that the trustee should have sued the subsequent transferee); *In re Circuit Alliance*, 228 B.R. 225, 234 (Bankr. D. Minn. 1998) (holding that the defendant was the initial transferee and rejecting defendant's arguments that other parties should have been joined to the action). Thus, the question of whether the initial transferee should have been joined was not even before the court in those cases.

Additionally, *Slack-Horner* is not the only case to hold that the plain language of section 550(a) requires the actual avoidance of the initial transfer before recovery may be sought from a subsequent transferee. *See, e.g., Greenwald v. Latham & Watkins (In re Trans-End Tech., Inc.)*, 230 B.R. 101, 104 (Bankr. N.D. Ohio 1998) ("A complete reading of § 550 supports the conclusion that actual avoidance of an initial transfer is required before recovery is sought from subsequent transferees."); *Brandt v. Hicks, Muse & Co. (In re Healthco Int'l, Inc.)*, 195 B.R. 971, 981-82 (Bankr. D. Mass. 1996) ("If the initial transferee makes a second transfer, the property may be recovered from the later transferee only if the 'transfer is avoided' with respect to the 'initial transferee.'").

*Slack-Horner* should be followed because the statutory language is clear and unambiguous. *In re Trans-End*, 230 B.R. at 104 ("The language of § 550(a) is unarguably both unambiguous and plain and it clearly provides for the recovery of fraudulent transfers from initial and subsequent transferees 'to the extent that the transfer is *avoided* under section … 548.'"). Any other interpretation of "avoided" improperly changes the "transparently plain" meaning of the statute. *Id.* That "[a] transfer must be avoided before its value can be recovered in accordance with § 550(a) of the Bankruptcy Code . . . .is a *sine qua non* of such a recovery action." *Williams v. Mortillaro (In re Resource, Recycling & Remediation, Inc.)*, 314 B.R. 62, 67 (W.D. Penn. 2004).

## B.    The Borrower Is the Initial Transferee Here and Should Have Been Joined.

The Trustee further argues that the Court need not even reach the question of whether *Slack-Horner* applies in this Circuit because the Borrower is not an initial transferee. Instead, the Trustee claims, the Defendants are the initial transferees of the transfers at issue. The Trustee's citation to the Complaint in support of this proposition highlights the lack of specificity of the Complaint (discussed above). The Trustee does not allege that the Defendants are the initial transferees; rather, he alleges that Defendants are "initial transferees…or immediate or mediate transferees of any initial transferee of such transfers." (Complaint ¶¶ 49-56.) The portion of the Complaint to which the Trustee cites leaves the identity of the initial transferee uncertain. Moreover, the Trustee's argument that the Borrower is not the initial transferee directly contradicts the Trustee's many other allegations. In the Complaint, the Trustee describes the Borrower's role as follows:

> After extracting commissions for their respective roles in the Ponzi scheme, Reynolds (through Nationwide) or Catain (through Enchanted) would transfer the funds to PCI, which would then transfer some or all of those funds back to the SPEs [including PL Ltd.] for repayment of Principal and earnings in the form of false profits.

(Complaint ¶ 82.) When Reynolds and Catain transferred the funds to the Borrower, the Borrower became the initial transferee. The Trustee has effectively pled himself out of arguing that the Borrower is not an initial transferee.

Finally, the Trustee invokes the alter ego doctrine in an effort to excuse his failure to join the Borrower. With his declaration that PCI and the Borrower shall collectively be referred to as the "Debtors" (Complaint ¶ 4), the Trustee attempts to obscure the different roles played by PCI and the Borrower in the alleged fraudulent scheme. The Court cannot accord complete relief among the existing parties when the Trustee is muddying the waters as to who the existing parties are and what roles they played in the alleged fraudulent scheme. Therefore, because the

language of section 550(a) is unambiguous and the Borrower is the initial transferee, this Court should dismiss the Trustee's fraudulent transfer claims for failure to join the Borrower.

## CONCLUSION

For the foregoing reasons, and those set forth in the Epsilon/Westford Defendants' initial submission in support of their Motion to Dismiss, the Epsilon/Westford Defendants respectfully request that the Court dismiss the Trustee's Complaint with prejudice.

Dated: May 13, 2011
Respectfully submitted,

/e/ Robert T. Kugler
Robert T. Kugler
robert.kugler@leonard.com
LEONARD STREET & DEINARD
150 South Fifth Street
Suite 2300
Minneapolis, MN 55402
Telephone:  (612) 335-1645
Facsimile:  (612) 335-1657

Daniel E. Reidy
Theodore T. Chung
Tara A. Fumerton
dereidy@jonesday.com
ttchung@jonesday.com
tfumerton@jonesday.com
JONES DAY
77 West Wacker
Chicago, IL 60601
Telephone:  (312) 782-3939
Facsimile:  (312) 782-8585

Tobias S. Keller
David C. Kiernan
tkeller@jonesday.com
dkiernan@jonesday.com
JONES DAY
555 California Street, 26th Floor
San Francisco, CA 94101
Telephone:  (415) 626-3939
Facsimile:  (415) 875-5700

**Counsel for the Epsilon/Westford Defendant**

# UNITED STATES BANKRUPTCY COURT
## DISTRICT OF MINNESOTA

In re:                                         **Jointly Administered under**
                                               **Case No. 08-45257**

Petters Company, Inc., et al.,                 Court File No. 08-45257
      Debtors.

(includes:                                     Court Files Nos.:
Petters Group Worldwide, LLC;                  08-45258 (GFK)
PC Funding, LLC;                               08-45326 (GFK)
Thousand Lakes, LLC;                           08-45327 (GFK)
SPF Funding, LLC;                              08-45328 (GFK)
PL Ltd., Inc.;                                 08-45329 (GFK)
Edge One LLC;                                  08-45330 (GFK)
MGC Finance, Inc.;                             08-45331 (GFK)
PAC Funding, LLC;                              08-45371 (GFK)
Palm Beach Finance Holdings, Inc.)             08-45392 (GFK)

                                               Chapter 11 Cases
                                               Judge Gregory F. Kishel

Douglas A. Kelley, in his capacity as the
court-appointed Chapter 11 Trustee of
Debtors Petters Company, Inc. and
PL Ltd., Inc.,
      Plaintiff,
vs.                                            ADV. NO. 10-04396

Westford Special Situations Master Fund,
L.P.; et al.,
      Defendants.

## CERTIFICATE OF SERVICE

    I, Ma Xiong, declare, under penalty of perjury, that on May 13, 2011, I caused the

foregoing document, **REPLY BRIEF IN SUPPORT OF DEFENDANTS' MOTION TO**

**DISMISS** to be served by automatic e-mail notification to each person or entity named on the

Notice of Electronic Filing that is automatically generated by the court's Electronic Case Filing

System. This constitutes service or notice of the filed document on Filing Users pursuant to

Local Bankruptcy Rule 9006-1(a). I further certify that I caused a copy of the foregoing

document and the Notice of Electronic Filing to be served by First Class Mail upon participants

who are not Filing Users at the addresses listed on the Notice of Electronic Filing that is

automatically generated by the court's Electronic Case Filing System.


Dated: May 13, 2011                          /e/ *Ma Xiong*
                                             Ma Xiong